## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **YUE ZHAO** | **CIVIL ACTION NO.  2:25-cv-2474** |
| **VERSUS** | **JUDGE SARAH S VANCE** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND; DAVID CROSSLIN; HEATHER MACHADO; LEE HAMM** | **MAGISTRATE JUDGE EVA J. DOSSIER** |

### MEMORANDUM IN SUPPORT OF
### DEFENDANT TULANE'S RULE 12(B)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendant, The Administrators of the Tulane Educational Fund ("Tulane"), respectfully submits this Memorandum in Support of its Motion to Dismiss all claims against it in the Complaint filed by Plaintiff Yue Zhao ("Plaintiff"). On December 9, 2025, Plaintiff filed a 184-paragraph, 46-page complaint alleging numerous conclusory, repetitive, and contradictory allegations against Tulane, as well as Dr. David Crosslin, Dr. Heather Machado, and Dr. Lee Hamm (the "Individual Defendants").[1] Plaintiff's excessively long Complaint, filled with inconsistencies and repetition,[2] fails to allege essential facts in support of his claims against Tulane for Discrimination and Failure to Accommodate under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Section 504") (Count I), Retaliation under the ADA and Section 504 (Count II), Hostile Educational Environment under Section 504 (Count III), Breach of Contract (Count IV), Negligent Supervision, Training, Retention, and Gross Negligence (Count VI), Detrimental Reliance (Count VII), Failure to Provide Accommodation Procedures under the

---

[1] The Individual Defendants also move to dismiss all claims against them in Plaintiff's Complaint.

[2] I.e. Plaintiff purports to seek recovery under Title IX but does not plead any such count. R. Doc. 1 at 45-46.

ADA and Section 504 (Count XI), and National Origin Discrimination under Title VI of the Civil Rights Act of 1964 ("Title VI") (Count XII). For the reasons herein, all claims against Tulane fail as a matter of law and must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## I.    FACTUAL ALLEGATIONS

### A.    Factual Allegations

This is the case of an international graduate student who, while remaining enrolled in his Ph.D. program at Tulane, disagrees with the academic and administrative decisions of the university. Plaintiff is an international student from China, participating in the Biomedical Sciences Ph.D. program at Tulane as an F-1 visa holder.[3] As a Ph.D. student, Plaintiff is enrolled in a program of study requiring participation in a research laboratory.[4] His supervisor in the dry laboratory (a laboratory that does not conduct experiments involving physical materials), where he worked on computational analysis was defendant Dr. David Crosslin.[5] Plaintiff contends that he was removed from Dr. Crosslin's laboratory after being cited for performance issues involving his "professionalism, integrity, academic performance, and suitability," including poor attendance and failure to attend meetings, one of which Plaintiff alleges Dr. Crosslin canceled without notice.[6] Plaintiff contends that he was not able to contact Dr. Crosslin and that he did not receive the academic feedback he desired and that these cited issues by Dr. Crosslin were for issues prior to when he requested and obtained an "accommodation" to work remotely in China.[7]

According to Plaintiff, in March 2025, he was diagnosed with a condition involving liver dysfunction that required him to undergo "a diagnostic procedure not readily available to him in

---

[3] R. Doc. 1 at ¶¶ 1, 14, 43, 178. This statement of facts assumes Plaintiff's allegations are true for the purposes of this Motion to Dismiss only and does not otherwise concede the validity of any of Plaintiff's assertions.

[4] R. Doc. 1 at ¶ 51.

[5] R. Doc. 1 at ¶ 3.

[6] R. Doc. 1 at ¶ 9, 7, 123.

[7] R. Doc. 1 at ¶¶ 26-28, 9.

the United States at that time[.]"[8] On March 12, 2025, he alleges that he notified Dr. Crosslin that

he needed to work remotely while receiving medical treatment, which Dr. Crosslin approved.[9] On

March 14, 2025, Plaintiff alleges that he further notified Dr. Heather Machado, the Assistant Dean

of the program, who approved his remote work arrangement on March 21, 2025.[10] Aside from

these factual allegations, he does not allege that he specifically requested medical leave nor that

he engaged in any process to request or obtain an accommodation for this alleged disability.

Plaintiff further does not allege if he is disabled or beyond needing a diagnostic scan, how his

alleged liver dysfunction impacted him. According to Plaintiff, he traveled to China and performed

his lab duties remotely.[11] Plaintiff does not allege how long he was in China, how long he requested

to be in China, or whether he gave an estimated return date to the university.

 According to Plaintiff, he was advised on July 31, 2025, prior to the start of the new school

year, that due to his performance issues and professionalism, as well as his unauthorized indefinite

stay in China, he would be removed from his laboratory assignment with Dr. Crosslin.[12] Plaintiff

acknowledges that he was qualified and able to continue participating in the Ph.D. program;[13] he

simply was no longer assigned to Dr. Crosslin's laboratory. He was not and has never been

dismissed from the Ph.D. program.[14] To remedy this deficiency of pleading, Plaintiff alleges a

"constructive expulsion," which is not a cognizable theory of law, by which he claims to have been

subjected to "conditions so intolerable" that a reasonable student would not be able to continue in

---

[8] R. Doc. 1 at ¶ 2. Of note, "Fibroscan," the diagnostic treatment sought by Plaintiff, was available in the United States as recently as 2024. *See When Is FibroScan® Testing Recommended?*, INDIANAPOLIS GASTROENTEROLOGY AND HEPATOLOGY (Oct. 28, 2024), https://indygastro.com/when-is-fibroscan-testing-recommended/.

[9] R. Doc. 1 at ¶¶ 3-4.

[10] R. Doc. 1 at ¶ 5.

[11] R. Doc. 1 at ¶¶ 3-5.

[12] R. Doc. 1 at ¶¶ 7-10.

[13] R. Doc. 1 at ¶ 56.

[14] *See* R. Doc. 1 at ¶ 59.

the program. The only "conditions" he alleges involve vague descriptions of a "hostile and intimidating" environment, with no specifics.[15]  Despite this "constructive expulsion," on August 13, 2025, Plaintiff renewed his student visa and returned to the United States "without delay."[16]

On August 29, 2025, Plaintiff sent a demand letter to Tulane "detailing the discriminatory and retaliatory conduct and requesting an administrative hearing."[17] According to Plaintiff, Tulane instructed Plaintiff to obtain a new dissertation advisor by September 25, 2025,[18] to maintain good standing in the program. He was further instructed to engage with Tulane's Office of Institutional Equity ("OIE"), was in the process of investigating his allegations when the Complaint was filed.[19] Plaintiff alleges that Tulane's "institutional structures" resulted in his inability to seek an accommodation for his disability, to report any misconduct by faculty, and could not address the fact that he felt "abandoned" by Dr. Crosslin as an academic advisor.[20] Despite this, he alleges that he had direct email access to Dr. Crosslin's supervisor, Dr. Machado, who he was able to meet with.[21] Plaintiff also extensively references other alleged litigation and a "toxic environment" that occurred to "students like Plaintiff," though he does not specifically allege that he was subjected to this environment other than the issues he experienced with Dr. Crosslin.[22] Plaintiff asserts that he also complained to the U.S. Department of Education's Office of Civil Rights ("DOE") and the U.S. Department of Health and Human Services, though he has not been contacted by either.[23]

---

[15] R. Doc. 1 at ¶¶ 13, 59.

[16] R. Doc. 1 at ¶ 14.

[17] R. Doc. 1 at ¶ 15.

[18] R. Doc. 1 at ¶ 68.

[19] R. Doc. 1 at ¶ 20.

[20] *See Goldman Center for Student Accessibility*, (last accessed Jan. 27, 2026), https://accessibility.tulane.edu/. *Accessibility Concerns*, (last accessed Jan. 27, 2026), https://adaaccess.tulane.edu/accessibility-concerns/. R. Doc. 1 at ¶ 35.

[21] R. Doc. 1 at ¶ 5.

[22] R. Doc. 1. At ¶¶ 29-37.

[23] R. Doc. 1 at ¶¶ 38-39.

4

### B.    Plaintiff's Claims and Damages

Plaintiff's theories of law are numerous, duplicative, and contradictory, alleging twelve causes of action in total, some of which are alleged under multiple theories of law, and eight of which are brought against Tulane.

In Count I (Discrimination and Failure to Accommodate), Plaintiff alleges that Tulane violated Title III of the ADA, 42 U.S.C. § 12181(7), and Section 504, 29 U.S.C. § 794, of the Rehabilitation based on a "documented disability" for which he claims to have requested an "accommodation" by asking for remote work while receiving medical treatment in China.[24] He claims that Tulane is vicariously liable, through Dr. Crosslin, for his initial approval of the accommodation request in March 2025 and subsequent revocation after an unspecified period of time, in July 2025.[25] He admits that Dr. Crosslin complained about Plaintiff's prior issues with performance and misconduct, but claims "no new performance, academic, or misconduct issues" between March and July 2025 (after he obtained his "accommodation").[26] He posits this was a "failure to accommodate," though he was provided an accommodation of remote work, and that the ultimate reversal of his remote work arrangement constituted a "constructive expulsion" based on intolerable conditions.[27] Again, Plaintiff does not allege that he was removed from the program or Tulane. He submits that the reversal of his "accommodation" was "intentional conduct" constituting discrimination and that he is entitled to academic, financial, and emotional damages.[28]

In Count II (Retaliation), Plaintiff further explains his ADA and Section 504 claims, this time alleging that he engaged in protected activity by requesting an accommodation and reporting

---

[24] R. Doc. 1 at ¶¶ 46-49.
[25] R. Doc. 1 at ¶¶ 51-55.
[26] R. Doc. 1 at ¶ 55.
[27] R. Doc. 1 at ¶ 59.
[28] R. Doc. 1 at ¶ 58, 60.

the alleged discrimination and retaliation to Tulane.[29] This claim is specifically pled under the retaliation provision of Title V of the ADA, 42 U.S.C. § 12203. The two protected acts occurred in or about March 2025 (requesting an accommodation) and August 2025 (reporting alleged discrimination).[30] The alleged retaliatory acts by Tulane occurred on July 31, 2025 (removing Plaintiff from the research laboratory assignment, removing facility access, detailing his misconduct, and discontinuing his stipend), in September 2025 ("threatening to dismiss Plaintiff if he did not secure a new dissertation advisor"), or by vaguely "creating a hostile, intimidating, and retaliatory environment").[31]  He seeks compensatory damages and injunctive relief.[32]

In Count III (Hostile Educational Environment), Plaintiff alleges that Tulane violated Section 504 by creating an environment "sufficiently severe, pervasive, or objectively unreasonable" to deny access to benefits and opportunities.[33] He alleges that the Individual Defendants, in concert with Tulane, engaged in conduct that created a hostile environment, including (1) denying access to disability accommodations; (2) subjecting Plaintiff to adverse and punitive treatment; (3) retaliating against Plaintiff; (4) creating a climate of fear through hostile supervisory conduct; (5) withdrawing academic support; and (6) failing to investigate or follow mandatory reporting obligations.[34] For this count, he seeks "compensatory damages, injunctive relief, declaratory relief," based on "emotional distress, anxiety, and psychological injury."[35]

In Count IV (Breach of Contract), Plaintiff vaguely alleges that Tulane breached a contract formed through "written policies, handbooks, or specific written commitments when a student

---

[29] R. Doc. 1 at ¶¶ 62-63.
[30] R. Doc. 1 at ¶¶ 63, 5, 15.
[31] R. Doc. 1 at ¶¶ 65, 7, 68.
[32] R. Doc. 1 at ¶ 71.
[33] R. Doc. 1 at ¶ 76.
[34] R. Doc. 1 at ¶ 77.
[35] R. Doc. 1 at ¶¶ 80-81.

PD.60467343.2

reasonably relies on the promises made by an educational institution."[36] He claims this is supported by articles 1906, 1927, and 1983 of the Louisiana Civil Code. Referring to the BMS Program Handbook, Tulane's written disability accommodation policies, and Dr. Crosslin's written "approval" of his "accommodation," Plaintiff claims that Tulane breached contractual obligations by revoking his "accommodation," terminating his stipend without procedural protections, removing him from Dr. Crosslin's laboratory, and failing to follow its own procedures.[37] He seeks monetary damages and non-monetary damages for loss of opportunities and emotional harm."[38]

In Count VI (Negligent Supervision, Training, Retention, and Gross Negligence), Plaintiff alleges that Tulane is responsible for violating duties of care owed to Plaintiff under La. Civ. Code arts. 2315 and 2316.[39] Plaintiff alleges that Tulane owed duties to properly supervise faculty and administrators, provide adequate training, exercise care in retention proceedings, and ensure faculty were trained on the ADA, Section 504, retaliation, reporting obligations, and appropriate responses to disability concerns,[40] to report allegations of discrimination and retaliation, to "protect students from harm," to comply with federal law, and to respond to student concerns.[41] He further claims that Tulane should have intervened after "being notified of Dr. Crosslin's misconduct," and that failure entitles him to remedies for financial, academic, and professional harm.[42]

In Count VI (Detrimental Reliance), Plaintiff alleges in the alternative to his breach of contract claim, that he is entitled to relief because he reasonably relied on the representations made in the BMS Program Handbook, disability accommodation policies, and Dr. Crosslin's "approval"

---

[36] R. Doc. 1 at ¶ 83.
[37] R. Doc. 1 at ¶¶ 88-90.
[38] R. Doc. 1 at ¶ 90.
[39] R. Doc. 1 at ¶ 101. This count is also generally alleged against the Individual Defendants.
[40] R. Doc. 1 at ¶¶102-103.
[41] R. Doc. 1 at ¶ 104.
[42] R. Doc. 1 at ¶¶ 105, 108-109.

PD.60467343.2

of his "accommodation request."[43] He claims the revocation of the accommodation, termination of stipend, and failure to follow processes caused him financial, educational, and emotional harm.[44]

In Count XI (Failure to Provide Required Accommodation and Grievance Procedures), Plaintiff alleges that Tulane violated Title III of the ADA and Section 504 by failing to good faith interactive process regarding his request for accommodations and failing to maintain equitable grievance procedures as required by Section 504.[45] He alleges that the BMS Handbook does not mention ADA or Section 504 rights, despite alleging that he was able to file a complaint with the OIE, and that Tulane "provided no formal avenue for disability grievances."[46] This allegation is pled as a "separate procedural violation by Tulane" warranting independent relief, and alleges he is entitled to compensatory damages, declaratory relief, and injunctive relief.[47]

In Count XII (National Origin Discrimination), Plaintiff alleges that Tulane's revocation of his "accommodation" constituted discrimination based on his national origin in violation of Title VI of the Civil Rights Act of 1964. He summarily concludes that Tulane "would not have taken such adverse action against a similarly situated U.S. citizen student," without pointing to any such fact or example other than other alleged complaints filed against Tulane.[48] Plaintiff seeks compensatory damages, injunctive, and declaratory relief.[49]

Finally, in his Prayer for Relief, Plaintiff seeks compensatory damages, back pay and front pay (despite there being no allegation that he was an employee), injunctive relief, and declaratory relief. Plaintiff is not entitled to any of these forms of relief under any theory of law.

---

[43] R. Doc. 1 at ¶¶ 111-112, 116.
[44] R. Doc. 1 at ¶ 117.
[45] R. Doc. 1 at ¶ 152.
[46] R. Doc. 1 at ¶ 155.
[47] R. Doc. 1 at ¶¶ 158-59.
[48] R. Doc. 1 at ¶¶ 179, 183.
[49] R. Doc. 1 at ¶ 184.

PD.60467343.2

## II.    SUMMARY OF ARGUMENT

Dismissal of all claims against Tulane is warranted. Plaintiff's attempts to allege violation of the ADA or Section 504 in Count I, II, III and XI fail because he has not sufficiently alleged that he is not a qualifying individual with a disability. Instead, the gist of Plaintiff's ADA/Section 504 allegation is that he needed diagnostic scanning in China for an alleged liver condition which he obtained while being permitted to work remotely. Even if he has adequately alleged a disability (which is denied), his claims under the ADA and Section 504 further fail because according to Plaintiff's own allegations, he was allowed to work remotely in China while he got his diagnostic scan, he has not alleged any actual adverse action or causal connection that would support a claim for retaliation given that he is a current participant in his program and a student at Tulane, and his own allegations confirm that he was allowed to work remotely and engage in grievance procedures. Count III fails because a "hostile educational environment" is not cognizable under ADA or Section 504, and he has otherwise failed to allege sufficient facts to support such a claim. Plaintiff's breach of contract and detrimental reliance claims (Counts IV and VII) fail because he does not adequately allege the essential elements of those claims, including the specific obligations/representations supposedly made. Plaintiff's negligent supervision claim (Count VI) further fails to allege the essential elements of such a claim including a specific duty that was owed or breached. And Plaintiff's Title VI claim (Count XII) fails because he has not sufficiently alleged any discriminatory intent or effect based on his national origin. Because he has failed to sufficiently plead any claim against Tulane, all of these claims must be dismissed with prejudice.

PD.60467343.2

## III.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint.[50] The Fifth Circuit has explained that "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[51] Pleaded facts that do not permit a court to infer more than the mere possibility of misconduct do not show that the pleader is entitled to relief.[52] A court need not "accept labels, conclusions, or formulaic recitation of the elements of a cause of action[.]"[53] "Indeed, the Court must first identify allegations that are conclusory and, thus, are not entitled to the assumption of truth."[54] Factual allegations "must be enough to raise a right to relief above the speculative level."[55] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice[.]"[56] "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."[57] Under this standard, Plaintiff has failed to state any claim for relief, and so his claims must be dismissed.

## IV.    ANALYSIS

### A.    Plaintiff's ADA and Section 504 Claims, Alleged Concurrently, Cannot Succeed as a Matter of Law and Should Be Dismissed.

Plaintiff's claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act are alleged concurrently and so should be analyzed concurrently.  As held by this Court, "[t]he ADA and the Rehabilitation Act generally are interpreted *in pari materia*."[58] The

---

[50] Fed. R. Civ. P. 12(b)(6). *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

[51] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Id.*

[53] *Twombly*, 550 U.S. at 555; *Ashcroft,* 556 U.S. at 678.

[54] *Currier v. Entergy Servs., Inc.*, 2014 WL 1093687, at *5 (E.D. La. Mar. 14, 2014).

[55] *Id.*; *see also Ashcroft,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[56] *Jones v. Alcoa, Inc.,* 339 F.3d 359, 362 (5th Cir. 2003).

[57] *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

[58] *Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 363-64 (E.D. La. 2020), *aff'd sub nom. Bailey v. France*, 852 F. App'x 852 (5th Cir. 2021).

only difference in interpreting the ADA and Section 504 is that "the statutes govern different entities," as Title III of the ADA applies to places of public accommodation, such as educational institutions, and the Rehabilitation Act applies to federally-funded programs and activities."[59] "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."[60] "Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA."[61] Accordingly, Tulane analyzes the ADA and Section 504 claims using the same standards for the ease of reference of this Court.

### i.    Plaintiff's Status as a Qualifying Individual With a Disability.

The ADA defines "disability" as "a mental or physical impairment [which] must substantially limit an individual's ability to perform at least one major life activity."[62] "Merely having an impairment" is not enough to qualify as disabled—a plaintiff "also need[s] to demonstrate that the impairment substantially limits a major life activity."[63] Whether an impairment is substantially limiting depends on "its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact."[64] "[A] plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity."[65] For example, a security officer whose hearing

---

[59] *Ward v. Franciscan Missionaries of Our Lady Univ.*, No. CV 22-220-JWD-SDJ, 2024 WL 4256334 at *13 (M.D. La. Sept. 20, 2024).

[60] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). *See also Delano–Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the RA," and "[j]urisprudence interpreting either section is applicable to both.").

[61] *Id.* at 234-35.

[62] *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003).

[63] *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469 (5th Cir. 2023), *as revised* (Aug. 4, 2023)

[64] *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 614 (5th Cir. 2001).

[65] *Waldrip*, 325 F.3d at 656.

impairment was remedied by wearing hearing aids was determined to not have a disability under the ADA or Rehabilitation Act because there was no substantial limit to any major life activity.[66]

In describing his alleged disability, Plaintiff only alleges he had "objective medical evidence of liver dysfunction," requiring him to "undergo a FibroScan examination" that he allegedly could only get in China, and a diagnosis of "severe hepatic steatosis."[67] From this, he concludes that he was "a disabled student" whose liver disease required "medical intervention, which substantially limits one or more major life activities."[68] At no point does Plaintiff allege any specific limitations to any major life activities, other than the fact that he needed to return to China for a diagnostic test, which, according to him, Tulane allowed him to do. Simply having a medical condition does not constitute a disability under the ADA.[69] That is especially the case here as Plaintiff's allegations are limited to needing a diagnostic test because of an alleged medical condition. His conclusory statements thus fail as a matter of law to allege that he is a qualifying individual with a disability.

Based on this significant deficiency of pleading, Plaintiff's Complaint, and in particular, Counts I, II, III and XI, must be dismissed because he is not covered by the ADA or Section 504.

### ii.    Discrimination and Failure to Accommodate under Title III of the ADA and Section 504 (Count I)

Even if Plaintiff could establish a qualifying disability, which is denied, he fails to allege that Tulane discriminated against or failed to accommodate him. To prove discrimination, a plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible . . .; and (3) that such

---

[66] *Kemp*, 610 F.3d at 236.

[67] R. Doc. 1 at ¶ 2.

[68] R. Doc. 1 at ¶ 27, 48.

[69] *See Nottingham v. Richardson*, 499 Fed.Appx. 368, 376-77 (5th Cir. 2012) (Plaintiff's conditions of flu and thrush were not "disabilities," but temporary medical conditions).

discrimination is by reason of his disability."[70] Discrimination may include failure to make reasonable modifications or accommodations, unless such modifications would "fundamentally alter the nature of" the accommodations.[71] Title III "does not require a place of public accommodation to provide a plaintiff with the ideal or preferred accommodation; rather, the ADA requires that a defendant provide a plaintiff with an accommodation that is reasonable and permits the plaintiff to participate equally in the good, service, or benefit offered."[72]

Plaintiff alleges that he emailed Dr. Crosslin and Dr. Machado in March 2025 that he needed to work remotely while he "obtain[ed] timely medical testing" to diagnose his condition.[73] At no point does Plaintiff allege that this request was denied or that Tulane did not provide him with this accommodation. He only alleges that *four months later*, while still in China performing lab work remotely because of a "diagnostic procedure," during which time he "continually worked" for Dr. Crosslin and at least one other professor, Tulane notified him that he would be removed from Dr. Crosslin's laboratory.[74] Even still, Plaintiff was not entitled to his "preferred accommodation" under the law.[75] Tulane's obligation was to make "reasonable modifications or accommodations" for Plaintiff, which it did by allowing him to work remotely while performing a diagnostic procedure.[76] It was under no obligation to implement an indefinite remote work timeline, particularly without any update regarding an intended return date or specific statements about particular accommodations. Based upon Plaintiff's own allegation that Tulane did permit

---

[70] *Bailey*, 484 F.Supp.3d at 364.

[71] *Ward*, 2024 WL 4256334 at *18.

[72] *Bailey*, 484 F.Supp.3d at 365.

[73] R. Doc. 1 at ¶¶ 2-5.

[74] R. Doc. 1 at ¶¶ 2, 6-7.

[75] *Bailey*, 484 F.Supp.3d at 365.

[76] *Ward*, 2024 WL 4256334 at *18.

PD.60467343.2

him to work remotely in China while he allegedly obtained a diagnostic scan, he cannot prove that it discriminated against him. Accordingly, Plaintiff's claim for discrimination must be dismissed.

### iii.    Retaliation under Title V of the ADA and Section 504 (Count II)

Even if Plaintiff could establish that he was a qualified individual with a disability, which is denied, he fails to allege that Tulane retaliated against him. Title V of the ADA prohibits discrimination against any individual who has "opposed any act or practice made unlawful by this chapter" or "made a charge, testified, assisted, or participated" in any investigation.[77] "To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show that: (1) []he engaged in an activity protected by the ADA, (2) []he suffered an adverse [consequence], and (3) there is a causal connection between the protected activity and the adverse action."[78]

Here, Plaintiff's Complaint, accepted as true for purposes of this Motion, fails to allege that he experienced an adverse action or that there was a causal connection to his protected activity, and his own allegations confirm that Tulane had legitimate, non-discriminatory reasons for its action.[79] While Plaintiff contends that he was dismissed from Dr. Crosslin's laboratory on July 31, 2025, as Plaintiff admits, he was not and has never been dismissed from the Ph.D. program or Tulane.[80] Plaintiff alleges that he was advised that he needed to obtain a new dissertation advisor by September 25, 2025.[81] According to Plaintiff, he had been without an advisor or laboratory, required by the program, since at least July 31, 2025.[82] Accordingly, based upon Plaintiff's own allegations, Tulane had a legitimate, non-discriminatory reason for advising him that he needed to

---

[77] 42 U.S.C. § 12203. The Rehabilitation Act incorporates the retaliation provision of the ADA. *Duncan v. Washington Metropolitan Area Transit Authority*, 214 F.R.D. 43 (D. D.C. 2003).

[78] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).

[79] *Id.* at 306.

[80] *See* R. Doc. 1 at ¶ 59.

[81] R. Doc. 1 at ¶ 18.

[82] R. Doc. 1 at ¶ 7.

find an advisor and laboratory. It is unreasonable for Plaintiff to expect that he would be able to indefinitely remain without an advisor or laboratory assignment.

Plaintiff's claims that he was subject to a "constructive expulsion" likewise fails as a matter of law.[83] Constructive expulsion is not a concept recognized under Louisiana or federal Title III ADA or Section 504 law.[84] Plaintiff appears to be analogizing this allegation to the employment law concept of constructive discharge; however, he has not alleged an employment ADA claim or an employment relationship. In the employment law context, constructive discharge requires that a plaintiff demonstrate "working conditions [] so intolerable that a reasonable person would feel compelled to resign."[85] "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."[86] Even if such a theory applied, which is denied, Plaintiff does not allege that he was harassed, nor does he allege any specific facts regarding harassment. Again, Plaintiff was not removed from the program and remains enrolled. His claim that he was constructively expelled is thus not cognizable under any theory of law.

Because Plaintiff has not alleged either an adverse action or a causal relationship between any alleged adverse action and protected activity and his constructive expulsion claim is not legally recognizable, his retaliation claim fails as a matter of law and must be dismissed.

### iv. Failure to Provide Accommodation Procedures under Title III of the ADA and Section 504 (Count XI)

Finally, even if Plaintiff has adequately alleged that he is a qualified individual with a disability (which is denied), Plaintiff's accommodation claim under Title III of the ADA and Section 504 (Count XI) should likewise be dismissed for failure to allege the essential elements.

---

[83] R. Doc. 1 at ¶¶ 59-60.
[84] *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382 n.5 (5th Cir. 2016).
[85] *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007).
[86] *Id.*

Plaintiff alleges that Tulane violated Title III of the ADA and Section 504 by failing to engage in a timely and good faith interactive process regarding his request for disability accommodations and failed to maintain equitable grievance procedures as required by Section 504.[87] Plaintiff fails to allege that he engaged in any process to request or obtain an accommodation under Title III and Section 504. Plaintiff only alleges that he requested to work remotely for a period while he obtained a diagnostic procedure in China. While he terms that as an accommodation request, the law requires much more. "Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced as a result of that disability."[88] "Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances."[89] Because the ADA "does not require clairvoyance," the plaintiff bears the burden of specifically identifying the disability and resulting limitations, and "to request an accommodation in direct and specific terms."[90] At best, Plaintiff alleges that he requested leave to go to China to get a diagnostic test and the ability to work remotely. Importantly, he admits that his request was granted. Tulane was not required to predict Plaintiff's additional needs beyond his diagnostic request, nor was it obligated to provide indefinite accommodation without additional requests. Thus, Plaintiff's allegations for failure to accommodate fail as a matter of law.

As to Plaintiff's allegations about grievance procedures, the regulations promulgated alongside Section 504 require that qualifying programs "shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable

---

[87] R. Doc. 1 at ¶ 152.
[88] *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 236 (5th Cir. 2017) (cleaned up) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).
[89] *Id.*
[90] *Id.* at 165.

16

resolution of complaints."[91] These regulations do not create a private cause of action and this claim should be dismissed for this reason alone.[92] Further, even if this was a viable cause of action (which is denied), Plaintiff's own allegations confirms that the BMS Policy Handbook "addresses academic appeals and directs students to raise complaints with supervisors."[93] He also admits that he was directed to the OIE, where he was ultimately able to file a complaint.[94]

Because Plaintiff fails to allege any violation of law or regulation regarding reasonable accommodations or grievance procedures, Count XI must be dismissed.

### v.    Hostile Educational Environment under Section 504 (Count III)

Plaintiff's allegation in Count III that he was subjected to a "hostile educational environment" in violation of Section 504 of the Rehabilitation Act further fails as a matter of law. Even assuming that Plaintiff adequately alleged that he is a qualifying individual with a disability (which is denied), there is no legal authority providing a cause of action for hostile educational environment under Section 504.[95] The Fifth Circuit has held that "educational harassment" is not a legally cognizable claim for disability discrimination under the Rehabilitation Act.[96] For this reason alone, Plaintiff's claim in Count III must be dismissed with prejudice.

### vi.    Plaintiff's Intended Relief is Improper.

Finally, under the ADA and Section 504, Plaintiff seeks emotional distress, compensatory, financial, declaratory, and injunctive relief.[97] Even if he could succeed on any of those claims

---

[91] 34 C.F.R. § 104.7

[92] *See, e.g.*, *Power ex rel. Power v. Sch. Bd. of City of Virginia Beach*, 276 F. Supp. 2d 515 (E.D. Va. 2003); *A.W. by Ms. C. v. Marlborough Co.*, 25 F. Supp. 2d 27 (D. Conn. 1998); *Guckenberger v. Boston Univ.*, 974 F.Supp. 106, 142 (D.Mass. 1997).

[93] R. Doc. 1 at ¶ 155.

[94] R. Doc. 1 at ¶ 19.

[95] A "hostile educational environment" is cognizable under Title VI and Title XI on the basis of sex, race, color, or national origin, which is not alleged. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020).

[96] *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382 n.5 (5th Cir. 2016).

[97] R. Doc. 1 at ¶¶ 60, 71, 81, 159.

(which is denied), his recovery is limited. Title III of the ADA allows only for injunctive relief against the private entity required to provide a public accommodation.[98] Because Title V of the ADA bases recovery on the "remedies and procedures available" under the title allegedly violated, the same applies for his retaliation claim.[99] Similarly, emotional distress damages are not available under Section 504.[100] Plaintiffs can only recover compensatory damages under Section 504 "upon a showing of intentional discrimination, which requires "something more than deliberate indifference."[101] For the reasons set forth herein and in the Individual Defendants' Motion to Dismiss, Plaintiff has not alleged any intentional discrimination which would entitle him to compensatory damages. Thus, Plaintiff would (at best) be entitled to recover in the form of injunctive relief, and so his claims for compensatory, emotional distress, and other damages must be dismissed.

> ### B.    Plaintiff's Breach of Contract Claim (Count IV) Should Be Dismissed.

To state a breach of contract claim,  Plaintiff must allege the essential elements: (1) the obligor's undertaking on obligation to perform; (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages.[102]  The relationship between a student and a private educational institution *may* be considered contractual in nature based on school publications presented to the student.[103]  However, to survive a motion to dismiss, a plaintiff "must allege a breach of a specific provision of the contract."[104] For example, merely pleading that a plaintiff

---

[98] *George v. Hobby Lobby Stores, Inc.*, 769 F. Supp. 3d 537 (E.D. La. 2025).

[99] 42 U.S.C. § 12203(c).

[100] *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 678 (5th Cir. 2020), aff'd, 596 U.S. 212, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022) (holding emotional distress damages not available under the RA);

[101] *J.W. v. Paley*, 81 F.4th 440, 449-50 (5th Cir. 2023).

[102] *See 1436 Jackson Joint Venture v. World Const. Co., Inc.*, 499 So. 2d 426, 427 (La. App. 4 Cir. 1986).

[103] *See I.F. v. Administrators of the Tulane Educational Fund*, 131 So.3d 491, 498 (La. App. 4 Cir. 12/23/13) (*citing Babcock v. New Orleans Baptist Theological Seminary*, 554 So. 2d 90, 96-97 (La. App. 4th Cir. 1989)).

[104] *Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 643 (E.D. La. 2019).

18

"entered into an agreement" and then undertook obligations set forth in the agreement, without providing facts about specific provisions therein, is insufficient under the pleading standard.[105]

Plaintiff's Complaint wholly fails to allege what alleged promises were breached. In fact, Plaintiff's allegations contradict themselves. He alleges three potential contracts: (1) the BMS Program Handbook, "which sets forth binding expectations for laboratory placement, stipend eligibility, academic progress, and grievance procedures;" (2) written disability accommodation policies provided by Tulane, "which promise a defined process for granting and maintaining medical accommodations;" and (3) Dr. Crosslin's "approval" of his disability accommodation.[106] He does not allege which specific provisions of these contracts were breached. Other than the alleged existence of "binding expectations," Plaintiff does not cite, quote, or allege *what* expectations were in place in the BMS Handbook regarding laboratory placement, stipend eligibility, academic progress, or grievance procedures that were allegedly breached. Plaintiff further does not specify *what* the "defined process" was for disability accommodations to demonstrate that that process was breached.  And Plaintiff's breach of contract allegations regarding his alleged disability and accommodation are nothing more than a rehashing of his deficient claims under Section 504 and Title III of ADA.

Plaintiff's breach of contract claims should further be dismissed given the wide latitude recognized by Louisiana courts for private schools to implement and enforce internal policies as they see fit. For instance, the Louisiana Fourth Circuit has stated that a private institution has almost complete autonomy in controlling its internal procedures.[107] Further, "a private institution

---

[105] *Sharigan v. Sharigan*, 591 F.Supp.3d 100, 110 (E.D. La. 2022).

[106] R. Doc. 1 at ¶ 87.

[107] *Flint v. St. Augustine High School*, 323 So.2d 229, 233 (La. App. 4th Cir. 1975). *See also Ahlum v. Admin. Of Tulane Educational Fund*, 617 So.2d 96, 98-99 (La. App. 4th Cir. 1993) ("The judiciary has recognized that a private institution, as compared to a public institution, has the power to create, administer and implement its own rules and procedures concerning the qualifications and conduct of its students, staff, and faculty. Absent some form of state

is entitled to a very strong but rebuttable presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interest of the school and the student body."[108] Louisiana courts are in accord that a private institution enjoys wide latitude to enforce its internal rules, absent any arbitrary and capricious conduct.[109]  "It is not the place of the judiciary to substitute its own view of appropriate standards of conduct or appropriate penalties for the breach of those standards in place of a private institution's decision."[110] Thus, even if Plaintiff alleged the specific obligations that were breached (which is denied), dismissal is warranted given the discretion a private university like Tulane has in interpreting its policies.

Because Plaintiff's claim for breach of contract consists of vague and conclusory allegations, Plaintiff fails to state a claim upon which relief may be granted and must be dismissed.

### C.    Plaintiff's Detrimental Reliance Claim (Count VII) Should Be Dismissed.

Plaintiff's detrimental reliance claim also fails on the essential elements of the claim. La. Civ. Code article 1967 provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. . . Reliance on a gratuitous promise made without required formalities is not reasonable." Plaintiff must meet three requirements: (1) a representation by conduct; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because

---

action, the courts have refused to hear claims which allege that a private institution's practices have violated constitutional guarantees.")

[108] *See I.F. v. Administrators of Tulane Educational Fund*, *supra*, 131 So.3d at 498.

[109] *See Jones v. NCAA*, 96-2205 (La. 1996); 679 So.2d 381 ("It is well settled in the law that . . . [c]ourts should not interfere with the internal affairs of a private association except . . . when the action complained of is capricious, arbitrary, or unjustly discriminatory."); *Sanders v. La. High Sch. Athletic Assoc.*, 242 So.2d 19, 25 (La. App. 3d Cir. 1970) ("The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association[.]"); *see also Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 2014-0461 (La. App. 1 Cir. 01/29/15); 170 So.3d 209, 213-14 (affirming dismissal of student's claims against private school for wrongful expulsion based upon poor grades where the faculty and university acted within professional judgment).

[110] *Ahlum*, 617 So.2d at 99.

PD.60467343.2

of the reliance.[111] "The concept, however, is not favored in our law and should be applied cautiously since it bars the normal assertion of rights otherwise present."[112] The reliance must be "justified" and based on "false or misleading representations of fact."[113]

Plaintiff alleges the following as the basis of his alleged detrimental reliance: (1) that disability accommodations would be honored; (2) that he would retain access to research facilities; (3) that stipends and program support would continue absent documented misconduct; and (4) that Tulane would follow its procedures on accommodation, grievance, and anti-retaliation.[114] Like Plaintiff's breach of contract claim, his detrimental reliance claim is merely an rehashing of his deficient claims under Section 504 and the ADA and should be dismissed for that reason alone.

With respect to the "honoring" of accommodations, Plaintiff was allowed to work remotely in China while he allegedly obtained a diagnostic test. He makes no allegations regarding seeking or obtaining medical leave or any type of leave. Importantly, he does not allege what promises Tulane made, much less a promise of an indefinite period of remote work or leave. Given that Plaintiff fails to allege any promise by Tulane with respect to his "accommodation," Plaintiff further fails to allege any justifiable reliance or that he changed position to his detriment. The same applies to Plaintiff's access to research facilities and his access to stipends.

Finally, Plaintiff's allegation that he detrimentally relied on the "promise" that Tulane "would follow its own procedures regarding accommodation, grievance, and anti-retaliation protections" fails for the same reasons. Like his vague breach of contract claim, Plaintiff has not

---

[111] *Miller v. Miller*, 35,934 (La.App.2d Cir.5/8/02), 817 So.2d 1166.

[112] *Baker v. LSU Health Scis. Ctr. Inst. of Pro. Educ.*, 39,200 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1178, 1183.

[113] *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, 2024-00449 (La. 10/25/24), 395 So. 3d 717, *reh'g denied*, 2024-00449 (La. 12/12/24), 397 So. 3d 424.

[114] R. Doc. 1 at ¶ 113.

alleged what those promises are, much less justifiable reliance to his detriment. For all these reasons, Plaintiff's claim for detrimental reliance should be dismissed.

### D. Plaintiff's Negligent Supervision Claim (Count VI) Fails Because He Has Not Alleged a Specific Duty that was Owed and Breached.

Plaintiff's compounded claim in Count VI (Negligent Supervision, Training, Retention and Gross Negligence) against Tulane and Individual Defendants Dr. Hamm and Dr. Machado[115] implicates three different claims: (1) negligent supervision of a student; (2) negligent supervision and training; and (3) gross negligence. These claims, founded on conclusory statements and minimal facts, cannot survive under the Rule 12(b)(6) standard.

To establish a claim for negligent supervision of students, a party must prove:

> (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. [116]

Louisiana courts have found liability for negligent supervision under limited circumstances, most of which involve bodily injury and with *grade school students*.[117] Here, Plaintiff is an adult graduate student at Tulane and therefore is not a typical plaintiff for a successful negligent supervision claim. Thus, his negligent supervision claim must be dismissed as a matter of law.

Plaintiff also alleges that Tulane negligently failed to supervise, train, and monitor the actions of the Individual Defendants. The elements of a negligent hiring, training, and/or

---

[115] The Individual Defendants address the claims made against them separately in their Motion to Dismiss.

[116] *Sims v. Samuel J. Green Charter Sch. Field*, 2024-0277 (La. App. 4 Cir 12/02/24) (quoting *Wallmuth v. Rapides Par. Sch. Bd.*, 01-1779, p. 13 (La. 4/3/02), 813 So.2d 341, 349)).

[117] *See, e.g., Vaughn v. Orleans Parish Sch. Bd.*, 01-0556 (La. App. 4 Cir. 11/28/01), 802 So.2d 967, 969 (school board liable for the sexual assault of a student by another student, which occurred in a classroom where a teacher was present); *Doe v. E. Baton Rouge Parish Sch. Bd.*, 06-1966 (La. App. 1 Cir. 12/21/07); 978 So.2d 426, 433 (school board partially liable for sexual assault of student by another student where assault occurred on a bus owned/maintained by school board and while students were under supervision of a school board employee); *see also Hayes v. Sheraton Operating Corp.*, 14-0675 (La. App. 4 Cir. 12/10/14); 156 So.3d 1193, 1199.

22

supervision claim under Louisiana law follow the standard negligence analysis: "(1) the defendant had a duty to conform its conduct to a specific standard; (2) the defendant failed to conform its conduct to that standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries . . . ; and (5) the plaintiff suffered damages."[118]

As to any violation of duty by Tulane, Plaintiff claims that it "had a duty to ensure faculty and administrators were trained" on various provisions, but he does not allege that Tulane did not train the Individual Defendants. He only alleges that those individuals did not follow the provisions as they were trained.[119] Plaintiff alleges that Tulane breached its duty of supervision by failing to "monitor" Dr. Crosslin and "negligently retained" him, yet he also confirms that Tulane is currently in the process of investigating a claim he filed with the OIE regarding Dr. Crosslin, which is a reasonable response to a complaint.[120] By virtue of Plaintiff's own complaints, Tulane breached no duty that was owed to him and was neither the direct nor proximate cause of any alleged injury.

Louisiana courts also analyze claims of negligent supervision or training under the theory of *respondeat superior*.[121] "The principle of vicarious liability or *respondeat superior* is codified in Louisiana Civil Code article 2320."[122] "This article provides that an employer is liable for the tortious acts of its employees that are performed 'in the exercise of the functions in which they are employed.'"[123] Vicarious liability requires underlying tortious conduct by the employee.[124]

---

[118] *Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 771 (W.D. La. 2017) (citing *Roberts v. Benoit*, 605 So.2d 1032, 1040–46 (La. 09/09/1991).

[119] R. Doc. 1 at ¶ 103.

[120] R. Doc. 1 at ¶¶ 105, 20.

[121] *See Price v. La. Dept. of Transp. and Dev.*, 608 So.2d 203 (La App. 4 Cir. 1992); *Stein v. City of Gretna*, 17-554 (La. App. 5 Cir. 5/30/19), 250 So.3d 330, 337.

[122] *Lefkowitz*, 2022 U.S. Dist. LEXIS 22060, at *9.

[123] *Id*. (citing La. Civ. Code Ann. art. 2320).

[124] *Id*. at *12.

Ultimately, the conduct alleged by Plaintiff to be "tortious" (Intentional Infliction of Emotional Distress, Defamation, and Abuse of Rights) fails as a matter of law for the reasons outlined in the Individual Defendants' Motion to Dismiss. Plaintiff simply fails to meet the high threshold for stating an IIED, defamation or abuse of right claim. Those tort claims are also premised upon academic decisions regarding Plaintiff's advisory relationship, his performance, and the purported failure to adhere to internal policies in conducting investigations into his complaints. Louisiana law is clear that educational malpractice claims are not actionable in tort, particularly considering the broad discretion provided to schools under the doctrine of academic freedom.[125] In a case involving a university's academic freedom, the U.S. Supreme Court has opined:

> When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.[126]

Accordingly, courts within the Fifth Circuit generally dismiss claims premised upon academic decisions.[127] With no breach of duty or cognizable theory of recovery, Plaintiff's claims for negligent supervision, training, retention, and gross negligence (Count VI) must be dismissed.

---

[125] *See Mills v. Tarver*, 340 So.3d 959, 971 (La. App. 1 Cir. 2021) ("It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning[.]"); *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1060 (La. App. 4 Cir. 2002) ("[P]ublic policy . . . accords educational institutions broad discretion in matters purely academic ... and directs judicial non-interference in the decisions with that discretion."); *Wallace v. Southern University*, 2020-00647 (La. 9/29/20), 301 So.3d 1162 (stating that "educational malpractice is not a valid theory of liability anywhere in Louisiana statutory law or jurisprudence.").

[126] *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)

[127] *Seals v. Mississippi*, 998 F. Supp. 2d 509, 523 (N.D. Miss. 2014) (Courts "must accept . . . 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University[.]'") (quoting *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999).

### E.    Plaintiff Cannot Succeed on His Title VI Claim (Count XII).

Finally, Plaintiff's Title VI claim fails because he has not alleged any facts demonstrating discrimination based on his national origin. Title VI prohibits exclusion from participation in federally assisted programs "on the ground of race, color, or national origin."[128] "[A] private right of action under Title VI for damages requires intentional discrimination by the defendants."[129] In the absence of a specific discriminatory policy, a plaintiff must allege that (1) a person with authority had (2) actual knowledge of discrimination and (3) responded with deliberate indifference.[130] Plaintiff's claims here fail on every element. First, Plaintiff pleads no facts to support the position that Tulane intentionally discriminated against him based on his national origin. He offers no statements by Dr. Crosslin supporting any discriminatory intent. His only conclusory allegation is that Dr. Crosslin "would not have taken such adverse action against a similarly situated U.S. citizen student."[131] He does not plead any specific discriminatory policy, and he does not allege that any appropriate person with authority had actual knowledge of discrimination and responded with deliberate indifference. In fact, he does not allege that he made any complaint about such discrimination. To the extent that Plaintiff cites other alleged lawsuits against Tulane, those allegations are irrelevant and conclusory.[132] Count XII must be dismissed.

## V.    CONCLUSION

Based upon the foregoing reasons and legal authorities, Tulane's Motion to Dismiss should be granted. Tulane respectfully moves this Court for an order dismissing with prejudice the claims discussed herein, at Plaintiff's costs, including any other relief to which Tulane may be warranted.

---

[128] 42 U.S.C. § 2000d.

[129] *Scokin v. State of Tex.*, 723 F.2d 432, 441 (5th Cir. 1984).

[130] *Washington v. Smith*, 639 F. Supp. 3d 625, 656 (E.D. La. 2022).

[131] R. Doc. 1 at ¶ 179.

[132] R. Doc. 1 at ¶¶ 183-184.

PD.60467343.2

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:    */s/ Rebecca Sha*
       Kim M. Boyle (La. Bar No. 18133)
       Rebecca S. Sha (La. Bar No. 35317)
       Andrew M. Albritton (La. Bar No. 39780)
       Caroline E. Perlis (La. Bar No. 40905)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130
       Telephone: 504 566 1311
       Facsimile: 504 568 9130
       Email: boylek@phelps.com:
             rebecca.sha@phelps.com
             andrew.albritton@phelps.com
             caroline.perlis@phelps.com

**ATTORNEYS FOR DEFENDANT THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND**


## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2026, I filed the foregoing by using the CM/ECF system and have served notice of the filing pursuant to Local Rule 5.4 and Fed. R. Civ. P. 5(b) to Pro-Se Plaintiff, Yue Zhao by certified mail to 500 Aries Dr. Apt 5A, Mandeville, LA 70471.

                                 */s/ Rebecca Sha*
                                 REBECCA SHA