# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **YUE ZHAO** | **CIVIL ACTION NO.  2:25-cv-2474** |
| **VERSUS** | **JUDGE SARAH S VANCE** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND; DAVID CROSSLIN; HEATHER MACHADO; LEE HAMM** | **MAGISTRATE JUDGE EVA J. DOSSIER** |

## MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS DAVID CROSSLIN, HEATHER MACHADO, AND LEE HAMM'S RULE 12(B)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Individual Defendants, David Crosslin ("Dr. Crosslin"), Heather Machado ("Dr. Machado"), and Lee Hamm ("Dr. Hamm") (collectively, the "Individual Defendants"), respectfully submit this Memorandum in Support of their Motion to Dismiss all claims against them in the Complaint filed by Pro-Se Plaintiff, Yue Zhao ("Plaintiff"). On December 9, 2025, Plaintiff filed a 184-paragraph, 46-page complaint alleging numerous conclusory, repetitive, and contradictory allegations against Individual Defendants, as well as against Defendant Tulane University ("Tulane").[1]  Plaintiff's Complaint, which is excessively long and filled with inconsistencies and repetition,[2] fails to sufficiently allege essential facts in support of his claims of Intentional Infliction of Emotional Distress (Count V), Negligent Supervision (Count VI), Defamation (Count VIII), Abuse of Rights (Count IX), and Fraud (Count X) against Individual Defendants. For the below reasons, all claims against Individual Defendants fail as a matter of law and must be dismissed according to Federal Rule of Civil Procedure 12(b)(6).

---

[1] Contemporaneous with this motion by Individual Defendants, Tulane also moves to dismiss all claims against it in Plaintiff's Complaint.

[2] For example, Plaintiff purports to seek recovery under Title IX in his Prayer for Relief, though he does not plead any count under Title IX. R. Doc. 1 at 45-46.

## I.    BACKGROUND

### A.    Factual Allegations

This is the case of an international graduate student who, while remaining enrolled in his Ph.D. program at Tulane, disagrees with the academic and administrative decisions of the university. Plaintiff is an international student in the Biomedical Sciences Ph.D. program at Tulane.[3] He is a citizen of China and is participating in the Ph.D. program as an F-1 visa holder.[4] As a Ph.D. student, Plaintiff is enrolled in a program of study that requires participation in a research laboratory.[5] His supervisor in the dry laboratory (i.e. a laboratory that does not conduct experiments involving physical materials) where he worked on computational analysis was defendant Dr. David Crosslin.[6] Plaintiff contends that he was wrongly removed from Dr. Crosslin's laboratory after being cited for performance issues involving his "professionalism, integrity, academic performance, and suitability."[7] These issues included poor attendance and failure to attend meetings, one of which Plaintiff alleges Dr. Crosslin canceled without notice.[8] Plaintiff further contends that he was not able to contact Dr. Crosslin and that he did not receive the academic feedback he desired.[9] Plaintiff further alleges that these cited issues by Dr. Crosslin were for issues prior to when he purported requested and obtained an "accommodation" to work remotely in China.[10]

---

[3] R. Doc. 1 at ¶ 1. Individual Defendants' statement of facts assumes Plaintiff's allegations are true for the purposes of this Motion to Dismiss only and does not otherwise concede the validity of any of Plaintiff's assertions.

[4] R. Doc. 1 at ¶¶ 14, 43, 178.

[5] R. Doc. 1 at ¶ 51.

[6] R. Doc. 1 at ¶ 3.

[7] R. Doc. 1 at ¶ 9, 123.

[8] R. Doc. 1 at ¶ 7.

[9] R. Doc. 1 at ¶¶ 26-28.

[10] R. Doc. 1 at ¶ 9.

PD.60466671.3

According to Plaintiff, in March 2025, he was diagnosed with a condition involving liver dysfunction that required him to undergo "a diagnostic procedure not readily available to him in the United States at that time[.]"[11] On March 12, 2025, he alleges that he notified Dr. Crosslin that he needed to work remotely while receiving medical treatment, which Dr. Crosslin approved.[12] On March 14, 2025, Plaintiff alleges that he further notified Dr. Heather Machado, the Assistant Dean of the program, who approved his remote work arrangement on March 21, 2025.[13] Aside from these factual allegations, he does not allege that he specifically requested medical leave nor that he engaged in any process to request or obtain an accommodation for this alleged disability. Plaintiff further does not allege if he is disabled, beyond needing some type of diagnostic procedure, or how his alleged liver dysfunction impacted him. According to Plaintiff, he traveled to China and performed his lab duties remotely.[14] Plaintiff does not allege what time period he spent in China, does not specify the dates on which he was in China, and does not allege that he provided an estimated return date to the university.

According to Plaintiff, he was advised on July 31, 2025, prior to the start of the new school year, that due to his performance issues and professionalism, as well as his unauthorized indefinite stay in China, he would be removed from his laboratory assignment with Dr. Crosslin.[15] Plaintiff acknowledges that he was qualified and able to continue participating in the Ph.D. program;[16] he simply was no longer assigned to Dr. Crosslin's laboratory. He was not and has never been

---

[11] R. Doc. 1 at ¶ 2. Of note, a simple internet search shows that "Fibroscan," the diagnostic treatment sought by Plaintiff, was readily available in the United States as recently as 2024. *See When Is FibroScan® Testing Recommended?*, INDIANAPOLIS GASTROENTEROLOGY AND HEPATOLOGY (Oct. 28, 2024), https://indygastro.com/when-is-fibroscan-testing-recommended/.

[12] R. Doc. 1 at ¶¶ 3-4.

[13] R. Doc. 1 at ¶ 5.

[14] R. Doc. 1 at ¶¶ 3-5.

[15] R. Doc. 1 at ¶¶ 7-10.

[16] R. Doc. 1 at ¶ 56.

dismissed from the Ph.D. program.[17] To remedy this deficiency of pleading, Plaintiff alleges a "constructive expulsion," by which he claims to have been subjected to "conditions so intolerable" that a reasonable student would not be able to continue in the program.[18] The only "conditions" he alleges involve vague descriptions of a "hostile and intimidating" environment, with no specifics.[19] Despite this "constructive expulsion," on August 13, 2025, Plaintiff contends that he renewed his *student* visa and returned to the United States "without delay."[20]

On August 29, 2025, Plaintiff sent a demand letter to Dr. Hamm and the university "detailing the discriminatory and retaliatory conduct and requesting an administrative hearing."[21] According to Plaintiff, Tulane advised Plaintiff that he was required to obtain a new dissertation advisor by September 25, 2025,[22] to maintain good standing in the program. He was further instructed to engage with Tulane's Office of Institutional Equity, which, at the time he filed his Complaint, was in the process of investigating his allegations.[23] Plaintiff alleges that Drs. Hamm and Machado failed to report the conduct of Dr. Crosslin to the Office of Institutional Equity, but he does not specify how or when those individuals became aware of any wrongdoing.[24] Plaintiff also extensively references other alleged litigation and a "toxic environment" that occurred to "students like Plaintiff," though he does not specifically allege that he was subjected to this environment other than the issues he experienced with Dr. Crosslin.[25] Other than his report to the

---

[17] *See* R. Doc. 1 at ¶ 59.

[18] "Constructive expulsion," as alleged by Plaintiff, is not a cognizable theory under the applicable law. This is discussed further in Tulane's Motion to Dismiss, filed contemporaneously herewith.

[19] R. Doc. 1 at ¶¶ 13, 59.

[20] R. Doc. 1 at ¶ 14.

[21] R. Doc. 1 at ¶ 15.

[22] R. Doc. 1 at ¶ 68.

[23] R. Doc. 1 at ¶ 20.

[24] R. Doc. 1 at ¶ 21.

[25] R. Doc. 1. At ¶¶ 29-37.

PD.60466671.3

Office of Institutional Equity, Plaintiff asserts that he also complained to the U.S. Department of Education's Office of Civil Rights and the U.S. Department of Health and Human Services, though he has not been contacted by either entity.[26] He does not allege that he filed any administrative action with any other entity including the Equal Employment Opportunity Commission.

### B.    Plaintiff's Claims and Damages

Plaintiff's theories of law are numerous, duplicative, and often contradictory, alleging twelve causes of action (with some citing multiple statutes) in total. As discussed in greater detail in Tulane's Motion to Dismiss, Plaintiff alleges that Tulane committed disability discrimination and failure to accommodate in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count I); retaliation in violation of Title V of the ADA and Section 504 (Count II); creating a hostile educational environment in violation of Section 504 (Count III); breaching a contract with Plaintiff under Louisiana law (Count IV); inducing Plaintiff by detrimental reliance under Louisiana law (Count VII); failing to provide an accommodation in violation of Title III of the ADA and Section 504 (Count XI); and committing national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Count XII), Against the Individual Defendants, Plaintiff alleges the following:

In Count V (Intentional Infliction of Emotional Distress), Plaintiff alleges that Dr. Crosslin intentionally revoked his "accommodation" requesting remote work authority, basing this on the fact that Dr. Crosslin "knew or should have known" that the action would be in violation of federal law and policy.[27] Based on Dr. Crosslin's "position[] of heightened trust and responsibility,"

---

[26] R. Doc. 1 at ¶¶ 38-39.
[27] R. Doc. 1 at ¶ 93.

Plaintiff claims that the following conduct was extreme and outrageous, and so constituted intentional infliction of emotional distress ("IIED") under Louisiana law and La. Civ. Code. Art. 2315:[28]

- Cancelling a scheduled meeting, then using the meeting as pretext to "revoke Plaintiff's previously approved disability accommodation."[29]

- Revoking Plaintiff's "accommodation" while he was abroad.[30]

- Cutting off Plaintiff's stipend support after his removal from the assignment with his laboratory.[31]

- "Falsely" accusing Plaintiff of misconduct.

- Removing Plaintiff from the assignment with his laboratory "without any investigation."[32]

- Causing Plaintiff to experience "sudden financial deprivation" based on the stipend he was no longer entitled to.[33]

- Expressing unspecified "personal hostility" towards Plaintiff.[34]

- With little to no facts to support, "creating a hostile, degrading, and intimidating academic environment" to force Plaintiff out of his Ph.D. program.[35]

---

[28] R. Doc. 1 at ¶ 94.
[29] R. Doc. 1 at ¶ 96(a).
[30] R. Doc. 1 at ¶ 96(b).
[31] R. Doc. 1 at ¶ 96(c).
[32] R. Doc. 1 at ¶ 96(e).
[33] R. Doc. 1 at ¶ 96(f).
[34] R. Doc. 1 at ¶ 96(g).
[35] R. Doc. 1 at ¶ 96(h).

PD.60466671.3

He alleges that these actions caused him to experience "severe emotional distress," leading to a diagnosis of Major Depressive Disorder, anxiety, and the inability to sleep or perform academic work.[36]

In Count VI (Negligent Supervision, Training, Retention, and Gross Negligence), Plaintiff alleges that Drs. Hamm and Machado are individually responsible for violating duties of care owed to Plaintiff under La. Civ. Code arts. 2315 and 2316.[37] It is not clear which portions of this count, also alleged against Tulane, are directed specifically to the Individual Defendants. However, Plaintiff does allege that Drs. Hamm and Machado owed a duty to report allegations of discrimination and retaliation, to "protect students from harm," to comply with federal law, and to respond to student concerns.[38] He alleges that they were notified of Dr. Crosslin's discriminatory acts and failed to report them, creating a "foreseeable and unreasonable risk of harm," resulting in financial injury, academic harm, emotional distress, professional damage, and "civil rights violations," potentially rising to the level of gross negligence.[39]

In Count VIII (Defamation), Plaintiff alleges that Dr. Crosslin wrote an email to Dr. Machado, "a senior administrator" in the Ph.D. program that contained "false statements" about Plaintiff's "purported misconduct," which he admits were incidents prior to when he "ever requested his accommodation."[40] Plaintiff does not specify what those statements were, why they were false, or any other details about the publication or statement besides the conclusory allegation that they were "pretextual, retaliatory, and malicious."[41] Because of this alleged defamatory

---

[36] R. Doc. 1 at ¶ 98.
[37] R. Doc. 1 at ¶ 101.
[38] R. Doc. 1 at ¶ 104.
[39] R. Doc. 1 at ¶¶ 108-109.
[40] R. Doc. 1 at ¶¶ 120-125.
[41] R. Doc. 1 at ¶ 125.

statement, Plaintiff contends that he experienced the harm outlined throughout (loss of stipend, loss of academic opportunities, reputational damage, emotional distress, and professional damage), and claims he is entitled to general, special, and emotional distress damages.[42]

In Count IX (Abuse of Rights), Plaintiff alleges that Dr. Crosslin violated the civil doctrine of abuse of rights, based on his academic authority over Plaintiff.[43] Specifically, according to Plaintiff, Dr. Crosslin (1) revoked his accommodation request; (2) fabricated false allegations to justify his removal from his research assignment; (3) removed Plaintiff from the research assignment unfairly; (4) removed Plaintiff's stipend access; and (5) vaguely created a hostile environment designed to force Plaintiff out of the program.[44] He claims that these actions were an exercise of his rights as a student and motivated (with no facts to support he claim) by personal animus and wrongful intent,[45] causing him to experience loss of his stipend, disruption of academic progress, reputational harm, emotional distress, psychological damage, and inability to complete his Ph.D. program.

In Count X (Fraud), Plaintiff alleges that Dr. Crosslin made a material misrepresentation of the truth regarding Plaintiff's "conduct, performance, and authorization to engage in medical travel."[46] Plaintiff does not specifically identify the statements that were made, other than vaguely alleging that Dr. Crosslin authored a written letter making such false statements, and that they were communicated to Dr. Machado on or about July 31, 2025.[47] Plaintiff seeks compensatory damages,

---

[42] R. Doc. 1 at ¶¶ 127-128.

[43] R. Doc. 1 at ¶¶ 130-131.

[44] R. Doc. 1 at ¶ 133.

[45] R. Doc. 1 at ¶ 135.

[46] R. Doc. 1 at ¶ 140.

[47] R. Doc. 1 at ¶¶ 144-145.

emotional distress damages, pecuniary losses, and damages for reputational harm based on this alleged fraud.[48]

In his Prayer for Relief, Plaintiff seeks compensatory damages, back pay and front pay (despite there being no allegation or proof that he was classified as an employee), injunctive relief to correct his academic record, restore his program standing, and implement accommodation procedures and retaliation safeguards, declaratory relief, punitive damages against Dr. Crosslin specifically, and retraction of the false statements allegedly made by Dr. Crosslin. For the reasons set forth herein, Plaintiff is not entitled to any of these forms of relief under any theory of law.

## II.    SUMMARY OF ARGUMENT

Dismissal of all claims against the Individual Defendants is warranted. As an initial matter, to the extent that Plaintiff attempts to allege any violation of the ADA, Section 504, and Title VI against the Individual Defendants, there is no liability against individuals under those statutes. Plaintiff's IIED claim (Count V) should be dismissed because the Complaint falls far short of pleading essential elements of that claim, including the high threshold for proving severe and outrageous conduct necessary to support such a claim. Plaintiff's compounded negligent supervision, training, retention, and gross negligence claim (Count VI) should be dismissed because the conclusory allegations therein attempt to improperly establish individual liability against the individual employees Dr. Hamm and Dr. Machado by imputing a vague duty to those individuals that does not exist, and because the decisions made by those individuals was not in violation of any duty owed to Plaintiff. Plaintiff's defamation claim (Count VIII) must be dismissed because he fails to adequately allege a specific, false statement that is not otherwise privileged as a matter of law, nor does he properly allege ill intent. Similarly, the abuse of rights

---

[48] R. Doc. 1 at ¶ 150.

claim (Count IX) invokes a civilian doctrine that is rarely used in Louisiana, and Plaintiff fails to show that any right was abused with the intent to cause him harm. Finally, regarding fraud (Count X), Plaintiff fails to meet the high particularity standard for a federal fraud claim or its state law counterparts, which require either fraud in the inducement of a contract, neither alleged nor present here, or negligent misrepresentation, which, again, requires a showing of ill intent. Because he has failed to sufficiently plead any claim against the Individual Defendants, all claims against them must be dismissed with prejudice.

## III.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint.[49]  The Fifth Circuit has explained that "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[50]  When pleaded facts do not permit a court to infer more than the mere possibility of misconduct, a Complaint has not shown the pleader is entitled to relief.[51] A court is not required to "accept labels, conclusions, or formulaic recitation of the elements of a cause of action," and is not bound to accept legal conclusions couched as factual allegations.[52]  "Indeed, the Court must first identify allegations that are conclusory and, thus, are not entitled to the assumption of truth."[53]  Factual allegations "must be enough to raise a right to relief above the speculative level."[54]  "Conclusory allegations or legal conclusions masquerading as factual conclusions will

---

[49] Fed. R. Civ. P. 12(b)(6). *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

[50] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Id.*

[52] *Twombly*, 550 U.S. at 555; *Ashcroft,* 556 U.S. at 678.

[53] *Currier v. Entergy Servs., Inc.*, 2014 WL 1093687, at *5 (E.D. La. Mar. 14, 2014).

[54] *Id.*; *see also Ashcroft,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

PD.60466671.3

not suffice to [defeat] a motion to dismiss."[55] Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."[56]

Under this standard, Plaintiff has failed to sufficiently state a claim for relief under any cause of action alleged against Defendants, and so his claims must be dismissed.

## IV.    ANALYSIS

### A.    To the Extent Alleged, Plaintiff's Claims Under the ADA, Section 504, and Title VI Cannot Proceed Against the Individual Defendants Because There is No Individual Liability Under Those Statutes.

While not specifically alleged against the Individual Defendants, to the extent that Plaintiff's allegations about his claims under the ADA, Section 504, and Title VI implicate Dr. Crosslin, Dr. Hamm, and Dr. Machado, he cannot succeed on those claims because those statutes do not provide for individual liability.

With respect to the ADA, Plaintiff confusingly pleads that he was entitled to a reasonable accommodation on the basis of his disability under Title III, but "reasonable accommodations" are based on the requirements of Title I and apply to employment relationships.[57] This Court has held that "there is no individual liability under the ADA" when analyzing a claim under Title I.[58] Title III, which applies to public accommodations operated by private entities, allows only for injunctive relief against the private entity, not damages.[59] And as to Title V of the ADA, the basis for Plaintiff's retaliation claim, the remedies made available for retaliation on the basis of the exercise of any Title V right are the same as those provided by Title III – i.e. injunctive relief, not damages.[60]

---

[55] *Jones v. Alcoa, Inc.,* 339 F.3d 359, 362 (5th Cir. 2003).

[56] *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

[57] *See* 42 U.S.C. § 12112. This contradiction is discussed further in Tulane's Motion to Dismiss.

[58] *Franklin v. City of Slidell*, 928 F. Supp. 2d 874 (E.D. La. 2013) (applying analysis to Title I of the ADA).

[59] 42 U.S.C. 12188. *See also George v. Hobby Lobby Stores, Inc.*, 769 F. Supp. 3d 537 (E.D. La. 2025).

[60] 42 U.S.C. § 12203(c). *See George*, 769 F. Supp. 3d at 545. Plaintiff's recovery is discussed in further detail in Tulane's Motion to Dismiss, filed contemporaneously herewith.

"The Rehabilitation Act and the ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies."[61] Because there is no individual liability under the ADA, there is no individual liability under Section 504. Similarly, Title VI "prohibits discrimination by programs or institutions, such as universities" and does not permit individual liability against particular decisionmakers.[62]

For these reasons, to the extent alleged, the Individual Defendants cannot be held liable to Plaintiff for the alleged violations of the ADA, Section 504, or Title VI.

### B.    Plaintiff's Allegations Against Dr. Crosslin Do Not Meet the High Burden of Proving Intentional Infliction of Emotional Distress (Count V).

There is a "high threshold for intentional infliction of emotional distress" in Louisiana.[63] A plaintiff must allege: (1) the conduct of the defendants was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[64] The standard for extreme and outrageous conduct is high:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[65]

"Merely tortious or illegal conduct does not rise to the level of extreme and outrageous."[66] Further, the intentionality requirement of the tort is narrowly construed.[67] An intentional act occurs only

---

[61] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). *See also Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999).

[62] *Machie v. Youssef*, 824 F. Supp. 2d 1, 3 (D.D.C. 2011). *See also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161 (11th Cir. 2003) ("the text of Title VI also precludes liability against those who do not receive federal funding, including individuals.")

[63] *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1020 (La. 2000).

[64] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991); *Nicholas*, 765 So.2d at 1022.

[65] *Id.* (emphasis added).

[66] *Groff v. Sw. Beverage Co.*, 2008-625 (La. App. 3 Cir. 11/5/08), 997 So. 2d 782, 786.

[67] *See, e.g., Gaspard v. Orleans Parish Sch. Bd.*, 96-1754 (La. App. 4 Cir. 2/5/97); 688 So. 2d 1298, 1301-1302.

when an actor *consciously desired* the consequences of the act to occur or when he knew the result was certain or so substantially certain as to be nearly inevitable or virtually sure to follow.[68] Mere knowledge or appreciation of a risk does not constitute intent.[69]

The Fifth Circuit has found that allegedly discriminatory behavior was not "outrageous" where a plaintiff was provided certain accommodations for his disability but not others.[70] Even in cases involving severe verbal abuse and repeated harassment over an extended period of time, courts have dismissed claims for intentional infliction of emotional distress.[71] In the schooling context, the standard is high even when the alleged conduct involves minor children, which is not the case here. For instance, a Louisiana appellate court held that where a high school teacher engaged in classroom behaviors such as refusing to accept makeup work or justify a student's repeated absences, resulting in her being ineligible to graduate despite extreme extenuating home circumstances that the teacher was aware of, such conduct was not "outrageous" enough to constitute IIED.[72] In fact, to justify a finding of "extreme and outrageous conduct," Louisiana courts have found a teacher-student relationship to constitute IIED only where the teacher engaged in "an intentional long-term campaign of verbal bullying, ridicule and humiliation" including such behavior as to repeatedly make targeted sexually inappropriate comments during class to a female

---

[68] *Id.* at 1301.

[69] *Id.* at 1301-02.

[70] *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 134, 137 (5th Cir. 2004) (applying Texas law, which uses the same "extreme" and "outrageous" language as Louisiana law).

[71] *See*, *e.g.*, *Smith v. Ouachita Parish Sch. Bd.*, 29,873 (La. App. 2 Cir. 9/24/97); 702 So.2d 727, *writ denied*, 97–2721 (La.1/16/98); 706 So.2d 978 (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); *Groff v. Southwest Beverage Co., Inc.*, 2009-625 (La. App. 3 Cir. 11/5/08), 997 So.2d 782, 787 (holding that a supervisor yelling and cursing at his employee and pounding on desks during their conversation was not so extreme and outrageous as to satisfy a claim for intentional infliction of emotional distress). *Mitchell v. Tracer Construction Co.*, 256 F. Supp. 2d 520, 527 (M.D. La. 2003) (holding that plaintiff's allegations that she was physically threatened, threatened with discharge, continuously subjection to racial slurs, comments, and epithets were insufficient to state a IIED claim).

[72] *Barrino v. E. Baton Rouge Par. Sch. Bd.*, 96-1824 (La. App. 1 Cir. 6/20/97), 697 So. 2d 27, 32.

student and actively making fun of her in front of other students, culminating in an incident where he called her a "slut," leading to ridicule from her other classmates.[73]

There is no such extreme conduct alleged here. Plaintiff's Complaint includes threadbare allegations and mostly legal conclusions as to how Dr. Crosslin could have intentionally inflicted emotional distress on him. At best, Plaintiff claims that Dr. Crosslin was a bad advisor, failing to attend meetings and not being present in providing academic mentorship.[74] Specifically, Plaintiff alleges that Dr. Crosslin (1) canceled a meeting between the two; (2) revoked an alleged "accommodation"; (3) cut off Plaintiff's stipend; (4) alleged performance issues by Plaintiff; (5) removed Plaintiff from a research position; and (6) allegedly expressed "personal hostility" in response to Plaintiff's requested accommodation.[75] Plaintiff concludes that Dr. Crosslin's knowledge of civil rights law, coupled with his supervisory authority over Plaintiff, made Plaintiff "vulnerable" to a "power imbalance" between the two that made the alleged acts of Dr. Crosslin "unreasonable."[76]

Plaintiff's allegations do not pass muster under *Twombly* which requires more than a "formulaic recitation of the elements of the plaintiff's claim."[77] Even taking all of Plaintiff's claims as true, these allegations are both conclusory and insufficient to establish a claim for intentional infliction of emotional distress against Dr. Crosslin. There are no specific facts pled to support the position that Dr. Crosslin engaged in a "long-term campaign" of behavior against him. In fact, the specific facts Plaintiff does allege contradict his claim that he was subjected to extreme or outrageous conduct. He states that Dr. Crosslin was frequently unavailable for meetings and that

---

[73] *Smith v. Atkins*, 622 So. 2d 795, 796-97, 800 (La. App. 4th Cir. 1993).

[74] R. Doc. 1 at ¶¶ 26-28.

[75] R. Doc. 1 at ¶ 96.

[76] R. Doc. 1 at ¶¶ 93-95.

[77] 550 U.S. 544 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

14

he did not receive the academic feedback he desired,[78] but also that Plaintiff "mostly work[ed] independently on computational analysis, typically meeting Crosslin only once or twice a year."[79] Plaintiff does not allege there was name-calling, prejudice, or personal attacks on him. The alleged behaviors, even accepted as true, amount to typical gripes between an advisor and advisee in an academic setting, which are "indignities, threats, annoyances, [and] petty oppressions," at best.[80] These merely evidence Dr. Crosslin's exercise of academic discretion in running his program. And the conclusory allegation that Dr. Crosslin's behavior was "deliberate and malicious"[81] does not support the high bar required to prove that his actions were intended to cause specific harm to Plaintiff.

Plaintiff has simply not met the standard for alleging an IIED claim under Louisiana law and Count V must be dismissed.

### C.    Plaintiff Fails to Allege a Negligent Supervision, Training, Retention and Gross Negligence Claim against Drs. Hamm and Machado (Count VI).

Plaintiff's compounded claim in Count VI (Negligent Supervision, Training, Retention and Gross Negligence) against Dr. Hamm and Dr. Machado, as well as defendant Tulane[82] implicates three different claims: (1) negligent supervision of a student; (2) negligent supervision and training; and (3) gross negligence. These claims, founded on conclusory statements and minimal facts, are a futile attempt to impute individual liability onto Dr. Hamm and Dr. Machado by creating duties that do not exist as a matter of law. As discussed above, Plaintiffs cannot be held

---

[78] R. Doc. 1 at ¶¶ 26-28.

[79] R. Doc. 1 at ¶ 6.

[80] *See White*, 585 So. 2d at 1209.

[81] R. Doc. 1 at ¶ 13.

[82] Tulane addresses the claims made against it in Count VI in its Motion to Dismiss, filed contemporaneously herewith.

individually liable for the claims asserted under the ADA, Section 504, and Title IX. In any case, none of these claims passes muster under the Rule 12(b)(6) standard.

In order to establish a claim for negligent supervision of students under Louisiana law, a party must prove:

> (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. [83]

Louisiana courts have only found liability on the part of schools for negligent supervision under limited circumstances, most of which involve bodily injury and with *grade school students*.[84] Here, Plaintiff is an adult graduate student at Tulane and therefore is not a typical plaintiff for a successful negligent supervision claim. Thus, his negligent supervision claim must be dismissed as a matter of law.

Plaintiff also alleges that Drs. Hamm and Machado, along with Tulane generally,[85] negligently failed to supervise, train, and monitor the actions of the Individual Defendants. Plaintiff acknowledges that the duty of care for such claims falls on the educational institution.[86]

---

[83] *Sims v. Samuel J. Green Charter Sch. Field*, 2024-0277 (La. App. 4 Cir 12/02/24) (citing Dean v. De La Salle of New Orleans, Inc., 21-0388, p. 6 (La. App. 4 Cir. 12/21/21), 334 So.3d 425, 429 (quoting *Wallmuth v. Rapides Par. Sch. Bd.*, 01-1779, p. 13 (La. 4/3/02), 813 So.2d 341, 349)).

[84] *See, e.g., Vaughn v. Orleans Parish Sch. Bd.,* 01-0556 (La. App. 4 Cir. 11/28/01), 802 So.2d 967, 969 (school board liable for the sexual assault of a student by another student, which occurred in a classroom where a teacher was present); *Doe v. E. Baton Rouge Parish Sch. Bd.*, 06-1966 (La. App. 1 Cir. 12/21/07); 978 So.2d 426, 433 (school board partially liable for sexual assault of student by another student where assault occurred on a bus owned/maintained by school board and while students were under supervision of a school board employee); *see also Hayes v. Sheraton Operating Corp.*, 14-0675 (La. App. 4 Cir. 12/10/14); 156 So.3d 1193, 1199 (school board **not** liable for plaintiff's rape even though it was aware that she was being bullied, since rape occurred off campus, after the end of the school year, at a private party not chaperoned by any school employees); *Jackson v. Madison Parish Sch. Bd.*, 34-228 (La. App. 2 Cir. 01/24/01); 779 So.2d 59, 65 (school board not liable where evidence clearly established that event happened so quickly that even if more teachers had been present they could not have prevented bully from physically attacking plaintiff).

[85] Defendant Tulane addresses this allegation in its own Motion to Dismiss, filed contemporaneously herewith.

[86] R. Doc. 1 at ¶ 101.

Louisiana courts analyze claims of negligent supervision or training under the theory of *respondeat superior*.[87] Individual liability cannot be imposed upon an employee simply because of their general administrative responsibility for performance of some function of employment.[88] To the extent these defendants are individually named as being responsible for negligent supervision, training, and retention, such a claim cannot succeed.

Plaintiff alleges that Drs. Hamm and Machado "also owed Plaintiff non-discretionary duties under Tulane's published policies and their administrative roles."[89] This appears to be the crux of Plaintiff's "gross negligence" claim against these defendants. Ultimately, these tort claims against Drs. Hamm and Machado are premised upon academic decisions regarding Plaintiff's advisory relationship, his academic performance, and Defendants' purported failure to adhere to supposed internal policies in conducting investigations into his complaints. Louisiana law is clear that educational malpractice claims are not generally actionable under tort law, particularly considering the broad discretion provided to schools in administering their academic matters and the doctrine of academic freedom.[90] In analyzing a case implicating a university's academic freedom, the Supreme Court of the United States has opined:

---

[87] *See Price v. La. Dept. of Transp. and Dev.*, 608 So.2d 203 (La App. 4 Cir. 1992) (analyzing a claim for negligent supervision under La. Civ. Code art. 2320); *Stein v. City of Gretna*, 17-554 (La. App. 5 Cir. 5/30/19), 250 So.3d 330, 337 (analyzing the allegation that the City of Gretna failed to train and/or supervise its employees under the theory of respondeat superior, stating that "while the liability of an employer for negligent training and supervision is direct, for such a liability to attach, there must have been conduct that caused damage, and this conduct could only have been committed by an employee.")

[88] *See Mills,* 340 So.3d at 971; *see also Mier v. Sompo America Insurance Co.*, 2023 WL 2950631 at *4 (M.D. La. 2/13/2023).

[89] R. Doc. 1 at ¶ 104.

[90] *See Mills v. Tarver*, 340 So.3d 959, 971 (La. App. 1 Cir. 2021) ("It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible, which we feel it is not."); *Miller v. Loyola University of New Orleans*, 829 So.2d 1057, 1060 (La. App. 4 Cir. 2002) ("[P]ublic policy . . . accords educational institutions broad discretion in matters purely academic ... and directs judicial non-interference in the decisions with that discretion."); *Wallace v. Southern University*, 2020-00647 (La. 9/29/20), 301 So.3d 1162 (stating that "educational malpractice is not a valid theory of liability anywhere in Louisiana statutory law or jurisprudence.").

PD.60466671.3

> When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.[91]

Accordingly, the Fifth Circuit and courts within the Fifth Circuit generally dismiss claims premised upon academic decisions.[92]

The broad, conclusory allegations made by Plaintiff against defendants Dr. Hamm and Dr. Machado, including that they were mandatory reporters of the "allegations of discrimination or retaliation" Plaintiff made or that they had a duty to "intervene and protect students from harm," also fail as a matter of law. He does not specify how or when those individuals became aware of any wrongdoing other than being "notified" of Dr. Crosslin's "discriminatory acts," a conclusory allegation that fails to prove they had actual knowledge of any wrongdoing.[93] He even specifically states that he was able to file a complaint on August 29, 2025, and that Dr. Hamm "acknowledged receipt and told [him] he will review this case."[94] Plaintiff's claim remains under investigation as of the filing of his Complaint.[95]

Based upon Plaintiff's own allegations, accepted as true, Defendants Dr. Hamm and Dr. Machado did not improperly fail to report any harm caused to Plaintiff, and their actions (or alleged inactions) did not cause Plaintiff any harm. They did not deprive Plaintiff of any right to report misconduct. They received Dr. Crosslin's notice about Plaintiff's misconduct, professionalism,

---

[91] *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)

[92] *Seals v. Mississippi*, 998 F. Supp. 2d 509, 523 (N.D. Miss. 2014) (Courts "must accept . . . 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University[.]'") (quoting *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir.1999) (Court rejected disgruntled Ph.D. student claims that false accusations of cheating resulted in inadequate grades, a remediation plan, denial of participation in an internship program, and ultimate dismissal from the program.).

[93] R. Doc. 1 at ¶¶ 21, 106.

[94] R. Doc. 1 at ¶ 15.

[95] R. Doc. 1 at ¶¶ 18-19.

PD.60466671.3

and attendance issues in his research laboratory and responded appropriately, by granting Plaintiff until September 25, 2025, to find a new research advisor. Plaintiff was allowed to report his dissatisfaction to the proper channels within Tulane, and his claims remain under investigation. In reviewing the decision made by Defendants Dr. Hamm and Dr. Machado, they are shielded from the bare allegations of negligence by the doctrine of academic freedom, as the Individual Defendants were entitled to use their discretion with respect to Plaintiff's assignment with Dr. Crosslin's laboratory based on the information available. The decision to remove him from the research assignment was not "a substantial departure from accepted academic norms" and was based on legitimate professional judgment.[96]

Because no claim against these individual defendants can succeed, Plaintiff's claims for negligent supervision, training, retention, and gross negligence (Count VI) must be dismissed.

### D.    Plaintiff Has Not Alleged any Defamation (Count VIII) Against Dr. Crosslin.

Plaintiff's threadbare defamation claim against Dr. Crosslin fails to meet the heightened pleading standards under Louisiana law. To recover for defamation, a plaintiff must allege specific facts supporting the following elements: (1) a false, defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault; and (4) resulting injury.[97]  If even one of the elements is absent, the cause of action fails.[98]  It is well established that a plaintiff in a defamation suit must allege, with specificity, the defamatory statements allegedly uttered by a defendant; "to plead material facts, a petitioner alleging a cause of action for defamation must set forth in the petition with reasonable specificity the defamatory statements allegedly published by

---

[96] *See Ewing*, 474 U.S. at 225.

[97] *See Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06); 935 So. 2d 669, 681; *Costello v. Hardy*, 03-1146 (La. 1/21/04); 864 So. 2d 129.

[98] *See Kennedy*, 935 So. 2d at 681; *Costello*, 864 So. 2d at 139.

PD.60466671.3

the defendant."[99]  Plaintiff must "allege . . . specific defamatory statements."[100]  Such specificity is legally required in order for the defendant to be informed of "what he or she is alleged to have said in order to be able to prepare a defense."[101]  Broad, conclusory allegations of defamation are legally insufficient to fulfill the requirement of alleging defamatory words.[102] Louisiana courts have dismissed defamation claims where the alleged defamatory statement was based on a legitimate belief of poor conduct, not intended to cause harm, or are based on subjective opinions.[103]

Plaintiff's allegations fail under these exacting standards. First, Plaintiff does not adequately allege the defamatory statement was, only describing it as a "communication to a university administrator" accusing him of misconduct, claiming that he took "an unauthorized medical-necessity trip" and stating that he "failed to attend a meeting that Dr. Crosslin himself canceled."[104] Plaintiff further does not allege the falsehood of the statement, merely concluding that the statement (which is unspecified) was false. He does not state when the meeting that he alleges Dr. Crosslin lied about took place, does not detail how the written communication specifically misrepresents the situation, and does not provide context as to how the statement could have been truthful such that Dr. Crosslin can be informed of what he "is alleged to have said in order to be able to prepare a defense."[105] Based upon Plaintiff's allegations, accepted as true for purposes of this pleading, Dr. Crosslin sent a communication describing his subjective opinions

---

[99] *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99); 737 So.2d 706, 713.

[100] *Badeaux v. Southwest Comp. Bureau, Inc.*, 05-612 (La. 3/17/06); 929 So.2d 1211, 1218.

[101] *Fitzgerald*, 737 So. 2d at 713.

[102] *See Juneau v. Avoyelles Par. Police Jury*, 482 So. 2d 1022, 1027-28 (La. App. 3d Cir. 1986).

[103] *See Mitnaul v. Petrosh*, 56,485 (La. App. 2 Cir. 10/1/25), 421 So. 3d 1194, 1203 (finding a letter written regarding an individual's suspected inappropriate relationship with a minor was not defamatory because it merely described suspicious behavior); *Jones v. Citizens for a New Louisiana*, 2023-0654 (La. App. 1 Cir. 10/7/25), 424 So. 3d 208, 220-21 (finding that a petition for defamation should be dismissed even where the allegations included the entirety of the statements made because they could reasonably be interpreted as "the subjective opinions of the defendants").

[104] R. Doc. 1 at ¶ 120.

[105] *Fitzgerald*, 737 So. 2d at 713.

on the issues between him and Plaintiff in their advisory relationship, and that Plaintiff disagreed with those assertions. A disagreement as to the veracity of a statement does not constitute defamation, particularly where the details of the statement are not properly alleged or specified.

Even if the statement was false or defamatory, Plaintiff fails to allege that there was any unprivileged communication made. The privilege defense is "founded upon the principle that as a matter of public policy, in order to encourage the free communication of views in certain defined instances, a person is sometimes justified in communicating defamatory information to others without incurring liability."[106] "Internal communications by employees to superiors regarding work related matters, particularly the job performance of [others], is entitled to a qualified privilege when made in good faith to the proper parties."[107]

Based on the allegations of the Complaint, the purported defamatory statement was a private communication between Dr. Crosslin and Dr. Machado, two university employees, regarding Plaintiff's performance in Dr. Crosslin's research laboratory. As a matter of law, such a statement regarding academic matters and performance is not a publication and is privileged. The statement was not made publicly available, was not predicated on the purpose of causing Plaintiff any harm, and was protected by the academic discretion afforded to Dr. Crosslin in identifying potential issues with the students assigned to his laboratory, as discussed above.[108] As an internal communication made in good faith, the allegedly defamatory statement is privileged, and so Plaintiff has not proven the essential element of his *prima facie* case that the defamatory statement be unprivileged.

---

[106] *Jalou II, Inc. v. Liner*, 2010-0048 (La. App. 1 Cir. 6/16/10), 43 So. 3d 1023, 1033.

[107] *Henderson v. Guillory*, 546 So. 2d 244 (La. Ct. App.), *writ denied*, 551 So. 2d 635 (La. 1989)

[108] *See Ewing*, 474 U.S. at 225.

Finally, Plaintiff has completely failed to allege any facts that Dr. Crosslin's statement was predicated on the purpose of causing Plaintiff harm. Pushed to its logical conclusion, Plaintiff's claim would turn any criticism by an advisor against an advisee as allegedly defamatory.

For all these reasons, Plaintiff's defamation claim (Count VIII) fails as a matter of law and must be dismissed.

### E.    Plaintiff Has Not Alleged any Abuse of Rights by Dr. Crosslin (Count IX).

Plaintiff broadly alleges that Dr. Crosslin is liable for an abuse of rights against him because of duties owed to him based on his academic authority over Plaintiff.[109] Under Louisiana law, the abuse of rights doctrine is "applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[110] "The abuse of right doctrine has been applied sparingly in Louisiana, and only in cases where there is (1) proven an intent to harm, or a predominant motive to cause harm, or (2) where it was shown that there was no serious and legitimate interest in the exercise of the right worthy of judicial protection."[111] There is thus a high bar for a plaintiff to prove that an individual's "predominant motive for [exercising a right] was to cause harm."[112]

As discussed above, Dr. Crosslin's academic decision-making is broadly protected by the doctrine of academic freedom.[113] Plaintiff pleads no specific facts that support that Dr. Crosslin was primarily motivated to cause harm to Plaintiff, instead relying on the conclusory statement that Dr. Crosslin "exercised these supervisory powers not for any legitimate academic or

---

[109] R. Doc. 1 at ¶¶ 130-131.

[110] *Truschinger v. Pak*, 513 So. 2d 1151, 1154 (La. 1987).

[111] *Clark v. Glidden Coatings & Resins, Div. of SCM Corp.*, 666 F. Supp. 868, 871 (E.D. La. 1987) (citing *Illinois Central Railroad Company v. International Harvester Co.,* 368 So.2d 1009 (La. 1979)).

[112] *Id.* at 873.

[113] *See Mills*, 340 So.3d at 971.

institutional purpose[.]"[114]Plaintiff fails to meet even the minimum standard for proving intent to cause harm, much less the heightened standard for proving that such bad intent was a "predominant motive."[115] Because of this utter deficiency of pleading, Plaintiff's claim for abuse of rights against Dr. Crosslin (Count IX) must be dismissed.

### F.    Plaintiff Has Not Specifically Plead Fraud Such that His Allegations can Survive a Motion to Dismiss (Count X).

Plaintiff's allegations of fraud fail to meet the high burden of specificity required for such a claim to succeed. As an initial matter, Plaintiff cites the Louisiana Civil Code articles describing fraud as a vice of consent applicable to contract law,[116] but does not allege that he or Dr. Crosslin were engaged in any contractual relationship. Under Louisiana law, to succeed on a fraud claim under article 1953, a plaintiff "must demonstrate the existence of a contract."[117] In the absence of a direct contract, there is no valid cause of action.[118] With no allegation of a contractual relationship between Dr. Crosslin and Plaintiff, a claim for fraud under this theory of law fails.

Plaintiff also asserts his fraud claim under article 2315. "[A]n action for fraud (negligent misrepresentation) can also be based in tort under article 2315."[119] "Negligent misrepresentation occurs when there is a legal duty to supply the correct information and a breach of that duty resulting in damages to the plaintiff."[120] "Specific intent to deceive is a necessary element of fraud,

---

[114] R. Doc. 1 at ¶ 132.

[115] *See Clark*, 666 F. Supp. at 871

[116] *See* La. Civ. Code art. 1953 ("Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."); art. 1954 ("Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.")

[117] *Free v. Abbott Lab'ys, Inc.*, 164 F.3d 270, 274 (5th Cir. 1999) (quoting *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1067 (5th Cir.1993)).

[118] *Id.*

[119] *Id.*

[120] *Casbon v. K.W.E.J., LLC*, 23-321 (La. App. 5 Cir. 10/4/23), 375 So. 3d 524, 530.

and fraud cannot be based on mistake or negligence, regardless how great."[121] To establish negligent misrepresentation, "a plaintiff must prove (1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation."[122]

As discussed at length, none of Plaintiff's allegations pass muster beyond conclusory statements to demonstrate that Dr. Crosslin had the specific intent to deceive him. Ultimately, this tort claim is premised upon an academic decision made by Dr. Crosslin, and as discussed, academic decision-making is largely protected by the doctrine of academic freedom.[123] There is no non-conclusory fact in the Complaint that would support that Dr. Crosslin intended to harm or deceive Plaintiff, and so a claim for fraud predicated on negligent misrepresentation fails. Plaintiff has also not alleged that Dr. Crosslin owed him any legal duty to supply the correct information, and as discussed at length, Dr. Crosslin's statements about Plaintiff's performance were not in violation of any duty. Finally, negligent misrepresentation, which typically applies to contractual relationships, requires that the damages suffered by the plaintiff be based on a justifiable reliance on a misrepresentation or omission. Plaintiff has not alleged that he relied on any statement made by Dr. Crosslin other than the representation that he would be entitled to return to China to seek treatment, which he was afforded. In fact, if the alleged misrepresentation by Dr. Crosslin (that his performance issues and attendance were the basis for his removal from the laboratory) was made *after* Plaintiff was already working remotely from China, there is no basis to support that he would have relied on such a statement to change his position to his detriment. The damages Plaintiff claims are thus not related to any reliance on Dr. Crosslin's alleged misrepresentation. Because of

---

[121] *Robins v. Coles*, 2023-1343 (La. App. 1 Cir. 8/26/24), 395 So. 3d 345, 352, *writ denied,* 2024-01179 (La. 12/11/24), 396 So. 3d 965.

[122] *S. Orthopaedic Specialists, L.L.C. v. State Farm Fire & Cas. Co.*, 64 F.4th 657, 661 (5th Cir. 2023).

[123] *See Mills*, 340 So.3d at 971.

PD.60466671.3

the failure to meet any pleading element, there can be no claim for negligent misrepresentation/fraud under Louisiana law.

While not specifically alleged, in federal court, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[124] "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6)."[125] Fifth Circuit precedent "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[126] The Complaint in this matter is deficient because it fails to articulate the specific fraudulent statements made by Dr. Crosslin, and instead only makes vague accusations that a limited set of statements he made in a written communication were untrue, without explaining how or why such statements were false. Accordingly, under the federal pleading standard for fraud, Plaintiff's claim cannot succeed.

Because Plaintiff has failed to specifically allege fraud against Dr. Crosslin under any theory of law, his fraud claim (Count X) must be dismissed.

## V.    CONCLUSION

Based upon the foregoing reasons and legal authorities, Individual Defendants' Motion to Dismiss should be granted. Individual Defendants respectfully move this Court for an order dismissing with prejudice the claims discussed herein, at Plaintiff's costs, including any other relief to which Individual Defendants may also be warranted.

---

[124] Fed. R. Civ. P. 9(b).

[125] *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir.2004) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir.1993)).

[126] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 605 (5th Cir.1974)).

PD.60466671.3

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Rebecca Sha*
        Kim M. Boyle (La. Bar No. 18133)
        Rebecca S. Sha (La. Bar No. 35317)
        Andrew M. Albritton (La. Bar No. 39780)
        Caroline E. Perlis (La. Bar No. 40905)
        Canal Place | 365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130
        Telephone: 504 566 1311
        Facsimile: 504 568 9130
        Email: boylek@phelps.com
              rebecca.sha@phelps.com
              andrew.albritton@phelps.com
              caroline.perlis@phelps.com

**ATTORNEYS FOR DEFENDANTS DAVID CROSSLIN, HEATHER MACHADO, AND LEE HAMM**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2026, I filed the foregoing by using the CM/ECF system and have served notice of the filing pursuant to Fed. R. Civ. P. 5(b)(2) and Local Rule 5.4 to Pro-Se Plaintiff, Yue Zhao by certified mail to 500 Aries Dr. Apt 5A, Mandeville, LA 70471.

                        */s/ Rebecca Sha*
                        REBECCA SHA

PD.60466671.3