

# ADMINISTRATIVE POLICY

| **Policy Title** | Policy on Equal Opportunity/Anti-Discrimination |
|---|---|
| **Policy Subtitle/Subject** | Equal Opportunity/Anti-Discrimination |
| **Responsible Executive(s) (RE)** | **Vice President, Human Resources** |
| **Responsible Office(s) (RO)** | **Office of Human Resources; Student Affairs; Title IX Office; General Counsel** |
| **Primary Point of Contact from RO** | **Equal Opportunity & Resolution Management Department** |
| **Contact Information (email and phone)** | eo@tulane.edu     504-862-8083 |
| **Date Proposed** | 03/26/2025 |
| **Reviewed** | 12/17/2025 |
| **Last Updated** | 12/17/25 |
| **Effective Date** | 12/17/25 |

☒Permanent              ☐Temporary

EXHIBIT
**B**

# 1.0 POLICY STATEMENTS

## 1.1 Equal Employment & Educational Opportunity Statement

Tulane University is an equal opportunity educator and employer committed to providing an education and employment environment free of unlawful discrimination, harassment, and retaliation.   Legally protected demographic classifications (such as a person's race[1], color, religion, age, sex, national origin, shared ancestry, disability, genetics, veteran status, or any other characteristic protected by federal, state, or local laws) are not relied upon as an eligibility, selection or participation criteria for Tulane's employment or educational programs or activities.

## 1.2 Anti-Discrimination Statement

Tulane prohibits discrimination in its employment practices or educational programs/activities on the basis of age, color, disability, gender expression, gender identity, genetic information, marital status, military status, national origin, pregnancy, race, religion, sex, sexual orientation, shared ancestry, or veteran status, or any other status or classification protected by federal, state, or local law. Tulane complies with applicable federal and state laws addressing discrimination, harassment, and/or retaliation. Discrimination or harassment on the basis of any protected status or classification, by anyone affiliated with Tulane, whether verbal, physical, written, or visual, is unacceptable and will not be tolerated. Types of protected statuses, as used in this policy, are defined in § 7.0: Definitions.

Tulane encourages all community members to take reasonable and prudent actions to prevent or stop discrimination and harassment and to report concerning conduct so appropriate action can be taken. An appropriate response to concerning conduct may include direct intervention when safe to do so, enlisting the assistance of others, contacting law enforcement, and/or filing a complaint.

Internal complaints of discrimination, harassment and/or retaliation must be filed in accordance with this policy. Individuals must promptly report possible discrimination, harassment (including sexual harassment and violence), and/or retaliation so prompt and appropriate action can be taken. Conduct prohibited by this policy does not have to rise to the level of illegal conduct in order for it to be actionable and a violation of this policy. Tulane affiliates are encouraged to file a concerns report (http://tulane.edu/concerns) or contact the Equal Opportunity & Resolution Management Department at (504) 862-8083 or eo@tulane.edu. Personality differences, conflicts, or general mistreatment not based on a status protected by this policy, or a response to poor performance, are usually employee relation issues, not discrimination matters. Contact the Office of Human Resources by telephone at (504) 865-4748 or by email at hr@tulane.edu for help determining what type of issue you may be experiencing, and they will refer you to appropriate resources.

---

[1] In 2022, the Louisiana legislature passed its version of the CROWN Act, extending the definition of "race" to include traits historically associated with race, including but not limited to hair texture and protective hairstyles. Tulane recognizes and adheres to the CROWN Act and prohibits discrimination on account of one's natural, protective, or cultural hairstyles. Protective, natural or cultural hairstyles are but not limited to afros, dreadlocks, twists, locs, braids, cornrow braids, Bantu knots, and curls.

### 1.3 Academic Freedom & Free Speech Statement

Nothing contained in this policy shall be construed to limit the legitimate exercise of free speech, free expression, and academic freedom, including but not limited to written, graphic, or verbal expression that can reasonably be demonstrated to serve legitimate educational or artistic purposes, including research and scholarly activity. Conduct that reasonably serves a legitimate educational purpose, including pedagogical techniques, does not constitute harassment. This includes the expression of ideas, however controversial, in the classroom setting, academic environment, University-recognized activities, or on the campus. Artistic expression in the classroom, studio, gallery, and theater merits the same protection of academic freedom that is accorded other scholarly and teaching activities.

## 2.0 PURPOSE AND SCOPE

The scope of this policy's coverage is broad. This policy applies to visitors, applicants for admission to or employment with the University, students, and employees of the University who allege discrimination by university employees, students, visitors, contractors, or third parties under circumstances within Tulane's control.

### 2.1 Jurisdiction & Policy Coverage

This policy applies to conduct that occurs on campus. It also applies to conduct that occurs off campus, including online or electronic conduct, if: (1) the conduct occurred in the context of an employment or education program or activity of the University; (2) had continuing adverse effects on campus; or (3) had continuing adverse effects in an off-campus, University-sponsored employment or education program or activity. Examples of covered off-campus conduct include Tulane-sponsored study abroad, research, or internship programs.

Tulane does not have jurisdiction over individuals not affiliated with the university, such as former employees.

While the policy's scope of coverage is broad, the process and procedures that apply to the investigation and appeal will vary depending on the identity of the parties involved.

- Complaints against students will be processed in accordance with Tulane's Code of Student Conduct.
- Complaints against faculty will be processed in accordance with Tulane's Faculty Handbook and the Bylaws of the University Senate. Specifically, the Faculty Senate Committee on Equal Opportunity and Anti-Discrimination shall hear grievances against faculty alleging violations of Tulane University's Equal Opportunity and Anti-Discrimination policies that cannot be resolved informally. The committee does not have jurisdiction over grievances against faculty on appointments of less than a year or on the first year of appointment.

- Complaints against all others will be processed in accordance with the Staff Handbook. All others may include (though are not limited to) Staff, Administrators, Librarians, Post-Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, other student employees and faculty on appointments of less than a year or on the first year of appointment.

Some Respondents may have multiple roles, requiring the Equal Opportunity & Resolution Management Department to determine the Predominant Role, which dictates how the complaint would be processed. For example, a Graduate Teaching Assistant may be a student and an employee. If the complaint occurred in the context of the Graduate Teaching Assistant's employment, the predominant role would be of an employee and the complaint would be processed in accordance with the Staff Handbook. Conversely, if the complaint did not occur in the context of the Graduate Teaching Assistant's employment, the Predominant Role would be of a student and the complaint would be processed in accordance with the Code of Student Conduct. See Section 8.4, Complaint Procedures, Predominant Roles of Respondents.

## 3.0 APPLICABILITY OF THIS POLICY

University faculty (including visiting faculty), staff, students, and volunteers shall abide by this policy. Tulane can respond to specific instances and allegations of discrimination, harassment, and/or retaliation only if it is aware of them. Employees have a responsibility to report information about prohibited conduct that comes to their attention.

### 3.1 Reporting Obligations

There are federal laws that establish responsibilities for employees of universities to report certain types of incidents (such as sexual harassment under Title IX, or certain crimes under the Clery Act[2]). These laws each have a unique purpose, but generally, they are intended to protect the campus community and visitors from discriminatory or criminal behavior. These laws give rise to terms such as "mandatory reporter." While the legal duty to report may vary depending on the law, the situation, and your role, for purposes of reporting violations of this policy, the University is defining all employees as mandatory reporters relating to Title IX. If you know about sexual harassment, discrimination, or sexual assault involving a student, we need to know what you know. The process to share what you know about Title IX incidents involving students is detailed in Part III of the Title IX Amendment to the Equal Opportunity/Anti-Discrimination Policies.

Employees have a responsibility to report to the University all relevant details (obtained directly or indirectly) about an incident of discrimination, harassment, and/or retaliation that is made known to them and involves a student, staff member, faculty member, or third party affiliated with Tulane. Employees include Staff, Administrators, Faculty, Librarians, Post-Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, and other student employees, when disclosures are made to any of them in their capacities as employees.

---

[2] The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act or Clery Act, signed in 1990, is a federal statute codified at 20 U.S.C. § 1092.

**WHEN** to Report?

Within 24 hours, (or as soon as possible) after facts or allegations of possible harassment, discrimination, and/or retaliation are disclosed. Report what you know to the Equal Opportunity & Resolution Management Department at (504) 862-8083 or eo@tulane.edu.

Who **SHOULD** Report**?**

Employees should report allegations of possible discrimination, harassment, and/or retaliation upon receiving a specific complaint or report alleging improper activity. This includes informal complaints.

Who **MUST** Report**?**

- Supervisors or Managers must report allegations of possible discrimination, harassment, and/or retaliation upon receiving a specific complaint or report alleging a violation of this policy. This includes:

    ▪ Informal Complaints; and

    ▪ Discrimination, harassment, and/or retaliation by or against a person under someone's supervisory authority.

- All staff and faculty must report alleged violations specific to Title IX or reportable crimes under the Clery Act.

**How** do you report what you know?

Reports can be submitted in a number of ways, including:

- File a concerns report (http://tulane.edu/concerns).

- Contact the Equal Opportunity & Resolution Management Department at (504) 862-8083 or eo@tulane.edu.

- Issues of sex discrimination can be reported to Tulane's Assistant Provost for Title IX Compliance and Education, Julia Broussard, at (504) 865-5611 or titleix@tulane.edu.

- Faculty members may also contact their Department Chairperson; the Dean (or designee); or the Senior Vice President for Academic Affairs at (504) 865-5261.

- Employees may also contact the Office of Human Resources at (504) 865- 4748 or hr@tulane.edu, a department head/director, or other similar Administrator, whose responsibility it will be to refer the concern to the Equal Opportunity & Resolution Management Department for appropriate action.

- Students may also contact the Vice President for Student Affairs at (504) 314-2188 or the Associate Dean for Student Affairs for the Tulane University Health Sciences Center at (504) 988-5331.

## 4.0 WEBSITE ADDRESS FOR THIS POLICY

www.policy.tulane.edu

## 5.0 CONTACTS

| Subject | Contact | Telephone | E-mail/Web Address |
|---|---|---|---|
| Office of Campus Accessibility | Sydney Cone | 504-247-1774 | ADAaccess@tulane.edu |
| Title IX Office | Julia Broussard | 504-865-5611 | titleix@tulane.edu |
| Equal Opportunity & Resolution Management | Tiffany Smith, JD | 504-247-1756 | eo@tulane.edu |

## 6.0 CONTENT

1.0 POLICY STATEMENTS ................................................................................................ 2
    1.1 Equal Employment & Educational Opportunity Statement ................................ 2
    1.2 Anti-Discrimination Statement ................................................................................ 2
    1.3 Academic Freedom & Free Speech Statement ...................................................... 3
2.0 PURPOSE AND SCOPE ............................................................................................. 3
    2.1 Jurisdiction & Policy Coverage .............................................................................. 3
3.0 APPLICABILITY OF THIS POLICY ........................................................................ 4
    3.1 Reporting Obligations ............................................................................................... 4
4.0 WEBSITE ADDRESS FOR THIS POLICY ............................................................. 6
5.0 CONTACTS .................................................................................................................... 6
6.0 CONTENT ...................................................................................................................... 6
7.0 DEFINITIONS ............................................................................................................... 7
8.0 POLICY AND PROCEDURES ................................................................................... 10

8.2 Retaliation ........................................................................................................................ 13

8.3 Privacy & Confidentiality ................................................................................................ 14

8.4 Complaint Procedures ..................................................................................................... 14

8.5 Investigation Process ....................................................................................................... 16

8.5.1 Overview ....................................................................................................................... 16

8.5.2 Formal Investigation & Resolution of Complaints ................................................ 19

8.6 Appeals .............................................................................................................................. 20

8.7 Department Evacuation Expenses ................................................................................. 22

8.8 Americans with Disabilities Act, Reasonable Accommodation in Academic or  Work ................. 23

Environment ........................................................................................................................... 23

8.8.1 Requests for Reasonable Accommodation in Employment ................................. 24

8.8.2 Requests for Academic Accommodations ............................................................... 25

8.8.3 Additional Provisions .................................................................................................. 26

8.9 Title IX .............................................................................................................................. 26

8.10 Miscellaneous Provisions ............................................................................................. 27

**9.0 CONSEQUENCE OF VIOLATING THE POLICY** ............................................... **27**

**Appendix I - Federal Regulation Sexual Harassment Policy Amendment** ................ 28

## 7.0 DEFINITIONS

**Age** - The number of years from the date of a person's birth. With respect to employment, individuals who are forty (40) years of age or older are protected from discrimination and harassment. There is no age threshold for students or other participants in educational programs or activities.

**Color** - An individual's skin pigmentation, complexion, shade, or tone.

**Complainant** - The person reporting conduct that violates this policy and/or the victim of the alleged improper conduct.

**Complaints** - Report of conduct that may violate this policy pursuant to the reporting process outlined herein.

**Confidential Employee** - Any employee who is entitled under state law to have privileged communications. Confidential employees will not disclose such communications to Tulane without the permission of the student or employee, unless required by law when: (i) there is a concern that the student or employee will likely cause serious physical harm to self or others; or (ii) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18. Confidential employees at Tulane are in the following departments: Campus Health, Counseling and Psychological Services, Employee Assistance Program, and Campus Ministries.

**Confidential Resources** - Confidential Resources offer confidential services and do not share the information reported to them to other university departments for action. Except in rare, extreme circumstances, nothing will be shared without explicit permission. Exceptions to confidentiality are when

the provider believes an individual is a threat to themselves or others. Tulane encourages all victims and survivors to seek counseling in order to process their experience, options, and to begin the recovery process. See: The Health Center for Student Care (504) 865-5255 or the Counseling Center (formerly CAPS) (504) 314-2277.

**Disability** - A physical or mental impairment that substantially limits one or more major life activities. A person with a disability is any person who has such an impairment, has a record of such impairment, or is regarded as having such impairment. A qualified person with a disability must be able to perform the essential functions of the employment or volunteer position or the academic, athletic, or extra-curricular program, with or without reasonable accommodation. Temporary, non- chronic impairments that do not last for a long time and that have little or no long-term impact usually are not disabilities. The determination of whether an impairment is a disability is made on a case-by-case basis.

**Employee** - Any of the following university personnel: all full-time and part-time Staff, Administrators, Librarians, Post-Doctoral Candidates, wage employees (including temporary employees), part-time Faculty, part-time non-tenured Faculty, Clinical Faculty, Research Faculty, Professional Research Staff, Post-Doctoral Fellows, Residents, Visiting Professors, Professors of Practice, Adjunct Professors, Instructors, and/or Lecturers.

**Faculty** - All full-time Faculty (Professors, Associate Professors, and Assistant Professors), part- time Faculty, Clinical Faculty, Research Faculty, Visiting Professors, Professors of Practice, Adjunct Professors, Instructors, and/or Lecturers. See page 13 for further discussion of predominant role.

**Formal Investigation** - A matter is in the "formal investigation" phase when a party has received notice that they have been charged with a violation of the Equal Opportunity/Anti- Discrimination Policy. Not every situation requires a full-blown formal investigation. In some situations, a quick, informal investigation or resolution may be the best option. Accordingly, a formal investigation is preceded by an informal investigation phase, when Tulane is gathering facts and performing a gatekeeping analysis to determine if an Equal Opportunity/Anti- Discrimination Policy violation has been alleged and whether a formal investigation is needed.

**Gender** - An individual's socially constructed status based on the behavioral, cultural, or psychological traits typically associated with societal attribution of masculinity and femininity, typically related to one's assigned sex at birth.

**Gender Expression** - How someone expresses gender through appearance, behavior, or mannerisms. A person's Gender Expression may or may not be the same as the Gender Identity or assigned sex at birth.

**Gender Identity** - The Gender with which an individual identifies psychologically, regardless of what Gender was assigned at birth.

**Genetic Information** - Information about: (a) an individual's genetic tests, (b) the genetic tests of family members of such individual, and/or (c) the manifestation of a disease or disorder in family members  of such individual. Genetic information includes, with respect to any individual, any request for or receipt

of genetic services, as well as participation in clinical research that includes genetic services by such individual or any family member of such individual.

**Marital Status** - A person's state of being single, married, separated, divorced, or widowed.

**Military Status** - A person's past, current, or future membership, service, or obligation in a uniformed service. Uniformed services include the Army, Marine Corps, Navy, Army National Guard, Coast Guard, Air Force, Air National Guard, or Public Health Service commissioned corps. Certain disaster work also counts as uniformed service and qualifies an employee for protection under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

**National Origin** - An individual's actual or perceived country or ethnicity of origin. Tulane prohibits discrimination or harassment against an individual because of their ancestor's place of origin; the individual's physical, cultural, or linguistic characteristics relating to a particular national origin group; the individual's marriage to or association with members of a particular national origin group; or because of the individual's name or spouse's name is associated with a particular national origin.

**Parties** - The complainant and respondent to a complaint.

**Pregnancy** - A person's state of being pregnant, having children, or a medical condition related to pregnancy or childbirth. The Pregnancy Discrimination Act (PDA) forbids discrimination based on pregnancy when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits such as leave and health insurance, and any other term or condition of employment.

**Race** - An individual's actual or perceived racial or ethnic ancestry or physical characteristics associated with a person, such as skin color, hair, facial features, height, and weight. In 2022, the Louisiana legislature passed its version of the CROWN Act, extending the definition of "race" to include traits historically associated with race, including but not limited to hair texture and protective hairstyles. Tulane recognizes and adheres to the CROWN Act and prohibits discrimination on account of one's natural, protective, or cultural hairstyles. Protective, natural or cultural hairstyles are but not limited to afros, dreadlocks, twists, locs, braids, cornrow braids, Bantu knots, and curls.

**Religion** - All aspects of a sincerely held religious observance, practice, and belief.

**Respondent** - Someone alleged to have engaged in conduct prohibited by Tulane's Equal Opportunity/Anti-Discrimination Policy.

**Sex** - An individual's biological status of male or female, including pregnancy. Conduct of a sexual nature is by definition based on sex as a protected status.

**Sexual Orientation** - The inclination or capacity to develop intimate emotional, spiritual, physical, and/or sexual relationships with people of the same sex or gender, a different sex or gender, or irrespective of sex or gender.

**Shared Ancestry** – This occurs when a group of people share a common ancestor or set of ancestors. Shared Ancestry can be based on genetics, culture, or a combination of both. It goes beyond traditional notions of race or ethnicity, recognizing that discrimination can occur based on familial or ancestral ties that may not necessarily align with national borders. For example, individuals with a shared ancestry from a specific region or ethnic group might face discrimination even if they hold different nationalities.

**Staff** - Any of the following University personnel: all full-time and part-time employees, administrators, librarians, post-doctoral candidates, wage employees (including temporary employees), Professional Research Staff, Post-Doctoral Fellows, Residents, and employees not governed by the Faculty Handbook, the By Laws of the University Senate, or Code of Student Conduct such as faculty on appointments of less than a year or on the first year of appointment.

**Student** - Individuals registered or enrolled at Tulane for credit or non-credit bearing coursework including graduate, professional, and doctoral students. See page 13 for further discussion of predominant role.

**Undue Hardship** - An action that is unduly costly, extensive, or disruptive, or would fundamentally alter the nature or operation of a Tulane program or activity or would pose an imminent threat of harm to the disabled individual or other persons.

**Third Parties** - Tulane applicants, contractors, vendors, visitors, guests, or other persons under circumstances within the University's control that are not students, staff, or faculty as defined herein.

**Veteran Status** - Covered veterans include disabled veterans, special disabled veterans, veterans of the Vietnam era, and other protected veterans as defined by federal and state law.

## 8.0 POLICY AND PROCEDURES

### 8.1 Prohibited Conduct

This policy also prohibits harassment. Harassment based on an individual's protected status (age, color, disability, gender expression, gender identity, genetic information, marital status, military status, national origin, pregnancy, race, religion, sex, sexual orientation, shared ancestry, or veteran status, or any other legally protected characteristic) is any act of verbal or non-verbal physical aggression, intimidation,     hostility, aversion, detriment, or preference based on the person's protected status, when the following conditions are present:

- Submission to or rejection of such conduct is either an explicit or implicit term or condition of, or is used as the basis for decisions affecting an individual's employment or advancement in employment, evaluation of academic work or advancement in an academic program, or basis for participation in any aspect of a Tulane program or activity; and/or

- Such conduct has the purpose or effect of unreasonably interfering with or limiting that individual's: (1) educational environment (e.g., admission, academic standing, grades,

assignment); (2) work environment (e.g., hiring, advancement, assignment); (3) participation in a Tulane program or activity; (4) living environment (e.g., campus housing); or (5) receipt of legitimately- requested services (e.g., disability or religious accommodations), under both an objective and subjective standard.

A hostile environment can be created by anyone involved in a Tulane program or activity (e.g., students, employees, or even campus guests) where the unwelcome conduct is so severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefiting from Tulane's education or employment programs and/or activities. Mere offensiveness is not enough to create a hostile environment. Although repeated incidents increase the likelihood that harassment has created a hostile environment, a serious incident, even if isolated, can be sufficient. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment.

Depending on the seriousness, frequency, and/or pervasiveness, harassment may include: conduct or material (physical, oral, written, graphic, electronic messages or media posted or circulated in the community) involving epithets, slurs, negative stereotyping, threatening, intimidating, or hostile acts that serve no scholarly purpose appropriate to the academic context and gratuitously denigrates or shows hostility toward an individual or group because of age, color, disability, gender expression, gender identity, genetic information, marital status, military status, national origin, pregnancy, race, religion, sex, sexual orientation, shared ancestry, or veteran status.

**Examples of Prohibited Conduct**

- Adversely changing a Tulane employee's work responsibilities based on assumptions about the employee's ability to perform due to their age, disability, or genetic information.

- Excluding a student from a program or activity based on their complexion or hair texture associated with their race.

- Refusing to hire an applicant or admit a student applicant because of their race, religion, national origin, and/or shared ancestry.

- Targeting a student or employee because of their race, religion, national origin, and/or shared ancestry by electronically distributing personally identifying information.

- Denying an individual access to an educational program solely because of their military status.

- A supervisor subjecting an employee to repeated unwelcome questions about their sexual orientation.

- A professor subjecting a student to repeated unwelcome questions about their dating life and sexuality.

- Denying an applicant membership or benefits in a student group because of their Hindu religion or because they are perceived to be from India or another country where Hinduism is commonly practiced.

- Refusing professional or learning opportunities to an individual because of their sexual orientation or gender expression.

- Antisemitism is a form of discrimination or harassment that is based on one's religion (Judaism) and/or national origin (e.g., an individual from a Jewish-majority country). Antisemitic conduct is prohibited by the Policy and can manifest in the Tulane environment in many ways. Examples of antisemitic conduct that is prohibited by the Policy include:

  o Repeated instances of antisemitic slurs directed toward an individual, regardless of whether that individual is Jewish.

  o Refusing to allow an individual to participate in any program sponsored or hosted by Tulane because they are perceived to be from Israel, are associated with a Jewish organization, wear religious attire, like a kippah, or display a religious symbol associated with Judaism, like a Star of David.

  o Defacing a Jewish employee's or student's property with a hateful symbol such as a swastika.

  o Using force or intimidation to obstruct the path of an employee or student because they are Jewish, perceived to be Jewish, or supportive of Jewish institutions or organizations.

  o Refusing to grant a student some expected benefit, such as a letter of recommendation, based on the perception that the student is Jewish, is associated with a Jewish organization, or because that student is perceived to be from Israel and/or is Zionist.

  o Making dehumanizing and/or stereotypical comments about Jewish employees or students.

- Islamophobia is a form of discrimination or harassment that is based on one's religion (Islam) and/or national origin (e.g., an individual from a Muslim majority country). Islamophobic conduct is prohibited by the Policy and can manifest in the Tulane environment in several ways. Examples of Islamophobic conduct that is prohibited by the Policy include:

  o Repeatedly referring to a Muslim individual or someone perceived to be a Muslim as a "terrorist."

  o Refusing to allow an individual to participate in any program sponsored or hosted by Tulane because they are perceived to be Muslim - like a Sikh person wearing a turban - or from a Muslim-majority country and are associated with a Muslim organization, wears religious attire, like a hijab, or displays a religious symbol associated with Islam, like the Crescent and Star.

  o Removing a student from a Tulane program or activity based on the perception that the student is Muslim or perceived to be Muslim or is associated with a Muslim organization.

  o Refusing professional or learning opportunities because an individual wears a hijab to work or in the classroom.

  o Physically threatening an individual for wearing a religious symbol associated with Islam or a national symbol like a keffiyeh.

The examples listed above can also apply to situations involving other protected characteristics, such as age, shared ancestry, ethnic/national origin, color, disability, gender, gender expression, gender identity,

gender information, marital status, military/veteran status. pregnancy, race, religion, sex, sexual orientation, or any other classification protected by applicable law.

Discrimination or harassment based on sex and/or gender includes interpersonal violence. For more information regarding the investigation and response process for student discrimination and harassment based on sex and/or gender and interpersonal violence (including sexual assault, stalking, and intimate partner violence), please refer to the Code of Student Conduct.

Discrimination or harassment based on sex may implicate Title IX. The May 2020 amendments to the Title IX (20 U.S.C. § 1681) regulations (34 C.F.R. part 106) provides a separate definition of Sexual Harassment. For student Federal Regulation Sexual Harassment, please refer to Appendix A of the Code of Student Conduct. For employee Federal Regulation Sexual Harassment, please refer to Appendix I of this policy.

Any member of the Tulane community can make a report about a possible bias incident or hate crime through http://tulane.edu/concerns. The concerns report allows the University to track and reviewed bias-related incidents, offer supportive counseling services and other resources, and may lead to an investigation under which the Respondent may be held accountable for their actions. Anonymous reports are permitted and investigated to the extent possible. The Equal Opportunity & Resolution Management Department makes decisions about appropriate action to address bias incidents.

Tulane encourages the reporting of good faith claims of discrimination, harassment, or retaliation. False accusations and malicious reporting can have a serious effect on the University and the reputation of all parties involved in a matter. If an investigation reveals that an accusation of discrimination, harassment, or retaliation was made in bad faith, maliciously, or recklessly, the Complainant may be sanctioned appropriately. See Section 8.5 Investigation Process, Formal Investigation & Resolution of Complaints, Sanctions.

## 8.2 Retaliation

Retaliation is action or words intentionally taken against an individual because of the individual's participation in a protected activity such as reporting discrimination, harassment, and/or retaliation. Protected activity includes an individual's good faith: (1) participation in the reporting, investigation, or resolution of an alleged violation of this policy, including Title IX allegations; (2) opposition to policies, practices, or conduct the individual reasonably believes are in violation of this policy; or (3) requests for accommodations on the basis of religion or disability. Retaliation will be a violation of this policy when it is sufficiently serious to discourage a reasonable person from engaging in protected activity. Anyone who is aware of possible retaliation or has other concerns regarding the response to a report should contact the Equal Opportunity & Resolution Management Department immediately.

Examples of prohibited retaliatory conduct include: (1) disciplining, changing working or educational conditions when not related to job performance, misconduct, or other legitimate business reasons; (2) providing inaccurate information to or about the person who engaged in the protected activity; or (3) refusing to cooperate or discuss employment or school-related matters with an individual without a legitimate business reason because that individual complained about or resisted conduct prohibited by this policy. The initiation of a good faith complaint of discrimination, harassment, and/or retaliation by

an individual will not reflect negatively on that individual nor will it affect the individual's academic standing, working conditions, rights, or privileges.

## 8.3 Privacy & Confidentiality

Tulane is committed to protecting the privacy of all individuals involved in the investigation and resolution of a Complaint under this policy, as well as providing assistance to help students, employees, and third parties make informed choices. With respect to any report of a possible violation of this policy, Tulane will make reasonable efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and take steps to eliminate discrimination, harassment, and/or retaliation; prevent its recurrence; and remedy its effects. Privacy and confidentiality have distinct meanings under this policy. Most matters brought to the university's attention, including issues investigated by the Equal Opportunity & Resolution Management Department, will be treated as private not confidential.

**Privacy:** Although private, information related to a report of discrimination, harassment, and/or retaliation will be shared with a limited number of Tulane employees who "need to know" in order to assist in support of the Parties and in the assessment, investigation, and resolution of the Complaint. All employees who are involved in Tulane's response to Complaints receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

**Confidentiality:** Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Louisiana law.

Tulane has designated individuals who have the ability to have privileged communications as "Confidential Employees." When information is reported to a Confidential Employee (or a community professional with the same legal protections), the Confidential Employee (and/or such community professional) are obligated not to reveal the information to Tulane or anyone who works at Tulane, or Third Parties except where required or permitted by law. For example, information reported to a "Confidential Employee" may be disclosed when: (1) the individual gives written consent for its disclosure; (2) there is a concern that the individual will likely cause serious physical harm to self or others; or (3) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

The confidentiality requirements of the ADA also apply to all disability-related medical information Tulane obtains through employment-related examinations or inquiries. To find a list of Confidential Resources at Tulane, please see Appendix I of this policy.

## 8.4 Complaint Procedures

The Equal Opportunity & Resolution Management Department investigates complaints that allege an employee or third party may have violated Tulane's Equal Opportunity/Anti-Discrimination Policy. As

previously noted, complaints against students, including Title IX complaints, will be processed as outlined in Tulane's Code of    Student Conduct. Complaints against faculty will be processed in accordance with Tulane's Faculty    Handbook and the Bylaws of the University Senate. Complaints against all others will be processed in accordance with the Staff Handbook. All others may include (though are not limited to) Staff, Administrators, Librarians, Post-Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, other student employees and faculty on appointments of less than a year or on the first year of appointment. Title IX complaints against faculty and all others will be processed in accordance with the Amendment to this policy, found in Appendix I of this policy. The complaint procedures are intended to ensure the rights of the Parties and accord equity and due process.

**Form of Complaint:** Complaints of discrimination, harassment, and/or retaliation should be put into writing. If you require reasonable accommodation in filing a complaint, or putting it into writing, the Equal Opportunity & Resolution Management Department can assist with this. Anonymous complaints will be accepted and investigated to the extent possible. Complaint forms are available at the Equal Opportunity & Resolution Management Department (504) 862-8083, or may be filed online at http://tulane.edu/concerns.

**Content of Complaint:** Anyone who has information about someone being discriminated, harassed, or retaliated against in violation of this policy, or who believes that they have been discriminated, harassed, or retaliated against in violation of this policy should promptly file a complaint with the following information, if known:

1) Name and contact information of the Complainant or harmed party;
2) Brief description of the offending behavior, including times, places, people involved;
3) Names or identifying information about the Respondent and anyone with relevant information about the alleged discrimination, harassment, and/or retaliation.

**Reporting Timeframes:** Tulane's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. However, there is no time limit for reporting prohibited conduct. Reports should be made as soon as possible after the incident, preferably within one year, because the passing of time makes a review of the evidence more difficult, and the memories of involved parties may become less reliable.

**Predominant Roles of Respondents:** As noted above, complaints against students will be processed as outlined in Tulane's Code of Student Conduct whereas, complaints that allege an employee or third party may have violated Tulane's Equal Opportunity/Anti-Discrimination Policy are investigated by the Equal Opportunity & Resolution Management Department. If a question arises about someone's status, or the predominant role of the Respondent, the Equal Opportunity & Resolution Management Department will determine which policies and procedures apply based on the facts and circumstances, such as which role is predominant in the context of the Prohibited Conduct. Further, where a Respondent is both a student and an employee, the Respondent may be subject to any of the sanctions applicable to either students or employees.

**Failure to Cooperate:** Failure to cooperate in an investigation can be considered a breach of responsibility. Notice of such non-cooperation will be communicated to the appropriate supervisory authority over the

non-cooperative individual (such as Student Conduct, Department Head, Supervisor, or Dean), so appropriate action may be taken.

A party's failure to cooperate in an investigation or formal review proceeding may result in the investigation proceeding solely on the basis of the available evidence. A Respondent's silence or lack of cooperation will not prevent an investigation from moving forward. If a Respondent fails to cooperate in an investigation, their Department Head, Supervisor, Dean, and/or the Office of Student Conduct will be notified of such non-cooperation so appropriate action may be taken.

Employees must report information about a possible violation of this policy. Employees who fail to cooperate or timely report all relevant details (obtained directly or indirectly) about an incident of prohibited conduct that is made known to them about a matter covered by this policy will be considered to have breached their responsibility to the University. The Department Head, Supervisor, or Dean with supervisory authority over a non-cooperative employee will be notified of such non-cooperation so appropriate action may be taken.

## 8.5 Investigation Process

### 8.5.1 Overview

It is not necessary for a Complainant to first confront the harasser prior to instituting a complaint under this policy.

**Privacy:** The person charged with investigating the complaint will only discuss the complaint or the underlying behavior with those involved in the case who have a need to know the information, including, but not limited to, the Complainant, the Respondent, and applicable supervisors.

**Objectivity**: The Complainant and Respondent are entitled to an investigation conducted by an impartial investigator. Thus, if the person charged with overseeing or investigating a complaint is implicated in the complaint or has any personal issue that would cause a conflict of interest, the person with the conflict shall recuse themselves from the proceeding. If a conflict of interest exists, the Equal Opportunity & Resolution Management Department may designate an impartial third party to conduct the investigation and make findings.

**Standard of Review:** Formal Resolution of Complaints will be investigated and reviewed based upon the preponderance of evidence standard. **Preponderance of the evidence** means that it is more likely than not that a policy violation occurred.

**Initial Inquiry:** The Equal Opportunity & Resolution Management Department has the authority to investigate a concern, provided evidence is available to support an effective investigation. When the Equal Opportunity & Resolution Management Department receives a report of discrimination, harassment, and/or retaliation, the Equal Opportunity & Resolution Management Department (or their designee) will begin an initial inquiry as soon as practicable— generally within seven working days, absent extenuating circumstances. The Equal Opportunity & Resolution Management Department will review the complaint and attempt to gather information as appropriate. The inquiry often begins with an

attempt to gain additional information from the Complainant, preferably through an in-person meeting. Further action by the Equal Opportunity & Resolution Management Department will depend upon a number of factors, including but not limited to:

- whether the identity of the Complainant and/or Respondent (the accused) is known;

- whether the Complainant is willing to participate in an investigation;

- whether the Complainant requests anonymity or confidentiality;

- whether the Complainant or Respondent is affiliated with Tulane; and

- whether Tulane has a legal obligation to proceed with an investigation based on the nature of the conduct alleged—regardless of the Complainant's wishes.

If a Respondent is no longer affiliated with the University, Tulane will provide reasonably appropriate remedial measures to the extent feasible; assist the Complainant in identifying external reporting options; and take reasonable steps to eliminate prohibited conduct, prevent its recurrence, and remedy its effects.

**Complaints against Students:** Students are bound by the principles outlined in this policy. However, complaints against students shall be resolved under the Code of Student Conduct.

**Complaints against Faculty:** Faculty are bound by the principles outlined in this policy. However, complaints against Faculty shall be resolved by the process set forth in the Faculty Handbook and the Bylaws of the University Senate. Specifically, the Faculty Senate Committee on Equal Opportunity and Anti-Discrimination shall hear grievances against faculty alleging violations of Tulane University's Equal Opportunity and Anti-Discrimination policies that cannot be resolved informally. The committee does not have jurisdiction over grievances against faculty on appointments of less than a year or on the first year of appointment.

**Complaints against Staff and All Others:** Staff and all others are bound by this policy. Complaints against staff and all others will be processed in accordance with this policy and the Staff Handbook. All others may include (though are not limited to) individuals not governed by the processes set out in the Code of Student Conduct or Faculty Handbook and the Bylaws of the University Senate, such as Administrators, Librarians, Post-Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, other student employees and faculty on appointments of less than a year or on the first year of appointment.

**Complaints Involving Federal Regulation Sexual Harassment:** Complaints involving Sexual Harassment that meets the definition provided by the Title IX (20 U.S.C. § 1681, and its implementing regulations at 34 C.F.R. Part 106, which prohibit discrimination on the basis of sex) will be processed in accordance with Appendix I of this policy.

**Investigation Timeline**: Investigations will commence as soon as practicable following the Initial Inquiry process detailed above. Investigations will be conducted as expeditiously as possible and are usually completed within a reasonable period, typically 60 days, though this may vary based on the availability of parties and witnesses, breaks in the academic calendar, scope of the investigation, or unforeseen or exigent circumstances. If additional time is needed to conduct a thorough investigation, the Equal

Opportunity & Resolution Management Department may, at its discretion, extend the time for completing the investigation as reasonably necessary. The Equal Opportunity & Resolution Management Department will notify the Complainant and Respondent of any extensions. The Complainant, Respondent, and appropriate supervisors will receive regular updates on the status of the investigation.

**Complaint Withdrawal:** Prior to the conclusion of an investigation, the Complainant may request to withdraw their complaint by contacting the Equal Opportunity & Resolution Management Department in writing at eo@tulane.edu. The Equal Opportunity & Resolution Management Department weighs the wishes of the Complainant heavily when deciding whether to pursue a Formal Investigation. In some cases, the Equal Opportunity & Resolution Management Department may determine, given the nature of the allegation(s) and information presented, that Tulane has an obligation to proceed with a Formal Investigation.

Sometimes a Complainant does not want to pursue a Formal Investigation or there is not enough information to proceed with a Formal Investigation. In such instances, the Equal Opportunity & Resolution Management Department may proceed with Informal Resolution. Informal resolution may be requested by a party at any time. Informal Resolution does not result in findings of responsibility or sanctions. It is not required that parties use Informal Resolution. Anyone who believes that they have been subject to discrimination may immediately pursue Formal Investigation and Resolution. Informal Resolution may be an appropriate choice when the alleged conduct is not of a serious or repetitive nature, and disciplinary action is not required to remedy the situation. Depending on the nature and severity of the complaint and the wishes of the person(s) alleging discrimination, harassment, and/or retaliation, Informal Resolution may include, but is not limited to, the following or other appropriate actions:

- Advising the Complainant about how to communicate the unwelcome nature of the behavior to the alleged harasser;

- A facilitated conversation between the Complainant and Respondent to work out an agreed upon resolution;

- A recommendation for mediation between the Complainant and the Respondent. Mediation is an informal meeting, facilitated by the Conflict Resolution Specialist, to help the Complainant and Respondent explore possible ways to reach a resolution;

- A verbal or written warning to cease current behavior or a cease contact directive;

- Training and/or an educational conversation with the Respondent; and/or

- Distributing a copy of this policy to Respondent's department.

Informal Resolutions will be completed within a reasonable amount of time from receipt of a request to proceed under the Informal Process. Students are also encouraged to seek advice or counseling from the Office of Student Conduct, (504) 865-5516, and/or the Office of Student Resources and Support Services, (504) 314-2160, to decide whether or not they will pursue a Formal Complaint.

Informal Resolution may not be appropriate in certain circumstances and the Equal Opportunity & Resolution Management Department retains the right to determine that a complaint is not appropriate for Informal Resolution. For instance, Informal Resolution may not be appropriate in cases involving allegations of sexual assault, even on a voluntary basis. In addition, complaints brought by students

against employees involving Sexual Harassment as defined by the May 2020 Title IX regulations cannot be resolved informally.[3] While dealing informally with a problem of discrimination, harassment, or retaliation may be preferable to the Complainant, Tulane's Formal Investigation Process must be followed for Tulane to impose any discipline on the Respondent.

### 8.5.2 Formal Investigation & Resolution of Complaints

Tulane will proceed with a formal investigation and resolution when deemed appropriate by the Equal Opportunity & Resolution Management Department.

With regard to faculty, the formal investigation and resolution process outlined in the Faculty Handbook shall apply.[4]

As to all others covered by this policy, the formal investigation and resolution process is set forth as follows:

During a formal investigation, the Complainant will have the opportunity to describe their allegations, as well as present supporting witnesses or other evidence. Complaints of discrimination, harassment, and/or retaliation must be put into writing. Upon request, Complainants will be provided a written copy of their allegations. The Respondent will have the opportunity to receive written notice of each allegation, respond to each allegation, present their evidence supporting their position, and propose relevant witnesses. The investigator will review evidence presented and will, as determined appropriate, meet with additional witnesses identified as having relevant information. In some instances, the investigator may identify and communicate with witnesses who were not identified by the Complainant or Respondent. Investigation meetings are not recorded by Tulane and may not be recorded by any participant. Parties and witnesses may take notes during investigation meetings. All parties involved in the investigation are expected to maintain privacy, cooperate, and provide truthful information throughout the investigation process. If a reasonable accommodation in filing a complaint is needed, please contact the Equal Opportunity & Resolution Management Department at (504) 862-8083 or eo@tulane.edu.

**Support Person**: As specified in Appendix I of this policy, Title IX matters require Advisors. For non- Title IX matters involving sex discrimination (or as otherwise expressly permitted by other Tulane Policies) Complainants and Respondents may be accompanied by one Support Person throughout the investigation, provided the involvement of this Support Person does not result in an undue delay of the process. A Support Person acts as an advisor and may be an attorney but cannot be someone who is a witness or party in the matter (or a related matter). It is the responsibility of each party to coordinate scheduling with their Support Person for any meetings. A Support Person is someone who can accompany and support a Complainant or Respondent throughout an investigation but may not otherwise participate in an investigation or on anyone's behalf. A Support Person may not speak, write, or otherwise communicate on behalf of the Complainant or Respondent with an investigator, or those affiliated with the investigation, including an appeal of

---

[3] (34 CFR § 106.45(b)(9)(iii))

[4] If a conflict exists between the formal investigation and resolution process described in the Faculty Handbook for faculty investigations and this policy, the terms in the Faculty Handbook govern.

an investigation. A Support Person may not engage in advocacy or behavior that harasses, abuses, or intimidates others, including parties, witnesses, or individuals involved in resolving the complaint. Any Support Person who does not abide by these guidelines may be excluded from the process.

**Closing the Case:** The Equal Opportunity & Resolution Management Department will review all relevant information obtained during the Formal Investigation. After its review, the Equal Opportunity & Resolution Management Department may decide to close the case when: (1) there is insufficient information to move forward; (2) the Complainant refuses to cooperate or pursue; or (3) when the alleged misconduct, even if substantiated, does not result in a violation of this policy. The Equal Opportunity & Resolution Management Department may reopen a matter if additional information later becomes available, or a Complainant who was unwilling to participate in an investigation changes their mind.

**Written Determination**: At the conclusion of a Formal Investigation, the Equal Opportunity & Resolution Management Department will issue the Complainant and Respondent a final written determination in the form of a Notice of Outcome or Closing Letter, no more than ten (10) working days or as promptly as possible after a decision has been reached. This written determination will state whether, based on the investigation, there was a finding of a violation of this policy. Closing letters will contain enough information to provide notice to the parties of the allegations, review process determination, and for Title IX matters provide sufficient information so a party has an opportunity to form a reasoned appeal argument if they so choose.

**Violations**: Upon a finding of a violation of this policy, the Equal Opportunity & Resolution Management Department (or the designated fact finder) may make recommendations for further action, including sanctions, to the appropriate supervisor and division head for the Respondent and/or those able to implement appropriate corrective action. Appropriate recommendations are designed to stop the prohibited conduct, prevent its reoccurrence, and address any adverse effects caused by the violation. The supervisor or division head will be responsible for deciding upon and imposing disciplinary action as soon as reasonably possible, generally within a month after receiving the final determination and recommendation of the Equal Opportunity & Resolution Management Department. The supervisor or division head shall notify the Equal Opportunity & Resolution Management Department of the sanction imposed. Tulane's ability to take appropriate corrective action against at Third party will be determined by the nature of the relationship of the Third party to the University. The Equal Opportunity & Resolution Management Department (or its designee) will determine the appropriate manner of resolution consistent with Tulane's commitment to a prompt and equitable process, as well as University obligations, federal law, federal guidance, and this policy.

## 8.6 Appeals

Appeals regarding the outcome of complaints shall be resolved as follows:

- Appeals against students shall be resolved under the Code of Student Conduct.

- Appeals against Faculty shall be resolved by applicable University policies as maintained in the Faculty Handbook and in the Bylaws of the University Senate.

- Appeals against all others, which may include (though are not limited to) Staff, Administrators, Librarians, Post-Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, other student employees and faculty on appointments of less than a year or on the first year of appointment, will proceed pursuant to the process outlined herein.

A Complainant or Respondent may seek to appeal the findings and outcome of a matter that was Formally Investigated pursuant to this policy and resulted in a written determination. A request for appeal must be filed, in writing, to the Director of the Equal Opportunity & Resolution Management Department (1555 Poydras Street, Suite 964, New Orleans, LA 70112 or eo@tulane.edu) no later than 5:00 p.m. on the tenth business day following the date of the Equal Opportunity & Resolution Management Department's written notice of the outcome of the investigation. Appeals will be considered only where the request demonstrates one of the following enumerated grounds for appeal:

- Procedural errors that significantly impact the outcome. This means demonstrated material deviation from procedures causing the findings and determination about responsibility, or the sanctions imposed, to be substantially impacted.

- New and Substantial evidence. The party requesting appeal must produce germane, new, and substantial evidence that could not have been reasonably discovered before a determination about responsibility was made, and such new evidence objectively and significantly impacts the outcome about whether this policy was violated.

- Grounds for appeal as articulated in Appendix I for Federal Regulation Sexual Harassment matters.

Once an appeal has been received, the non-appealing party will be provided with a copy of the appealing party's written statement and may submit a written response to the Equal Opportunity & Resolution Management Department within ten (10) business days of receipt of the appealing party's written statement. The non- appealing party's statement will be provided to the appealing party. No further appeal submissions from the parties shall be permitted.

The appeal shall be reviewed by the Associate Vice President of Human Resources. In exceptional circumstances, as determined by the Equal Opportunity & Resolution Management Department or the Office of General Counsel, an appeal may be reviewed by an outside, neutral third party. In consultation with the Equal Opportunity & Resolution Management Department and/or the Office of General Counsel (and in Title IX matters, the University's Assistant Provost for Title IX Compliance and Education), a party designated to review a matter may delegate the review of an appeal to a designee. In all cases, a party designated to review an appeal will delegate review in any matter in which they cannot serve as an impartial reviewer.

**Appeal Timeline**: The decision on an appeal will be issued as expeditiously as possible, usually within 45 days, though this may vary based on the scope of the appeal or unforeseen circumstances. A written decision, including the reason for the appeal's resolution, will be provided to the party requesting appeal and the Equal Opportunity & Resolution Management Department within five (5) working days

following completion of the appellate review. If appropriate, the Equal Opportunity & Resolution Management Department will promptly communicate any changes to the original findings or sanctions to other involved parties.

**<u>Standard of Review</u>**: Appellate review is not a *de novo* hearing. Rather, review is based on the evidence from the investigation and findings or sanctions may be modified upon a finding of "manifest error" (i.e., that the decision or sanction was clearly or obviously wrong) based on the above-listed grounds (i.e., procedural error, new and substantial evidence). The Appellate Reviewer may review the full case and will have access to all information that was available in the investigation, including aspects beyond the investigation as outlined in the request for appeal, but the review will not make independent credibility determinations relative to individuals involved in the underlying investigation. If the Appellate Reviewer does not find that the enumerated grounds for appeal are present in the request for appeal, the original outcome will be upheld. If the Appellate Reviewer finds that any of the grounds for appeal are present in the request for appeal, the Appellate Reviewer may amend the outcome, may issue a new outcome, or may refer the matter back to the investigator for further consideration. A final outcome on an appeal is not subject to further appeal.

In the event sanctions were imposed as part of the original finding, it shall be in the discretion of the Appellate Reviewer whether the sanctions shall be implemented or stayed pending resolution of an appeal. Review of sanctions will apply an "arbitrary or capricious" standard about whether the remedial recommendations were not the product of a reasonable judgment. The Appellate Reviewer will have the authority to adapt the sanction imposed or change the sanction to a lesser or more severe sanction.

## 8.7 Other Legal Resources

The procedures outlined in this policy apply to internal complaints of discrimination, harassment, and/or retaliation. In addition to this internal complaint procedure, victims of discrimination, harassment, and/or retaliation may file a complaint with an appropriate government agency or, where allowed, file a civil lawsuit. Federal and state laws contain statutes of limitation barring claims filed outside applicable limitations period.

*Office for Civil Rights:* The Office for Civil Rights (OCR) is charged with investigating complaints of harassment under Title IX, a federal law that governs sexual harassment of students by teachers or other students. Prior to filing a lawsuit, a charge should be filed with the OCR within the time period designated by law.

The procedures outlined in this policy apply to internal complaints of discrimination, harassment, and/or retaliation. In addition to this internal complaint procedure, victims of discrimination, harassment, and/or retaliation may file a complaint with an appropriate government agency or, where allowed, file a civil lawsuit. Federal and state laws contain statutes of limitation barring claims filed outside applicable limitations period. Office for Civil Rights: The Office for Civil Rights (OCR) is charged with investigating complaints of harassment under Title IX, a federal law that governs sexual harassment of students by teachers or other students. Prior to filing a lawsuit, a charge should be filed with the OCR within the time period designated by law. A student wishing to file an administrative complaint should contact:

**U.S. Department of Education**

Office for Civil Rights, Dallas Office

1999 Bryan Street, Suite 1620

Dallas, TX 75201-6810

Phone: (214) 661-9600

Fax: (214) 661-9587

TDD: (800) 877-833

**U.S. Department of Justice**

Civil Rights Division

950 Pennsylvania Ave, N.W.,

Educational Opportunities Section, PHB

Washington, D.C. 20035

Phone: (202) 514-4092

Fax: (202) 514-8337

*Equal Employment Opportunity Commission*: The Equal Employment Opportunity Commission (EEOC) is charged with investigating complaints of harassment under Title VII, a federal law that prohibits workplace discrimination and harassment. Prior to filing a lawsuit, Title VII requires that a charge be filed with the EEOC within the time period designated by law. An employee wishing to file an administrative complaint should contact:

**Equal Employment Opportunity Commission**

Hale Boggs Federal Building

500 Poydras, Suite 809 New Orleans, LA 70130

Phone: 1-800-669-4000

Fax: (504) 595-2884

TTY: (504) 595-2958

## 8.8 Americans with Disabilities Act, Reasonable Accommodations in Academic or Work Environment

In keeping with Tulane's commitment to foster a sense of belonging and unified community, Tulane seeks to ensure access to its programs and activities to the broadest possible audience. Tulane complies with federal and state laws concerning the employment of people with disabilities, including Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act (ADA), and follows the regulations issued by the Equal Employment Opportunity Commission (EEOC). It is Tulane's policy to reasonably accommodate qualified individuals with disabilities when accommodation is necessary to allow an individual to compete for a job, perform the essential functions of a job, and/or enjoy equal benefits and privileges of employment, and where the accommodation would not impose an undue hardship on the university.

### 8.8.1 Requests for Reasonable Accommodations in Employment

A reasonable accommodation is a change in the workplace or the way job duties are customarily performed that provides an equal employment opportunity to an individual with a disability. A reasonable accommodation must not pose an undue hardship to Tulane or fundamentally change the essential functions of a job. It also cannot create a situation that poses a direct threat to the employee or to other individuals.

Under this policy, a request for reasonable accommodation has been made when:

- An employee or applicant requests an accommodation from a manager, supervisor, or through Tulane's Office of Campus Accessibility. The requesting individual need not use the term accommodation or request a specific accommodation and may merely indicate to a supervisor or manager that a medical condition is interfering with their accessibility, job performance or job duties; or

- The need for accommodation is obvious to a supervisor or manager; an employee exhausts job-protected leave-of-absence entitlement under the Family and Medical Leave Act and remains unable to perform the essential functions of their job because of a continuing medical condition; or an employee reaches a point in recovery from a workplace injury where it is determined that the employee will not be able to perform the essential functions of the job without an accommodation because of a permanent or long-term impairment resulting from the injury.

The Office of Campus Accessibility can be reached at ADAaccess@tulane.edu, or (504) 247-1774, for assistance and information about filing a request for an accommodation.

**Interactive Process**: After a request for accommodation has been made, an interactive process will begin to determine whether the requesting party is a qualified individual with a disability and what, if any, accommodation should be provided. This means that the individual requesting the accommodation, and the Office of Campus Accessibility will communicate with each other about the request, the precise nature of the problem that is generating the request, how a disability is prompting a need for an accommodation, and alternative accommodations that may be effective in meeting an individual's needs. As part of this interactive process, the Office of Campus Accessibility will ask the employee for documentation supporting the accommodation request (such as medical documentation demonstrating that the requestor is an individual with a disability), whenever the disability or need for accommodation is not obvious.

**Accommodations Requests will be Honored to the Extent Possible:** Sometimes an employee may ask  for an accommodation that is not reasonable or necessary, that poses an "undue hardship" on Tulane or its employees, or that might threaten the safety of the individual who has made the request or of others. However, if a particular accommodation would impose an undue hardship, Tulane will consider whether there are alternative accommodations that would not impose such a hardship or safety threat.

In determining undue hardship, Tulane may consider factors including the nature and cost of the accommodation in relation to the size, the financial resources, the nature and structure of the University, as well as the impact of the accommodation on the specific facility or department that would provide the accommodation.

**Implementing Workplace Accommodations:** When Tulane determines an accommodation is necessary to allow an individual to perform the essential function of a job, Tulane will select and implement the accommodation that is the most appropriate for both the individual and Tulane. An individual's preference for a specific accommodation will be given consideration, but Tulane is free to choose among equally effective accommodations and may choose one that is less expensive or easier to provide. Reasonable accommodations will not include altering the essential functions of a job, lowering performance standards, or anything that creates an undue hardship to Tulane. If an implemented accommodation is not effective at allowing the individual to perform the essential functions of the job, other potentially effective accommodations will be implemented until one proves effective or alternative reasonable accommodations have been exhausted. The costs for reasonable accommodations of disabled applicants and employees with disabilities are the responsibility of the employing department/office.

Once reasonable accommodations have been approved, the Office of Campus Accessibility will provide guidance to the employee and, where applicable, the employee's supervisor, to facilitate and implement the accommodations in compliance with the law.

Employees who have requested or were granted an accommodation should report any changes in their ongoing need for accommodation to their supervisor and Tulane's Office of Campus Accessibility.

Prospective and current employees with disabilities can learn more about the resources available to them by accessing the Disability & Accommodations page on the Office of Human Resources website (https://hr.tulane.edu/disability-accommodations) or contacting Tulane's Office of Campus Accessibility at ADAaccess@tulane.edu or (504) 247-1774.

## 8.8.2 Requests for Academic Accommodations

**Accommodations for Students**: Tulane's Goldman Center for Student Accessibility (Goldman Center) offers assistance to all current and prospective students of Tulane, and accommodates them with modifications to their academic, online, and work-study environments for psychological, medical/physical, and learning/developmental disabilities. Detailed information on the services provided by the Goldman Center can be found on the website: https://accessibility.tulane.edu/. Accommodation requests should be made directly to the Goldman Center through the online portal located at: https://accessibility.tulane.edu/request or contact Goldman Center for assistance at (504) 862-8433 or by email at goldman@tulane.edu.

The Goldman Center may require written documentation from the student's health care provider in considering a request for accommodations.

**Implementing Academic Accommodations:** Students are required to activate any approved accommodation each semester via the Goldman Center's online portal. Students who have requested or were granted an accommodation should report any changes in their ongoing need for accommodation to the Goldman Center.

### 8.8.3 Additional Provisions

**Other Accommodations Requests:** Requests for accommodations or access to university facilities or university sponsored activities or events should be referred to the department or office responsible for maintaining the facility or the department/office sponsoring the activity or event.

**Privacy and Confidentiality:** Any communication with the Office of Campus Accessibility and medical documentation related to an accommodation request will not be included in the applicant/employee's general Human Resources file. The Office of Campus Accessibility, however, may share certain information with a supervisor or certain department administrators as necessary to make appropriate determinations on a reasonable accommodation request and ensure that an appropriate accommodation is provided that meets the individual's disability-related needs and enables the individual to perform the essential functions of the position. Supervisors and managers are entitled to whatever information is necessary to implement restrictions on the work or duties of the employee or to provide a reasonable accommodation. Under these circumstances, the Office of Campus Accessibility will inform the recipients about their confidentiality requirements, and the information disclosed will be no more than is necessary to process the request. Information shared with the Goldman Center regarding a student is maintained confidentially as required or permitted by law. Any information collected by the Goldman Center will only be shared on a limited need to know basis.

**Complaints:** Employees or individuals who believe they have been treated in a discriminatory manner in violation of this policy, or who believe that a determination regarding eligibility for a reasonable accommodation or the provision of a reasonable accommodation has been made improperly, have the right to invoke this policy and report a complaint that they were subjected to prohibited conduct on the basis of a disability. Employees should contact the Equal Opportunity & Resolution Management Department. Any employee, student, or visitor may report accessibility barriers at Tulane by using the online Campus Reporting Form and selecting "Disability and Accessibility" as the concern type.

**Resources**: Tulane's Office of Campus Accessibility acts as a resource for prospective and current staff members, faculty members, and visitors with disabilities and provides guidance to staff and faculty members responsible for implementing reasonable accommodations for other members of the community. Where appropriate, the Equal Opportunity & Resolution Management Department will consult with Tulane's Office of Campus Accessibility on matters involving alleged disability discrimination. See the Disability & Accommodations page on the Human Resources website for more information:  https://hr.tulane.edu/disability-accommodations.

### 8.9 Title IX

Tulane complies with Title IX of the Education Amendments of 1972, which prohibits discrimination based on sex, including sexual harassment and sexual violence, in educational programs and activities. Title IX also prohibits retaliation for asserting claims of sex discrimination. Tulane has designated Julia Broussard, Tulane's Assistant Provost for Title IX Compliance and Education, at (504) 865-5611 or titleix@tulane.edu, to coordinate compliance with and response to inquiries concerning Title IX. Students

or employees may contact either the university's Assistant Provost for Title IX Compliance and Education or Deputy Coordinators as designated by the university with any questions or complaints.

### 8.10 Miscellaneous Provisions

Provisions of this policy supersede, replace, and prevail over any other university policy, handbook, or other procedure pertaining to the resolution of complaints of purported discrimination or harassment based on Protected Status. This policy supersedes any conflicting policy terms, and the Equal Opportunity & Resolution Management Department has discretion to address matters not specifically contemplated or addressed in this policy.

This policy will be available to all employees, students, and others connected with the university.

This policy may be revised from time to time. Any proposed revisions are subject to approval by the University Senate. Revised versions of this policy will be posted on the Tulane policies website. The most recently revised version of this policy governs.

## 9.0 CONSEQUENCE OF VIOLATING THE POLICY

**Sanctions**: The Equal Opportunity & Resolution Management Department does not have independent authority to impose sanctions.

- Sanctions against students shall be imposed under the Code of Student Conduct.

- Sanctions against Faculty shall be imposed by applicable university policies as maintained in the Faculty Handbook and in the Bylaws of the University Senate.

- Sanctions against all others shall be imposed under the Staff Handbook. All others may include (though are not limited to) Staff, Administrators, Librarians, Post- Doctoral Candidates, Resident Assistants, Graduate Teaching Assistants, other student employees and faculty on appointments of less than a year or on the first year of appointment.

Sanctions imposed on individuals who have violated this policy will be commensurate with the severity and/or frequency of the conduct and shall be adequate and sufficient to prevent such conduct in the future. Sanctions may include, but are not limited to, an apology to the Complainant; a verbal or written reprimand; a requirement to attend remedial discrimination and harassment training; appropriate workplace restrictions; no contact orders; denial of a merit pay increase or other benefit; denial of promotion; or reassignment, demotion, suspension, or separation from the university.



## APPENDIX I of Policy on Equal Opportunity/Anti-Discrimination:

## Federal Regulation Sexual Harassment Policy Amendment

### I. Purpose of Appendix

Title IX of the Education Amendments Act of 1972 states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

The purpose of this Appendix is to articulate Tulane University's process for responding to allegations of Sexual Harassment that fall within the scope of the May 2020 amendments to the Title IX regulations (34 CF.R. part 106).

The compliance requirements mandated by the Department of Education are complicated, and the interaction between Title IX and non-Federal Regulation Sexual Harassment can seem complex. We strongly encourage all individuals who have questions about the information in this Appendix to please contact the University's Assistant Provost for Title IX Compliance and Education or Deputy Title IX Coordinators listed in the University's Assistant Provost for Title IX Compliance and Education section. The Office of Student Conduct (Student Conduct) can answer any questions regarding the student resolution options through either Alternative Resolution Options or the Formal Grievance Procedure; Case Management & Victim Support Services (CMVSS) can answer any questions regarding Supportive Measures available to student Complainants and Respondents. The Equal Opportunity & Resolution Management Department (EO) can answer any questions regarding employee Supportive Measures and grievance procedures regarding complaints of sex discrimination, harassment or retaliation.

### II. Implementation

The definitions and processes described in this Appendix take effect on August 14, 2020. This does not retroactively apply to cases that were resolved prior to the implementation date. If investigations are in progress at the time of implementation, the policies and procedures that were in place at the time the investigation began will continue forward in its current process. If a person makes a complaint after this policy is implemented about an incident(s) that occurred prior to August 14, 2020, the procedures articulated in this policy will apply while the definitions of sexual misconduct will come from the policies that were in effect at the time of the incident.

At the time of this policy's implementation, the Title IX regulations (34 C.F.R. part 106) are subject to multiple lawsuits that challenge the legality and implementation of the regulations; if there is a stay in the enforcement of the Title IX regulations, the University retains the discretion to reevaluate the applicability of this policy and its associated procedures.

### III. Sexual Harassment Defined

A) *Sexual Harassment* includes two distinct but overlapping definitions:

    1) The May 2020 amendments to the Title IX regulations (34 C.F.R. part 106) define Sexual Harassment as conduct on the basis of sex that must satisfy one or more of the following:

        a) A Tulane employee conditions the provision of an aid, benefit, or service of Tulane on an individual's participating in unwelcome sexual conduct; or

        b) Unwelcome[5] conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to Tulane's education program or activity; or

        c) Sexual Assault, Dating Violence, Domestic Violence, and Stalking, as defined in Section III, Parts B, C, D, and E below.

Conduct that meets this definition must be resolved using the Title IX Grievance Procedures articulated in this Appendix in Part VIII below.

    2) In addition, consistent with Title VII of the Civil Rights Act of 1964 and the recognition that Sexual Harassment may also occur in a wider variety of contexts, Tulane also defines Sexual Harassment to include any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non- verbal, graphic, physical, electronic, or otherwise (*Sexual Harassment*); or, any act of intimidation or hostility, whether verbal or non-verbal, graphic, physical, or otherwise based on sex or gender, sexual orientation, gender identity, or gender expression, even if the acts do not involve conduct of a sexual nature (*gender-based harassment*); when one or more of the following conditions are present:

        a) Submission to or rejection of such conduct is either an explicit or implicit term or condition of, or is used as the basis for decisions affecting, an individual's employment or advancement in employment, evaluation of academic work or advancement in an academic program, or basis for participation in any aspect of a Tulane program or activity (*quid pro quo*); or

        b) The conduct is sufficiently severe, pervasive, or persistent that it has the purpose or effect of unreasonably interfering with, limiting or depriving an individual from participating in or benefiting from Tulane's learning, working, or residential programs under both an objective and subjective standard (*hostile environment*).

In evaluating whether a hostile environment exists, Tulane will evaluate the totality of known circumstances, including, but not limited to:

---

[5] Unwelcomeness, according to the Department of Education, is a subjective element evaluated from the perspective of the complainant. Severe, pervasive and objectively offensive elements are evaluated based on the totality of the circumstances from the objective perspective of a reasonable person in the same or similar circumstances.

i. the frequency, nature and severity of the conduct; ii. whether the conduct was physically threatening; iii. the effect of the conduct on the Complainant's mental or emotional state; iv. whether the conduct was directed at more than one person; v. whether the conduct arose in the context of other discriminatory conduct; vi. whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or Tulane programs or activities; vii. either the conduct implicates academic freedom or protected speech; and, viii. other relevant factors that may arise from consideration of the reported facts and circumstances.

Conduct that does not meet the Title IX definition of Sexual Harassment but meets this second (Title VII) definition will be investigated and adjudicated according to the procedures articulated in Section X of this Equal Opportunity-Anti Discrimination Policy.

B) Sexual Assault

*Sexual Assault* is having or attempting to have sexual contact with another individual without consent or where the individual cannot consent because of age or temporary or permanent mental incapacity.

    1) *Sexual Assault* includes:
        a. Penetration, no matter how slight,
        b. of the vagina or anus of a person,
        c. with any body part or object, or
        d. oral penetration
            1. of a sex organ of the Complainant, or
            2. by the Respondent's sex organ,
        e. without the consent of the Complainant,
        f. including instances where the Complainant is incapable of giving consent because of their age or because of a temporary or permanent mental or physical incapacity.

    2) *Sexual Contact* includes:
        a. The intentional touching of the clothed or unclothed genitals, buttocks, groin, breasts, or other body parts of the Complainant by the Respondent,
            1. without the consent of the Complainant,
            2. for the purpose of sexual degradation, sexual gratification, or sexual humiliation
        b. Or, the intentional touching by the Complainant of the Respondent's clothed or unclothed genitals, buttocks, groin, breasts, or other body parts,
            1. without the consent of the Complainant,
            2. for the purpose of sexual degradation, sexual gratification, or sexual humiliation.

C) Consent

    i.  Consent is defined as being:

        1.  informed (knowing);

        2.  voluntary (freely given); and

        3.  active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed-upon sexual activity.

    ii.  Consent cannot be obtained by Force. Force includes: the use of physical violence, threats, intimidation, and/or coercion.

        1.  Physical violence means that a person is exerting control over another person through the use of physical force. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

        2.  Threats are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples include threats to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

        3.  Intimidation is an implied threat that menaces or causes reasonable fear in another person. A person's size, alone, does not constitute intimidation; however, a person's size may be used in a way that constitutes intimidation (e.g., blocking access to an exit).

        4.  Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of Sexual Contact or Sexual Intercourse, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider:

            a.  the frequency of the application of the pressure,

            b.  the intensity of the pressure,

            c.  the degree of isolation of the person being pressured, and

        d.  the duration of the pressure.

    iii.  Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. Incapacitation means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity. A person who is incapacitated is unable, temporarily or permanently, to give Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

    iv.  Being impaired by alcohol or other drugs is not a defense to not obtaining consent.

The statutory definition of sexual assault referenced by the Title IX regulations (34 C.F.R. part 106) also includes having or attempting to have sexual contact between persons who are related to each other within the degrees where marriage is prohibited by law.

D) *Dating Violence* is violence committed by a Respondent who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition—

    a. Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse.

    b. Dating violence does not include acts covered under the definition of domestic violence.

E) Domestic Violence

    a. Domestic[6] violence includes:

        i. Violence,[7]

        ii. committed by a Respondent who is a current or former spouse or intimate partner of the Complainant,

        iii. by a person with whom the Complainant shares a child in common, or

        iv. by a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner, or

        v. by a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Louisiana, or

        vi. by any other person against an adult or youth Complainant who is protected from that person's acts under the domestic or family violence laws of Louisiana.

F) Stalking is engaging in an intentional course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or suffer substantial emotional distress.

    a. Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

    b. Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant.

---

[6] To categorize an incident as Domestic Violence under the Policy, the relationship between the Respondent and the Complainant must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

[7] As defined in the footnote for Dating Violence.

    c.   Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily require, medical or other professional treatment or counseling.

## IV. Resources and Reporting

**Choosing to Disclose**

Choosing to disclose Sexual Harassment or Violence, let alone file a Formal Complaint to initiate a Grievance Procedure, is a personal decision. Tulane wants to ensure that employees are well informed and supported in their decision to disclose and in their decisions around participating in a Grievance Procedure. Tulane has amassed a list of trained resources available to provide support and guidance thorough the initiation, investigation, and resolution of a report of Federal Regulation Sexual Harassment as well as any other sexual misconduct at the *All In* website.

Any individual who is uncertain what they wish to do in response to an alleged incident of Sexual Harassment, including how or whether to report the conduct, is encouraged to contact and consult a Confidential Resource to address questions and concerns in a confidential setting.

Individuals may choose to either disclose incidents of Sexual Harassment and violence in a Report directly to the University's Assistant Provost for Title IX Compliance and Education or other designated response offices; or to any other non-confidential employee at Tulane. Either route an employee chooses will lead to prompt outreach from the Equal Opportunity & Resolution Management Department.

**Direct Reporting to Tulane**

A Report is any official notification made to the University's Assistant Provost for Title IX Compliance and Education regarding incidents that implicate Title IX. **A Report is not the same as a Formal Complaint to initiate the Title IX Grievance Procedures.** A Report to the University's Assistant Provost for Title IX Compliance and Education is not a police report.

Individuals with questions or concerns about Tulane's processes may also contact the University's Assistant Provost for Title IX Compliance and Education directly as part of reporting an incident to Tulane. Any individual may make a report of Sexual Harassment under this policy regardless of affiliation with Tulane and regardless of whether or not the person reporting is the person alleged to be the victim of conduct. Reports can be made in person or via Zoom/other virtual platforms, by mail, by telephone, or by electronic mail, using the contact information listed for the University's Assistant Provost for Title IX Compliance and Education, or by any other means that results in the University's Assistant Provost for Title IX Compliance and Education receiving the person's verbal or written report. A report may be made at any time (including during non-business hours) by using the telephone number or electronic mail address, or by mail to the office address, listed for the University's Assistant Provost for Title IX Compliance and Education here:

    Julia Broussard
    Office of Academic Affairs & Provost
    Jones Hall 308; Tulane University
    New Orleans LA, 70118; phone: (504) 865-5611; email: titleix@tulane.edu

Tulane has also designated Ruth Riley and Erica Woodley as Deputy Title IX Coordinators for employees and students, respectively:

> Ruth Riley, Deputy for Employees
> Associate Vice President, Human Resources
> 1555 Poydras St., Suite 964
> New Orleans, LA 70112; phone: (504) 862-8083; email: rariley@tulane.edu

> Erica Woodley, Deputy for Students
> Associate Vice President of Student Affairs & Dean of Students
> Lavin-Bernick Center, Suite G02
> New Orleans, LA 70118; phone: (504) 314-2160; email: ewoodley@tulane.edu

<u>Reports made to the Equal Opportunity & Resolution Management Department and the University's Assistant Provost for Title IX Compliance and Education</u> involving employees <u>are not</u> shared with anyone without a need to know. Reports may be shared with designated staff only to enact Supportive Measures or coordinate other forms of care and response.

Individuals may also report to those at Tulane who are designated with the authority to institute corrective measures on behalf of the University. The University has designated the staff in the following offices as those who can institute corrective measures on half of the University as these are the first-line responding employees to issues of sexual discrimination, harassment, and violence on campus: the Office of Student Conduct, the Equal Opportunity & Resolution Management Department, those individuals serving in the Student Affairs Professional On Call rotation, the Tulane University Police Department, and the Office of Case Management & Victim Support Services. These offices will receive a Report from an individual and notify the University's Assistant Provost for Title IX Compliance and Education.

**Title IX Care Connections by Employees**
To fulfill their mandate to share information as stated in Part V of the Equal Opportunity & Anti-Discrimination Policy. Employees (including Resident Assistants) who are not confidential are required to make a "Care Connection" via the Tulane Concerns Form (tulane.edu/concerns) so the University may make supportive outreach to any known impacted individuals. If a Care Connection concerns an employee, supportive outreach will come from Equal Opportunity & Resolution Management. The University's Assistant Provost for Title IX Compliance and Education is copied on Care Connections and will gatekeep whether the incident falls within Title IX or not (as outlined below in Appendix Part VII) so that the Equal Opportunity & Resolution Management Department may fully discuss which (if any) University resolution processes are available to Complainants.

Supportive outreach is offered to all employees, regardless if the incident falls within the jurisdiction of Title IX or the Equal Opportunity & Anti-Discrimination Policy. An employee (as a complainant) may decline to meet with the Equal Opportunity & Resolution Management Department about the incident during the Care Connection. If an employee declines to meet, they will receive an email outlining options for support should they need assistance in the future.

<u>Exceptions</u>: Faculty are not required to make a Care Connection in response to disclosures made within the academic context, namely within classroom discussion or activities or in assignments (e.g., class journals, essays, creative nonfiction, etc.). If a faculty member is unsure if a disclosure should be excepted or not, please contact the University's Assistant Provost for Title IX Compliance and Education. Note that while faculty members do not need to share or forward disclosures in the academic context, they can still do so if they feel it is appropriate.

**Retaliation and Privacy Protections**

In addition to the prohibition on retaliation found in the Code of Student Conduct, neither Tulane nor any person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a Report or Formal Complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part. Intimidation, threats, coercion, or discrimination, including charges against an individual for other conduct violations that do not involve sex discrimination or Sexual Harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a Report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

**Reporting to Law Enforcement**

All individuals have the right to report to law enforcement as well. Whether or not the conduct occurred on or around Tulane's properties, individuals can reach out to the Tulane University Police Department to make a criminal report or receive assistance in emergency situations or when a crime is in progress. TUPD can also connect people to law enforcement in other jurisdictions. Further, Equal Opportunity & Resolution Management can help connect individuals directly with detectives in the New Orleans Police Department if individuals would like to disclose there. Disclosing to a non-TUPD Tulane employee is not reporting to the police.

Proceedings under this policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus. Neither a decision by law enforcement regarding prosecution nor the outcome of any criminal proceeding will be considered determinative of whether a violation of this policy has occurred.

**V. Supportive Measures and Emergency Removals**

**Supportive Measures**

Supportive Measures are individualized services offered to Complainants and Respondents that are offered as appropriate and reasonably available to restore or preserve equal access to Tulane's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or Tulane's educational environment, or deter Sexual Harassment. **<u>Supportive Measures are available regardless of whether a Complainant wants to move forward with a</u> <u>Formal Complaint.</u>**

When Tulane has notice of potential Federal Regulation Sexual Harassment, the University will inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint and explain to the Complainant the process for filing a Formal Complaint.

Supportive Measures are non-disciplinary, non-punitive individualized measures offered as appropriate, as reasonably available and without fee or charge to the Complainant or Respondent. They may include:

- Access to counseling services and assistance in setting up initial appointments, both on and off campus
- Imposition of mutual Contact Restriction
- Rescheduling of exams and assignments
- Providing alternative course completion options
- Change in class schedule, including the ability to drop a course without penalty or to transfer sections
- Change in work schedule or job assignment
- Assistance from University support staff in completing housing relocation
- Access modifications to certain University facilities or activities pending resolution of the matter
- Voluntary leave of absence
- Providing an escort to assure safe movement between classes and activities
- Arranging for medical services
- Providing academic support services, such as tutoring

Tulane will consider a number of factors in determining which Supportive Measures to take, including the needs of the employee seeking Supportive Measures; the severity or pervasiveness of the alleged conduct; any continuing effects on the Complainant; whether the Complainant and the Respondent share the same residence hall, academic course(s), or job location(s); and whether judicial measures have been taken to protect the Complainant (e.g., protective orders). Tulane will work in good faith to implement the requirements of judicially issued protective orders and similar orders, to the extent that doing so is within its authority.

The University's Assistant Provost for Title IX Compliance and Education has designated the Equal Opportunity & Resolution Management Department within the Division of Human Resources (EO) to administer the offer and implementation of Supportive Measures for employee Complainants and Respondents.

The University's Assistant Provost for Title IX Compliance and Education is responsible for ensuring the implementation of Supportive Measures. To that end, if an employee feels as though they have been denied a reasonable Supportive Measure by EO, they may file an appeal with the University's Assistant Provost for Title IX Compliance and Education.

Tulane will maintain the privacy of any Supportive Measures provided under this Appendix to the extent practicable and will promptly address any violation of protective measures.

The process for offering and implementing Supportive Measures to employees and related other individuals is as follows:

<u>Complainants</u>. Upon receipt of an employee disclosure of sexual misconduct, regardless of whether it falls within Title IX, the Equal Opportunity & Resolution Management Department will promptly contact the Complainant and invite them to discuss the availability of Supportive Measures, consider the Complainant's wishes with respect to Supportive Measures, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint. Complainants who either wish to or file a Formal Complaint with the university but have their complaints dismissed because of one of the reasons explained in the Dismissal section may be able to pursue conduct action through the Equal Opportunity & Anti-Discrimination Policy; Complainants will be informed of that option, as well as their option to appeal a complaint's dismissal. In addition to an in-person meeting, Tulane will provide the Complainant with written information about resources, procedural options, and reasonably available Supportive Measures. This written information shall include a notification about the process for seeking disability-based accommodations, academic adjustments, and/or auxiliary aids under Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

Once it has been determined that a report meets the threshold for Sexual Harassment as defined by the Title IX regulations (34 C.F.R. part 106), that Complainant will receive an email offering to meet and further review their rights and options under Title IX. The Complainant also has a right to schedule a meeting with the University's Assistant Provost for Title IX Compliance and Education.

<u>Respondents.</u> Once an employee has been named in a Formal Complaint and/or received notice that they are a Respondent in a Title IX matter, the Equal Opportunity & Resolution Management Department will contact the Respondent and invite them to speak with an Investigator to learn about Supportive Measures available and the Title IX Grievance Procedure. The Respondent also has a right to schedule a meeting with the University's Assistant Provost for Title IX Compliance and Education.

<u>Third Parties</u>. Tulane will also provide reasonably available Supportive Measures for Third Parties, provided that the Supportive Measures are within the scope of that individual's relationship to Tulane.

Emergency Removal Based on the information in a Report, or information subsequently learned, the University may remove a Respondent from Tulane's education program or activity (including placing a non-student employee Respondent on administrative leave during the pendency of a grievance process) on an emergency basis.

An Emergency Removal requires that the University undertake an individualized safety and risk analysis and then determine if a removal is warranted due to an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment justifies removal. This analysis will be conducted by the University's Behavioral
Intervention Team with a final determination regarding removal made by a Deputy Title IX Coordinator (either the Deputy for Students or Deputy for Employees, depending on the respondent's identity). The respondent will be notified in writing as to the determination and reasoning for the removal decision; this

notice will also detail how the respondent can choose to file an appeal immediately following the removal. All appeals will be heard by the University's Assistant Provost for Title IX Compliance and Education within thirty-six (36) hours of submission and a decision returned in writing to the respondent.

If the removal directly relates to the complainant, the complainant will be notified if a respondent has been subjected to an Emergency Removal and the outcome of any appeals the Respondent files to challenge their removal. If the respondent files an appeal to a removal decision, the complainant will have twenty-four (24) hours to provide information for consideration of the appeal. Removals will be re-evaluated on a weekly basis by the Behavioral Intervention Team.

## VI. Filing a Formal Complaint

When a Complainant is contacted following either a Report of Sexual Harassment or a Care Connection, along with the information about Supportive Measures, Complainants are provided information on filing a Formal Complaint to initiate a Title IX resolution process: either an informal Alternative Resolution Option or the formal Title IX Grievance Procedure. <u>A signed Formal Complaint is required to initiate any</u> <u>Title IX resolution process</u>.

Both the informal resolution process (an option mutually chosen by the complainant and respondent) and the formal Title IX Grievance Process (investigation, hearing and appeal process) are initiated by the filing of a Formal Complaint.

A Formal Complaint is a document submitted to the University's Assistant Provost for Title IX Compliance and Education by the Complainant alleging that a Respondent engaged in Prohibited Conduct and requesting an investigation. The Formal Complaint may be submitted to the University's Assistant Provost for Title IX Compliance and Education in person, by mail, or by electronic mail, using the Formal Complaint form. The Complainant may also contact the University's Assistant Provost for Title IX Compliance and Education directly for assistance.

Additionally, a Report may allege certain facts that compel Tulane to continue forward with an investigation, if not file a Formal Complaint, despite the Complainant choosing not to sign a Formal Complaint. Such circumstances may be present where a risk of imminent harm to an individual or others or a threat to the physical health and safety of the campus is determined to exist. After an evaluation of the available information, if such circumstances are present, a Formal Complaints can be filed and signed by the University's Assistant Provost for Title IX Compliance and Education to continue the resolution process. If a Formal Complaint is initiated without the Complainant's participation, the Complainant will be notified and given an explanation of why the University is compelled to continue. <u>Absent such extraordinary</u> <u>circumstances, the University will not proceed with its Formal Grievance Procedure without</u> <u>a participating</u> <u>Complainant.</u>

Tulane may consolidate Formal Complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Prohibited Conduct arise out of the same facts or circumstances.

**VII. Determining if the Title IX Process, as Outlined in this Appendix, Applies**

Reports of potential sexual discrimination, harassment, or violence are routed to the University's Assistant Provost for Title IX Compliance and Education and to the Equal Opportunity and Resolution Management Department to initiate the University's response. Some alleged violations of Title IX (such as disparate treatment sex discrimination) fall within the scope of Title IX, but do not fall within the scope of the new Sexual Harassment investigative and hearing process proscribed by the May 2020 Title IX regulations.

While the Equal Opportunity & Resolution Management Department makes supportive outreach in the manner explained in the above section, the University's Assistant Provost for Title IX Compliance and Education conducts a gatekeeping evaluation of the Report to determine whether it falls within the bounds of Title IX, and regarding which process applies to the matter. This gatekeeping evaluation occurs whether a Formal Complaint has been filed or not, and employees will be informed whether their allegations fall within the jurisdiction of Title IX (and informed about which process may apply) in the initial supportive outreach meeting and/or before filing a Formal Complaint whenever possible.

The University's Assistant Provost for Title IX Compliance and Education or designee will be responsible for determining whether the reported conduct falls within Federal Regulation Sexual Harassment jurisdiction as defined by the Title IX regulations (34 C.F.R. part 106). If so, Tulane may move forward with a Formal Complaint process as described in the previous section. If not, Tulane may be required to dismiss any Formal Complaint. The University's Assistant Provost for Title IX Compliance and Education will evaluate reasonably available information to make the following determinations:

1) Did the reported conduct occur within Tulane's Education Program or Activity? This must be answered in three parts:
   a. Does Tulane have substantial control over the Respondent? And,
   b. Does Tulane have substantial control over the context in which the conduct is reported to have occurred; or did the conduct occur in a building owned or controlled by a student organization that is officially recognized by Tulane? And,
   c. Is the Complainant currently participating or attempting to participate in a Tulane Education Program or Activity?
2) Did the reported conduct occur in the United States?
3) Would the facts set forth by the report, if substantiated, constitute a violation of Sexual Harassment as defined by the Title IX regulations (34 C.F.R. part 106) and Section III of this Appendix?

Based on the answers to these questions, the University's Assistant Provost for Title IX Compliance and Education will make a determination about scope and process. This is a threshold determination regarding scope and jurisdiction, which will determine appropriate next steps as follows:

- If the answer to these three questions is yes, and a Formal Complaint is filed, then Tulane will follow the formal Grievance Procedure required by the Title IX regulations 34 C.F.R. part 106) for Sexual Harassment matters. The Title IX Grievance Process includes, among other measures, a hearing with cross-examination by each parties' advisors. The hearing

will allow the participants to simultaneously see and hear each other but may be conducted remotely through videoconferencing technology.

- If the answer to any of these three questions is no, and a Formal Complaint has been filed, then Tulane must dismiss the allegations in the Formal Complaint related to Sexual Harassment as defined in the Title IX regulations in Section III of the Appendix, while also retaining the discretion to proceed according to processes outlined in other Tulane policies (such as the Code of Student Conduct, for investigation and adjudication of matters other than Federal Regulation Sexual Harassment; or the Equal Opportunity/Anti-Discrimination Policies, for investigation and adjudication of sex discrimination that implicates Title VII).

The University's Assistant Provost for Title IX Compliance and Education or designee will provide written notice of the determination as to scope and jurisdiction to the Complainant, refer that individual to the appropriate resources, including local law enforcement resources as applicable, and provide reasonably available Supportive Measures.

In the event a Respondent is charged with a violation of an applicable conduct code that is related to the report of Sexual Harassment, the Equal Opportunity & Resolution Management Department may also investigate and resolve the related conduct charge through the Title IX Grievance Procedure jointly (i.e., if there is an allegation of conduct that violates Title VI and Title XI) or separate the two and use their proscribed individual processes but without sharing information between the two systems. If the Respondent is charged with a violation of another Tulane policy that is unrelated to the alleged violation of Federal Regulation Sexual Harassment, the Equal Opportunity & Resolution Management Department shall coordinate its investigation and resolution as appropriate with any such investigation or resolution under the other applicable Tulane policy.

**Appeals of the Dismissal of Formal Complaints**

If a Complainant or Respondent would like to appeal the University's Assistant Provost for Title IX Compliance and Education's decision to dismiss a Formal Complaint, they may submit an appeal to the Senior Vice President for Academic Affairs and Provost or their designee within one week of receiving the dismissal. The other party will be notified about the filing of the appeal and will then has one week to provide information for consideration of the appeal. The Provost will return a decision on the appeal within one week of receiving all information, notifying both parties simultaneously of the outcome.

**VIII. Title IX Grievance Procedure: Investigation, Hearing, and Appeal**

The investigation of Federal Regulation Sexual Harassment matters is dictated by the May 2020 Amendments to the Title IX Federal Regulations (34 C.F.R. part 106). Tulane's Federal Regulation Sexual Harassment Grievance Procedures for resolving Formal Complaints involving employee Respondents builds upon the processes described previously in this policy regarding the investigation and adjudication of other civil rights matters. This section describes the investigation of Formal Complaints for all Tulane employee affiliates; it also outlines the adjudication process for employees.

The process for tenure-track and other faculty is outlined in the Faculty Handbook. To the extent that conflicts exist between the process outlined in this policy and the process outlined in the Faculty Handbook, the process outlined in this policy will control.

The University is committed to providing a prompt and impartial investigation and adjudication of all Formal Complaints alleging violations of this policy. During the Grievance Process, both parties (Complainant and Respondent) have equal rights to participate.

**Presumptions of Good Faith and Non-Responsibility**
The University presumes that reports of prohibited conduct are made in good faith. A finding that the alleged behavior does not constitute a violation of this policy or that there is insufficient evidence to establish that the alleged conduct occurred as reported does not mean that the report was made in bad faith. Further, Tulane makes no determinations as to the outcome of an allegation until the completion of an investigation; this includes a presumption that the Respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

In all proceedings under this policy, including at the hearing, the complainant, the respondent, and the witnesses and other individuals sharing information are expected to provide truthful information.

**Advisors**
Throughout the Grievance Process, each party may have an Advisor of their choice; parties may change their advisor at any time during the Grievance Process. An Advisor is an individual chosen by a Complainant or a Respondent to provide guidance during the grievance process. An advisor may be a member or non-member of the University community and may be an attorney.

The role of the advisor is narrow in scope: the Advisor may attend any interview or meeting connected with the Grievance Process, but the Advisor may not actively participate in interviews and may not serve as a proxy for the party, including in communications to the University. The Advisor may attend the hearing and may conduct cross-examination of the other party and any witnesses at the hearing; otherwise, the Advisor may not actively participate in the hearing.

If a party does not have an Advisor present at the hearing to conduct cross examination, the University will provide without fee or charge to that party an advisor selected by the University (who may be, but is not required to be, an attorney) to conduct cross-examination of the other party and/or any witnesses.

Any individual who serves as an advisor is expected to make themselves available for meetings and interviews throughout the investigation process, as well as the hearing, as scheduled by the University. The University (including any official acting on behalf of the University such as an investigator or a hearing panelist) has the right at all times to determine what constitutes appropriate behavior on the part of an advisor and to take appropriate steps to ensure compliance with this policy.

**Procedural Review**
A Procedural Review is an informational meeting where a member of the Equal Opportunity & Resolution Management Department oversees Tulane's investigation and adjudication procedures.

A Procedural Review can happen before or after a Formal Complaint has been filed. Having a Procedural Review does not initiate the conduct process unless a Complainant expressly states they want to initiate that process; in Title IX matters, the conduct process cannot be initiated without a signed Formal Complaint. While a Complainant can file a Formal Complaint without having a Procedural Review first, it is strongly encouraged. Complainants will be given the information to file a Formal Complaint following their Procedural Review. If a Formal Complaint is filed before a Procedural Review, one will be scheduled promptly. Respondents will be contacted for a Procedural Review following the notice of investigation.

Procedural Reviews are conducted with both Complainants and Respondents. During the Procedural Review, parties will learn about the investigation process in detail, including all rights, privileges and responsibilities. Parties will also learn about the available Supportive Measures in place to help them navigate this process. Additionally, parties will learn details about communication and timeline. Parties will receive a written summary of the meeting for their reference. Advisors may also join the parties in this meeting.

**Informal Resolution Process**

Subject to the consent of the parties and the approval of the University's Assistant Provost for Title IX Compliance and Education, the University permits informal resolution processes in cases in which a formal complaint has been filed with the University's Assistant Provost for Title IX Compliance and Education. Subject to approval by the University's Assistant Provost for Title IX Compliance and Education, the informal resolution process is available in matters involving a student complainant and a student respondent as well as in matters involving a faculty/staff complainant and a faculty/staff respondent; the informal resolution process is not available in matters involving a student and an employee.

The informal resolution process is a voluntary, remedies-based process designed to provide parties with an option to resolve disputes in a forum that is separate and distinct from the University's formal grievance processes under the Federal Regulation Sexual Harassment policy. The purpose of the informal resolution process is to address the conduct which has been reported by the complainant and place the parties in a position to pursue their academic and non-academic interests in a safe, respectful, and productive educational and working environment. Under this process, there will be no disciplinary action taken against a respondent, and the resolution will not appear on the respondent's disciplinary record.

The University may facilitate the informal resolution process prior to conducting a hearing. Before the informal resolution process is used, both parties must provide voluntary, written consent to the informal resolution process and must receive written notice disclosing: the allegations, the requirements of the informal resolution process (including the circumstances under which it precludes the parties from resuming a formal complaint arising from the same allegations), and any outcomes resulting from participating in the informal resolution process (including the records that will be maintained or could be shared). At any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the Federal Regulation Sexual Harassment grievance process with respect to the formal complaint.

The University will not require as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, waiver of the right to an investigation and adjudication of formal complaints of Federal Regulation Sexual Harassment. Similarly, the University will not require, encourage, or discourage the parties from participating in the informal resolution process.

**Investigation**
Following the receipt and review of the formal complaint by the University's Assistant Provost for Title IX Compliance and Education, and it being determined that the matter properly falls under this Federal Regulation Sexual Harassment policy, the parties will be informed in writing of the initiation of the investigation. The written information shall include:

- The identities of the parties, if known.
- A concise summary of the alleged conduct at issue (including when and where it occurred, if known).
- Notice of the allegations potentially constituting Federal Regulation Sexual Harassment.
- A statement that the respondent is presumed not responsible and that a determination regarding responsibility is made at the conclusion of the grievance process.
- A statement informing the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney.
- A statement informing the parties that they may request to inspect and review evidence.
- A statement informing the parties that knowingly making false statements or knowingly submitting false information during the grievance process may constitute a violation of University policy.
- Information regarding the applicable grievance procedures, including the informal resolution process.

If, during the investigation, additional information is disclosed that may also constitute prohibited conduct under this policy, the Respondent and Complainant will be informed in writing that such additional information will be included in the grievance process.

This investigation process will continue forward as explained absent the parties agreeing to use an informal resolution.

**Collection of Evidence**
The investigators will collect information from each party. While the complainant and the respondent are not restricted from gathering and presenting relevant evidence, the investigators are responsible for gathering relevant evidence to the extent reasonably possible. However, each party will be given an equal opportunity to suggest witnesses; provide other relevant information, such as documents, communications, photographs, and other evidence; and suggest questions to be posed to the other party or witnesses. Parties and witnesses are expected to provide all available relevant evidence to the investigators during the investigation. If a party or witness fails to provide available relevant evidence during the investigation, such evidence may, at the discretion of the Hearing Chair(s), be excluded from consideration at the hearing. While parties are not restricted from presenting information attesting to the parties' character, such evidence generally is not considered relevant.

Investigators will draft a complete investigative report, outlining material facts (those in dispute and not in dispute); collecting all Respondent, Complainant and relevant witness and impact statements; asking any needed follow up questions; and collecting and organizing all relevant evidence. The investigator will evaluate all relevant evidence – including both inculpatory and exculpatory evidence. This report will be reviewed by the Associate Vice President of Human Resources and the University's Assistant Provost for Title IX Compliance and Education for compliance and consistency purposes.

Credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness.

**Relevance of Evidence**

Tulane will objectively evaluate all relevant evidence (inculpatory and exculpatory) but retains discretion with respect to how persuasive the hearing chair finds particular evidence to be. Relevant evidence is of consequence to the matter at hand, tending to make a fact more or less probable than it would be without the evidence. Additionally, the Hearing Chair cannot rely on statements of a party or witness who has not submitted to cross-examination at the live hearing.

There are also evidentiary protections similar to "rape shield" protections in criminal law which deem questions and evidence about a complainant's prior sexual history to be irrelevant with two limited exceptions:

1) if offered to prove that someone other than the respondent committed the alleged sexual harassment; or
2) if the question or evidence concerns sexual behavior between the Complainant and the Respondent and is offered to prove consent.

**Hearing Process**

The report will then be turned over to a separate Hearing Chair for adjudication. The Hearing Chair may gather additional information, including speaking with any identified party. Please note that the assignment of the Hearing Chair is in Tulane's sole discretion, and the Hearing Chair may include (but is not required to be) an outside attorney who is not an employee of Tulane. For the adjudication of complaints involving faculty, the Hearing Chair will join the existing faculty grievance committee and serve as a non-voting member.

The Hearing Chair will then preside over a live hearing, in which advisors of both the Respondent and Complainant may cross-examine any individual that has made a statement or provided evidence, including any and all witnesses, the Respondent or the Complainant. Each party must be represented by an advisor. If the Complainant or Respondent does not have an advisor, the University will provide one. If a party's chosen advisor does not appear, the University will appoint an advisor to provide cross-examination of the evidence on the party's behalf. The Hearing Chair will determine if a question or evidence is relevant or admissible. The Hearing Chair may question witnesses, the Respondent and Complainant. At no time will advisors answer on behalf of their Complainant or Respondent.

The Hearing Chair will have absolute discretion with respect to administering the hearing. The Hearing Chair will decide whether evidence and witnesses are relevant or irrelevant, with the understanding that

the introduction of relevant evidence and witnesses will always be permitted. The Hearing Chair will be responsible for maintaining an orderly, fair, and respectful hearing and will have broad authority to respond to disruptive or harassing behaviors, including adjourning the hearing or excluding the offending individual, including a party, witness, or advisor.

While the hearing is not intended to be a repeat of the investigation, the parties will be provided with an equal opportunity for their advisors to conduct cross examination of the other party and/or of relevant witnesses. A typical hearing may include brief opening remarks by the Hearing Chair; questions posed by the Hearing Chair to one or both of the parties; questions posed by the Hearing Chair to any relevant witnesses; and cross-examination by either party's advisor of the other party and relevant witnesses.

The parties' advisors will have the opportunity to cross examine the other party (and witnesses, if any). Such cross examination must be conducted directly, orally, and in real time by the party's advisor and never by a party personally. Only relevant cross examination questions may be asked of a party or witness. Before a party or witness answers a cross-examination question that has been posed by a party's advisor, the Hearing Chair must first determine whether the question is relevant and explain any decision to exclude a question as not relevant.

If the Complainant, the Respondent, or a witness informs the University that they will not attend the hearing (or will refuse to be cross-examined), the hearing may proceed, as determined by the University's Assistant Provost for Title IX Compliance and Education. The Hearing Panel may not, however draw any adverse inference in reaching a determination regarding responsibility based solely on the individual's absence from the hearing (or their refusal to be cross- examined).

Other University administrators may attend the hearing at the request of or with the prior approval of the Hearing Chair, but the parties will be notified in advance of anyone else who will be in attendance.

The Hearing Chair will make a finding of responsible or not responsible for all charges and provide a rationale for each finding. The Hearing Chair will make an independent decision based on a thorough review of all relevant evidence collected. The Hearing Chair shall write a written determination, which will contain: (1) the allegations potentially constituting Federal Regulation Sexual Harassment; (2) a description of the procedural steps taken from the receipt of the formal complaint through the determination (including any notifications to the parties, interviews with parties and witnesses, site visits (if any), methods used to gather other information, and the hearing); (3) findings of fact supporting the determination; (4) conclusions regarding the application of this policy to the facts; (5) a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility (i.e., whether a policy violation occurred), any disciplinary sanctions imposed by the Sanction Officer if there has been a finding of responsibility, and whether any remedies designed to restore or preserve equal access to the University's education program or activity or working environment will be implemented; and (6) relevant appeal information for the parties.

If there is a finding of responsibility, the Hearing Chair will consider the scope of the case, impact on students and community and prior history when assigning sanctions. The Hearing Chair will also decide if remedies are appropriate in order to restore or preserve equal access to their education at Tulane. Such

remedies may include the same individualized services described as "Supportive Measures;" however, unlike Supportive Measures, remedies need not be non- disciplinary or non-punitive and need not avoid burdening the Respondent. All sanctions must be approved by either the Director of Student Conduct for students, the Vice President of Human Resources for staff, or the Provost and/or Dean for faculty members. Upon completion, cases will be turned over to the appropriate administrators for sanction and remedy implementation.

A Respondent in these cases may acknowledge responsibility at any time and accept sanctions imposed by the appropriate administration office. A Complainant may withdraw the complaint at any time. Either of these occurrences would cease any investigation.

Sanctions for a finding of responsibility for these cases ranges from a warning to expulsion and may also include a variety of educational sanctions. Supportive Measures cannot be used as sanctions.

### Appeals

**The appeal process is as described previously in the policy, but in Title IX cases**, appeals may be submitted on the following bases: (1) procedural irregularity that affected the outcome of the matter; (2) new evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made which could affect the outcome of the matter; (3) the University's Assistant Provost for Title IX Compliance and Education or the University's staff, investigator(s), or any Hearing Chair had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter; and/or (4) the sanctions (or recommended sanctions) are not commensurate with the violation.

### IX. Training, Conflict of Interest, and Bias

Individuals who fill certain roles in the Title IX Grievance Procedure must receive annual training to ensure awareness of their compliance obligations and in order to best provide equitable treatment to Complainants and Respondents and be compliant with the Grievance Procedures required by Title IX. These individuals are University's Assistant Provost for Title IX Compliance and Education, Deputy Coordinators, Investigators, Hearing Chairs and other decision-makers (including appellate board members), and any person facilitating an Alternative Resolution Option within the Informal Process. Training subjects must include: the definition of Sexual Harassment as proscribed by the Title IX regulations (34 C.F.R. part 106); the scope of the University's education program or activity; how to conduct an Investigation and Grievance Process including Hearings, Appeals, and informal resolution processes, as applicable.

Additionally, the Hearing Chair(s) must receive training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant. Investigators must also receive the appropriate training needed to create an investigative report that fairly summarizes relevant evidence.

The Title IX regulations (34 C.F.R. part 106) further require Tulane to make publicly available information on these trainings. A list of trainings attended by these individuals is available at

https://allin.tulane.edu/content/training. These are both internal and external trainings. The list includes the materials used in the training, all of which are provided for public review. These materials will be kept for seven years.

Further, any individual designated by Tulane as a Title IX Coordinator, Investigator, Hearing Chair, or any person facilitating an Alternative Resolution Option within the Informal Process, will not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent. They will also be required to receive training on how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. Any materials used to train Title IX Coordinator, investigators, Hearing Chairs, and any person facilitating an Alternative Resolution Option within the Informal Process must not rely on sex stereotypes and must promote impartial investigations and adjudications of Formal Complaints of Sexual Harassment. Any training materials on these subjects will be publicly shared in the manner described in the training section above.