**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| YUE ZHAO | CIVIL ACTION NO.  2:25-cv-2474 |
| VERSUS | JUDGE SARAH S VANCE |
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND; DAVID CROSSLIN; HEATHER MACHADO; LEE HAMM | MAGISTRATE JUDGE EVA J. DOSSIER |

**DEFENDANTS' REPLY IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**MAY IT PLEASE THE COURT:**

Defendants, David Crosslin ("Dr. Crosslin"), Heather Machado ("Dr. Machado"), and Lee Hamm ("Dr. Hamm") (collectively, the "Individual Defendants"), and The Administrators of the Tulane Educational Fund ("Tulane") respectfully submit this Reply Memorandum in Further Support of its Motion to Dismiss all claims in the Amended Complaint and Jury Demand (R. Doc. 18), filed by Plaintiff, Yue Zhao, pursuant to Fed. R. Civ. P. Rule 12(b)(6) and to address the arguments asserted by Plaintiff in his Opposition (R. Doc. 19).

Plaintiff's claims against both Tulane and the Individual Defendants are factually and legally insufficient, as set forth extensively by the legal authorities cited in both the original Motions to Dismiss (R. Doc. 6, 7) and the Motion to Dismiss filed jointly in response to the Amended Complaint. By contrast, Plaintiff's Opposition fails to cite proper authorities to substantiate the legal support for his claims, repeats his factually deficient allegations amounting to legal conclusions that do not meet the Rule 12 pleading standard, attempts to create "factual disputes" out of his own allegations, and improperly expands the allegations in the Amended Complaint. It remains to be the case that Plaintiff has not alleged enough facts to state a plausible

PD.61199722.2

claim for relief on the face of the Amended Complaint. Accordingly, all of Plaintiff's claims should be dismissed *with prejudice*.

## I.    PLAINTIFF'S ATTEMPTS TO CREATE FACTUAL DISPUTES ABOUT THE POLICIES AT ISSUE ARE INVALID BECAUSE THE TERMS OF THE POLICIES ARE CLEAR AND EXPLICIT.

As an initial matter, Plaintiff attempts to discredit Defendants' Motion to Dismiss, particularly with respect to his unsustainable breach of contract claim, by contesting Defendants' attachment of two policies which Plaintiff extensively incorporated, cited, and referenced in his Amended Complaint. Defendants properly attached these policies to its Motion to Dismiss, and doing so does not convert the pleading to a Motion for Summary Judgment at this juncture. A Motion to Dismiss under Rule 12 is only converted to one for summary judgment under Rule 56 if materials "outside of the pleadings" are considered, but "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim."[1] As discussed at length, the policies attached to Defendants' Motion are thoroughly referenced in Plaintiff's Amended Complaint, and the terms of those policies are central to his breach of contract claim[2] and his other claims, based on repeated references to those policies as evidence of alleged bad acts by Tulane and its employees.[3]

And the Court need not consider Plaintiff's position that his interpretation of the policies creates a "factual dispute," as when "the words of a[n alleged] contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[4] In any case, Defendants acknowledge that Plaintiff referenced versions of those policies

---

[1] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).
[2] Amended Complaint, R. Doc. 13, at ¶¶ 146-158.
[3] *See* Amended Complaint, R. Doc. 13, at ¶¶ 55, 96, 108, 124, 126, 130, 194, 198-202, 244.
[4] *Deep S. Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 665 (M.D. La. 2023) (quoting *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13), 112 So. 3d 187, 192).

that were different than those attached to Defendants' Motion. A copy of the BMS Policy

Handbook in effect from 2024-2025 is attached hereto as Exhibit A, and a copy of Tulane's Equal

Opportunity Policy is attached hereto as Exhibit B. The terms of those policies are clear and

explicit, with no ambiguities that need be resolved. The substance of the relevant portions of those

policies is not altered from the policies submitted alongside Defendants' Motion to Dismiss,

specifically with respect to the alleged provisions that were breached:

- Plaintiff alleges that §§ II(B)(7)-(8) of the Handbook created an obligation for Dr. Crosslin to "maintain regular supervisory conduct, and effectively abandon[ing] his role" as a dissertation advisor, which Plaintiff alleges Dr. Crosslin breached.[5] Defendants asserted in the Motion to Dismiss that those sections put the onus on choosing and matching with a dissertation advisor through completion of the program, and that "[f]ailure to match with a Dissertation Advisor can lead to dismissal."[6] This remains true, and it was Plaintiff's own burden to comply with the expectations of the BMS Handbook including to secure a Dissertation Advisor.

- Plaintiff alleges that § II(B)(7) required Dr. Crosslin to participate in and review his Individual Development Plan.[7] Defendants asserted in the Motion to Dismiss that the same section requires students to "complete an IDP annually" with advisors/mentors only required to review that plan, not to facilitate its submission. The fact remains that the onus to submit a completed IDP by the June 30 deadline falls on the student.[8]

- Plaintiff claims that § II(B)(8) required Dr. Crosslin to discuss his progress with a committee before making a determination as to his academic status.[9] There is no such requirement in the BMS Handbook, and the role of the Dissertation Committee is to meet annually with the Ph.D. candidate, discuss research progress, and agree on the acceptability of the candidate's final dissertation.[10]

- Plaintiff claims that the doctoral stipend cannot be withdrawn by an individual advisor. The cited section of the BMS Handbook states that "Dissertation Advisors are responsible for stipend funding . . . beginning July of the 2nd year until graduation. Stipends provided

---

[5] R. Doc. 13 at ¶ 132(a).
[6] Exhibit A, p. 8-9.
[7] R. Doc. 13 at ¶ 132(b).
[8] Exhibit A, p. 7.
[9] R. Doc. 13 at ¶ 132(c).
[10] Exhibit A, p. 9, 12.

by the Dissertation Advisor are Research Assistantships." This is the same terminology as cited in Defendants' Motion to Dismiss.

- Plaintiff also continues to refer to a "mandated 60-day timeline" for completing Equal Opportunity investigations. The relevant portions of the policy submitted alongside Defendants' Motion to Dismiss remain the same as the policy that was in effect in the 2024-2025 school year, which provide that "[i]nvestigations will be conducted as expeditiously as possible and are usually completed within a reasonable period, typically 60 days, though this may vary[.]"[11]

Plaintiff's misguided argument that the policies at issue convert the Motion to Dismiss to one for summary judgment is not supported by the facts or law. The policies at issue are clear and unambiguous, and Plaintiff fails to adequately allege a breach of contract claim against Tulane.

## II. PLAINTIFF MISSTATES DEFENDANTS' ARGUMENT ABOUT HIS ALLEGED ACCOMMODATION REQUESTS AND RELIES ON INAPPLICABLE LAW.

Plaintiff's arguments about his Americans with Disabilities Act ("ADA") and Rehabilitation Act ("Section 504") claims fail to pass muster legally and do not disprove the positions taken in Defendants' Motion. In his Opposition, Plaintiff cites to a 2025 U.S. Supreme Court decision purporting to "foreclose[] any argument that Plaintiff must satisfy a school-specific" standard for proceeding on his disability discrimination claim.[12] Regardless, that case did *not* change that Plaintiff's recovery under Title III of the ADA, under which he makes his allegations, is limited to injunctive relief by statute.[13] In any case, Defendants have not argued that there is a heightened pleading standard with respect to those claims, but rather that Plaintiff has failed under *any* standard to prove disability discrimination because he did not have a qualifying

---

[11] Exhibit B at 17.
[12] R. Doc. 19 at 3. *See A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 145 S. Ct. 1647, 222 L. Ed. 2d 1 (2025) (discussing that "schoolchildren bringing ADA and Rehabilitation Act claims relating to their education" need not prove a heightened standard of pleading to establish a case).
[13] *George v. Hobby Lobby Stores, Inc.*, 769 F. Supp. 3d 537 (E.D. La. 2025).

disability, Tulane took reasonable actions with respect to his allegedly requested accommodations, Tulane did not take any retaliatory action towards Plaintiff, and his requested relief is not proper.

Plaintiff's argument that his alleged disability request(s) "plausibly allege a disability" and that Defendants' position "raises factual questions" is unsupported. His allegations remain conclusory and insufficient, and Plaintiff still fails to acknowledge that his "accommodation request" was not connected to the actual need for accommodation based on his specific disability. He does not allege how his purported "Severe Fatty Liver Disease," "*his particular* impairment substantially limits *his particular* major life activity."[14] Instead, he requested a temporary remote work arrangement to obtain a diagnostic procedure. Again, Tulane granted this request, but it was neither a request for accommodation under Tulane's process and procedures nor considered a request for accommodation under Title III or Section 504.

Plaintiff also argues that Tulane approved the alleged accommodation and "later penalized him for exercising the accommodation Tulane itself authorized."[15] This is not supported by the allegations in the Amended Complaint, which state Dr. Crosslin cited "misconduct" and "performance issues" which "occurred, if at all, before Plaintiff ever requested his medical accommodation."[16] Plaintiff was removed from Dr. Crosslin's lab not because of his alleged accommodation, but because of professional issues that occurred during the school year prior to his remote work arrangement.

Similar issues plague Plaintiff's arguments in his Opposition regarding his retaliation claims. Plaintiff's argument that Tulane was "driven by legal pressure" not to dismiss him does not create "an issue of fact"; in fact, it is a concession that Tulane did not dismiss Plaintiff from

---

[14] *Waldrip*, 325 F.3d at 656.
[15] R. Doc. 19 at 5.
[16] Amended Complaint, R. Doc. 13, at ¶ 31.

the program. This argument also is not supported by the allegations in the Amended Complaint, where Plaintiff states that he was given until September 5, 2025 to find a new advisor to remain in good standing, then granted an additional extension of 21 days following a letter from his attorney. Plaintiff concedes that he *has never been dismissed* from the program. In a case interpreting a claim for retaliation based on exercise of Title III rights, the First Circuit found that a student's completion of courses rendered moot his claim for injunctive relief under Title V, where he alleged that the school retaliated against him for requesting an unavailable accommodation.[17] The same is the case here; since August 2025, Tulane has worked with Plaintiff to find him a new advisor, granting multiple extensions of time for him to do so.[18] And again, Plaintiff's removal from Dr. Crosslin's lab, without removal from the program, was based on legitimate, non-discriminatory purposes, namely Plaintiff's performance issues occurring during the 2024-2025 school year.

Plaintiff has failed entirely to adequately allege an ADA or Section 504 claims for disability discrimination or retaliation, and so those claims must be dismissed.

## III. PLAINTIFF'S STATE LAW CLAIMS REMAIN UNSUBSTANTIATED BY HIS CONCLUSORY ALLEGATIONS.

### A. Intentional Infliction of Emotional Distress (Count IV)

Plaintiff's Opposition does nothing to remedy that his Amended Complaint fails to meet the high bar for pleading intentional infliction of emotional distress ("IIED"). In fact, the Opposition contradicts his own Amended Complaint, which analogizes the IIED standard articulated by the Louisiana Supreme Court in *White v. Monsanto Co.*,[19] now stating that "the allegations here are materially different."[20] And in fact, the case he cites to support his argument,

---

[17] *See G. v. Fay School*, 931 F.3d 1 (1st Cir. 2019).
[18] R. Doc. 13 at ¶ 47.
[19] 585 So.2d 1205 (La. 1991).
[20] R. Doc. 19 at 10.

*Smith v. Atkins*,[21] is briefed in the Individual Defendants' Motion to Dismiss to show just how high a standard must be met to prove IIED – The teacher/student relationship there involved "an intentional long-term campaign of verbal bullying, ridicule and humiliation" including such behavior as to repeatedly make targeted sexually inappropriate comments during class to a female student and calling her a "slut" in front of other students.[22] The conduct alleged by Plaintiff comes nowhere near this level of extreme or outrageous. Plaintiff's IIED claim must be dismissed.

### B.      Fraudulent Inducement (Count V)

Plaintiff also attempts to remedy his failure to particularly allege fraud by referring back to his own conclusory allegations, which do not meet the specificity required for a fraud claim. Of note, after failing to originally allege a contractual relationship, Plaintiff now claims that a "travel contract with Tulane" exists.[23] This allegation appears nowhere in the Amended Complaint and is clearly an improper expansion of the pleadings. Even if such allegation was pled, Plaintiff has neither pled sufficient facts of an alleged contract nor a valid contractual relationship sufficient to support a claim for fraud. And, in any case, Plaintiff cannot succeed in any allegation that, in granting Plaintiff's limited request to travel to China for a diagnostic treatment, that Tulane had a "legal duty to supply the correct information and a breach of that duty resulting in damages to the plaintiff."[24] Nor has he demonstrated that Dr. Crosslin had the specific intent to deceive him, "a necessary element of fraud."[25]

---

[21] 622 So. 2d 795, 796-97, 800 (La. App. 4th Cir. 1993).
[22] *Id.*
[23] R. Doc. 13 at 14.
[24] *Casbon v. K.W.E.J., LLC*, 23-321 (La. App. 5 Cir. 10/4/23), 375 So. 3d 524, 530.
[25] *Robins v. Coles*, 2023-1343 (La. App. 1 Cir. 8/26/24), 395 So. 3d 345, 352, *writ denied,* 2024-01179 (La. 12/11/24), 396 So. 3d 965.

PD.61199722.2

### C.    Negligent Supervision, Training, and Negligence (Count VI)

As an initial matter, Plaintiff's opposition misunderstands Defendants' argument that there is no underlying tort sufficient to support a vicarious liability claim for negligent supervision or training against Tulane. Defendants do not argue that his injury needed be "physical;" the argument is that Plaintiff experienced *no* actionable tortious injury such that he can claim that Tulane negligently trained or supervised its employees. And Plaintiff's new theory on opposition that the failure to complete an OIE investigation within a "60-day completion expectation" proves exactly why that theory cannot succeed. As set forth above and in the EO policy attached as Exhibit B, Tulane is not contractually obligated to complete investigations within a time period. For this reason and the reasons set forth in the Individual Defendants' Motion to Dismiss, no duty has been breached, and so Plaintiff cannot succeed on this negligence theory against either Tulane or the Individual Defendants.

### D.    Defamation (Count VII)

Plaintiff confusingly refers to his academic performance as a factual dispute related to the alleged defamatory statement made about him, claiming that he has both specifically alleged the substance of the defamatory material, yet also that there is a "factual dispute" about the substance of that material. This makes clear that his allegations cannot survive Rule 12(b)(6). In any case, he fails to rebut the clear position that the statement, based on the manner in which it is alleged in the Amended Complaint, is not a "publication" and would be privileged. The statement was not made publicly available, was not predicated on the purpose of causing Plaintiff any harm, and was protected by the academic discretion afforded to Dr. Crosslin in identifying potential issues with the students assigned to his laboratory.[26] Internal communications regarding the performance of

---

[26] *See Ewing*, 474 U.S. at 225.

[others], are entitled to a qualified privilege when made in good faith to the proper parties.[27] Plaintiff's defamation claim must be dismissed.

### E.      Abuse of Rights (Count VIII)

Plaintiff attempts to save his abuse of rights claim by arguing that intent to cause harm cannot be resolved on a dispositive motion. However, Plaintiff has failed to allege a single fact which would constitute direct evidence of discriminatory intent, relying only on bare statements of the alleged injuries that Plaintiff experienced to "support an inference" of ill intent. He also fails to address that abuse of rights is held to a high bar under Louisiana law, nor that it is "applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[28] Plaintiff has not pled specific facts showing Dr. Crosslin's alleged intent outside of Plaintiff's own alleged injuries, and so he has not met the burden of showing a "predominant motive" of causing harm.[29] Plaintiff's Abuse of Rights claim must be dismissed.

### IV.     PLAINTIFF CANNOT RELY ON A PURPORTED ANONYMOUS "COMPARATOR" WITH NO SUPPORTING FACTS TO SUPPORT HIS NATIONAL ORIGIN DISCRIMINATION CLAIM (COUNT IX).

Finally, Plaintiff attempts to remedy the clear deficiency of his Title VI National Origin Discrimination claim by improperly expanding the allegations of his Amended Complaint with additional unspecified information. Defendants argued that Plaintiff's allegation as to discrimination based on his national origin were conclusory, only stating that "[n]one of the U.S.-born Ph.D. students in Dr. Crosslin's group were subjected to adverse action as a result of travel."[30] He now claims that he "possess[es] such comparator information" but that such information must be discovered under seal. This is neither the issue with the Amended Complaint nor the solution.

---

[27] *Henderson v. Guillory*, 546 So. 2d 244 (La. Ct. App.), *writ denied*, 551 So. 2d 635 (La. 1989)

[28] *Truschinger v. Pak*, 513 So. 2d 1151, 1154 (La. 1987).

[29] *Clark v. Glidden Coatings & Resins, Div. of SCM Corp.*, 666 F. Supp. 868, 871 (E.D. La. 1987) (citing *Illinois Central Railroad Company v. International Harvester Co.,* 368 So.2d 1009 (La. 1979)).

[30] R. Doc. 13 at ¶ 242.

If there were comparators to support his National Origin Discrimination claim, Plaintiff could have alleged when such a request to travel was made, the national origin of those alleged comparators, the actions taken by Dr. Crosslin, or any other non-private detail that would raise his allegation beyond a conclusory statement. He fails to do so. As to Dr. Crosslin's intent, his allegations are vitiated by the same issues of intent throughout; Plaintiff only relies on his injuries to create an "inference" of intent, which falls well below the standard for pleading intentional discrimination.

## V.    CONCLUSION

Based upon the foregoing reasons and legal authorities and those asserted in Tulane's original Motion to Dismiss, the Individual Defendants' original Motion to Dismiss, and the Motion to Dismiss the Amended Complaint, Defendants respectfully move this Court for an order dismissing *with prejudice* Plaintiff's Amended Complaint, at Plaintiff's costs, including any other relief to which Defendants may also be warranted.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Rebecca Sha*
Kim M. Boyle (La. Bar No. 18133)
Rebecca S. Sha (La. Bar No. 35317)
Andrew M. Albritton (La. Bar No. 39780)
Caroline E. Perlis (La. Bar No. 40905)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: kim.boyle@phelps.com
        rebecca.sha@phelps.com
        andrew.albritton@phelps.com
        caroline.perlis@phelps.com

**ATTORNEYS FOR DEFENDANTS TULANE UNIVERSITY, DAVID CROSSLIN, HEATHER MACHADO, AND LEE HAMM**

PD.61199722.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2026, I filed the foregoing by using the CM/ECF system and have served notice of the filing pursuant to Fed. R. Civ. P. 5(b)(2) and Local Rule 5.4 to Pro-Se Plaintiff, Yue Zhao by certified mail and electronic mail to 500 Aries Dr. Apt 5A, Mandeville, LA 70471 and omniscientyue@gmail.com.

/s/ *Rebecca Sha*
REBECCA SHA

PD.61199722.2