US DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED     Jun 3 2026

CAROL L. MICHEL
CLERK
cf                                    EDSS

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| YUE ZHAO | CIVIL ACTION NO. 2:25-cv-2474 |
| VERSUS | JUDGE SARAH S. VANCE |
| THE ADMINISTRATORS OF THE | |
| TULANE EDUCATIONAL FUND; DAVID | |
| CROSSLIN; HEATHER MACHADO; LEE | MAGISTRATE JUDGE EVA J. |
| HAMM | DOSSIER |

## PLAINTIFF'S MOTION FOR EXPEDITED STATUS CONFERENCE REGARDING ACADEMIC STATUS, JUNE 15 DEADLINE, AND ANTI-RETALIATION PROTECTIONS

Plaintiff Yue Zhao respectfully moves this Court for an expedited status conference regarding Plaintiff's current academic status, Tulane's June 15, 2026 laboratory-placement deadline, and the need for interim anti-retaliation protections while this federal civil-rights action remains pending.

Plaintiff does not seek final adjudication of the merits through this motion. Plaintiff seeks limited case-management intervention because Tulane has issued a firm deadline requiring Plaintiff to secure a new laboratory placement by June 15, 2026, and has stated that failure to meet that deadline may result in formal review by the BMS Steering Committee and possible removal from the program. This threatened academic action directly overlaps with the disputed lab removal, stipend interruption, disability-accommodation issues, and retaliation allegations already before this Court.

### I. BACKGROUND

Plaintiff is a graduate student in Tulane University's Biomedical Sciences Ph.D. program. Plaintiff's claims in this action arise from, among other things, his disputed removal from Dr. David

1

Crosslin's laboratory, the interruption of stipend support, alleged retaliation, and Tulane's failure to provide meaningful interim academic protection after Plaintiff was left without a laboratory, advisor, stipend, or viable pathway to continue his Ph.D. studies.

On June 2, 2026, Tulane's Biomedical Sciences Program issued Plaintiff a letter titled "Securing a lab."[1] The letter states that, pursuant to the BMS Handbook, it is Plaintiff's responsibility to identify and confirm a lab placement by June 15, 2026. It further states that the deadline is "final," that Plaintiff must provide regular updates regarding his efforts to contact faculty, and that failure to meet the deadline "will result in a formal review by the BMS Steering Committee and may lead to removal from the program."

This letter creates an immediate and concrete academic-status issue. The deadline is less than two weeks from the date of the letter. If Tulane proceeds with formal review or removal proceedings based on Plaintiff's inability to obtain a new lab placement, Plaintiff may suffer additional academic harm before the Court has addressed the pending civil-rights claims and before discovery regarding the underlying lab removal and alleged retaliation is complete.

## II. THIS IS AN UNUSUAL SITUATION BECAUSE PLAINTIFF'S LAB REMOVAL IS UNDER JUDICIAL REVIEW

This is not a routine situation in which a graduate student simply failed to identify a laboratory placement in the ordinary course of academic administration. Plaintiff was not supposed to be removed from Dr. Crosslin's laboratory in the first place. Plaintiff contends that the removal was improper, retaliatory, and connected to the disability-accommodation and stipend-interruption issues now before this Court.

Because the original lab removal is itself under judicial review in this pending action, Tulane's new deadline effectively places Plaintiff at risk of additional academic consequences arising from the very conduct being challenged in federal court. Requiring Plaintiff to cure, by June 15, 2026, a lab-placement problem that Plaintiff contends Tulane unlawfully created would compound the disputed harm before the Court has had an opportunity to review the underlying facts.

---

[1] Exhibit A - Letter to Zhao.

Court supervision is therefore appropriate to prevent the disputed removal from being converted into a new basis for program dismissal or other adverse academic action while the legality of that removal remains unresolved.

### III. GOOD CAUSE EXISTS FOR AN EXPEDITED STATUS CONFERENCE

Good cause exists for a prompt status conference because the June 15 deadline and potential removal proceeding are directly connected to the subject matter of this lawsuit.

Plaintiff's lack of a lab placement is not an unrelated or routine academic issue. Plaintiff contends that his current lab-placement problem resulted from the disputed July 31, 2025 removal from Dr. Crosslin's laboratory, which is central to this action. Tulane now appears to be using Plaintiff's continued lack of laboratory placement as a potential basis for formal review and possible program removal, even though the cause and legality of the original lab removal remain disputed in this pending federal case.

A status conference would allow the Court to clarify whether Tulane intends to initiate formal review, dismissal, administrative withdrawal, or any other adverse academic action based on Plaintiff's lack of a lab placement while this litigation is pending. It would also allow the parties to discuss whether interim academic protections are necessary to preserve the status quo, avoid further retaliation disputes, and prevent the case from escalating into emergency injunctive practice.

Plaintiff respectfully submits that a brief status conference is a more efficient and less burdensome method of addressing this immediate issue than emergency motion practice. Plaintiff seeks Court supervision only to prevent additional academic harm and to clarify the parties' positions before the June 15 deadline.

The June 2, 2026 letter is also inconsistent with Defendants' litigation position in their motions to dismiss. Defendants have repeatedly suggested that Tulane was willing to work with Plaintiff and that Plaintiff remained able to continue in the program.[2] Yet Tulane has now imposed a firm June 15 deadline and threatened formal review and possible removal from the program if Plaintiff cannot secure a new lab placement within that short period. This contradiction underscores why Court

---

[2]Doc. 21, p. 6.

supervision is necessary: Tulane cannot simultaneously represent that it is working with Plaintiff while imposing an imminent removal-related deadline arising from the same disputed lab-removal and retaliation issues.

## IV. REQUESTED RELIEF

Plaintiff respectfully requests that the Court set an expedited status conference before June 15, 2026, or as soon as the Court's schedule permits, to address the following limited issues:

1. Whether Tulane intends to initiate BMS Steering Committee review, dismissal proceedings, administrative withdrawal, or any other adverse academic action against Plaintiff based on his lack of a new laboratory placement;

2. Whether Tulane will agree to suspend or withdraw the June 15, 2026 lab-placement deadline while this litigation and related discovery are pending;

3. Whether the Dean, the Executive Dean, or the Dean of the BMS Program can place Plaintiff in their own laboratories;

4. Whether Tulane will maintain Plaintiff's current academic status and refrain from taking adverse academic action based on the disputed lab-removal consequences;

5. Whether Tulane will provide an interim academic arrangement, such as an interim BMS administrative supervisor, neutral academic advisor, or other non-retaliatory academic pathway independent of Dr. Crosslin;

6. Whether the parties can confer regarding interim anti-retaliation protections without the need for a preliminary-injunction motion;

7. Whether a briefing schedule is necessary if Tulane refuses to suspend the deadline or intends to proceed with removal-related review; and

8. Whether the parties can discuss alternative ways to resolve Plaintiff's academic status or provide a non-retaliatory exit pathway, including degree-related academic remedies or other neutral academic resolutions independent of any release of federal civil-rights claims.

4

## V. THIS MOTION DOES NOT SEEK FINAL RELIEF

Plaintiff emphasizes that this motion does not ask the Court to decide the merits of Plaintiff's ADA, Section 504, retaliation, contract, or other claims. Nor does Plaintiff ask the Court, through this motion, to order Tulane to confer a degree, pay damages, or resolve the ultimate issues in this case.

Instead, Plaintiff seeks a status conference because Tulane's June 2 letter creates a near-term academic-status risk that overlaps with the pending claims. Without Court intervention or at least case-management oversight, Plaintiff may be forced into a new adverse academic proceeding based on the unresolved consequences of the very conduct challenged in this lawsuit.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and set an expedited status conference regarding Plaintiff's academic status, the June 15, 2026 laboratory-placement deadline, and interim anti-retaliation protections.

Respectfully Submitted,

Date of signing: 6/3/2026

Signature of Plaintiff:

Printed Name of Plaintiff:  Yue Zhao

Address: 500 Aries Dr Apt 5A

Mandeville, LA 70471

### Certification of Service

I hereby certify that on this 3rd day of June, 2026, a true and correct copy of the foregoing filing was submitted by the Pro Se Plaintiff through the Court's Electronic Document Submission System (EDSS) for filing with the Clerk of Court for the United States District Court for the Eastern

District of Louisiana. Upon filing by the Clerk on the Court's CM/ECF system, service was thereby effected upon all counsel of record for Defendants, each of whom is registered to receive electronic service through CM/ECF.